UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAMILARE SONOIKI,<br><br>    Plaintiff,<br><br>  v.<br><br>HARVARD UNIVERSITY, HARVARD UNIVERSITY BOARD OF OVERSEERS, and THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>    Defendants. | Civil Action No. 1:19-cv-12172<br><br>Leave to file granted on January 24, 2020 |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO <u>DISMISS THE COMPLAINT</u>**

**INTRODUCTION**

Plaintiff principally contends that Harvard failed to provide him the procedures it promised him by contract. But he fails to identify even a single contract provision that supports any of these alleged promises. Instead, his opposition is an exercise in misdirection—he invents contractual promises foreclosed by actual contract provisions and asserts nonexistent promises he purports to derive from contractual silence. Plaintiff's contract argument fails. So too does his argument that the procedures he was promised and received violated the "basic fairness" Massachusetts law requires—a contention foreclosed by the numerous cases Harvard cited in its opening brief, without response from Plaintiff, that uphold procedures substantially less robust than those afforded here. The motion to dismiss should be granted, with prejudice.

**A.     Plaintiff's Contract Claim Fails.**

1. Plaintiff's principal argument is that while he was credibly accused before graduation of sexual assault by several different women, Harvard was required to issue him a degree because it did not have sufficient time to investigate the complaints before graduation. Opp. 5-9. Plaintiff arrives at that conclusion by negative inference from a Handbook provision that says "[a] degree will not be granted to a student . . . against whom a disciplinary charge is pending." Compl. Ex. 2 at 5. But Plaintiff's logical error is obvious. While Harvard provides that a "degree *will not* be granted to a student . . . against whom a disciplinary charge is pending," it does not follow from this that a degree *must* be granted to all other students, even when new complaints of sexual misconduct are pending against them. Harvard made note of this logical fallacy in its opening brief, and Plaintiff has not answered it.

Plaintiff instead opts to answer only Harvard's second, independent, argument, which is that the student information form makes clear that "[a] student *cannot* receive a degree before a pending disciplinary case"—which "begins with an *allegation* of student misconduct in the form

of a complaint or report"—"is resolved." Compl. Ex. 3 at 1, 7 (first emphasis added). Plaintiff's response is that the student information form is not part of his contract. But that is wrong: student-university contracts include "the Student Handbook and other college materials." *Bleiler v. Coll. of Holy Cross*, 2013 WL 4714340, at *14 (D. Mass. Aug. 26, 2013). Indeed, Plaintiff himself attached the student information form and other materials to his Complaint and relies on them in support of his contract claims. *See, e.g.*, Compl. ¶ 378 ("[Plaintiff] enrolled at Harvard with the understanding and reasonable expectation that Harvard would enforce the provisions and policies in Harvard's official publications, including the Handbook . . . , as well as all other official documents"); *see also* Compl. Exs. 3-8.

Regardless, Plaintiff's argument is meritless. He says that a conflict between the Handbook and the student information form should be resolved in favor of the Handbook or, failing that, the conflict creates an ambiguity that cannot be resolved on the pleadings. But *there is no conflict*. The Handbook and student information form are perfectly consistent: the Handbook does not require Harvard to issue a degree to a student against whom an as-yet uninvestigated complaint is pending, and the student information form confirms that Harvard will not do so. Plaintiff's principal argument is plainly wrong and should be dismissed.[1]

2. Plaintiff's next argument is that the contract is unenforceable because it is impermissibly vague in two material respects, and violative of federal law in another. Opp. 9-12, 16-17. As explained below and in Harvard's opening brief, this argument is meritless.

---

[1] Plaintiff also suggests that withholding his degree was inconsistent with Harvard's pedagogical model of discipline and its presumption that "except in the rarest of circumstances, students involved in disciplinary cases ultimately will graduate from Harvard." Opp. 5-6 (emphasis omitted) (quoting Compl. Ex. 4 at 1). But the Handbook is crystal clear that one of the rare circumstances in which a student is not entitled to a degree is when he is found to have committed sexual misconduct. *See* Compl. Ex. 1 at 10; Compl. Ex. 2 at 7. Plaintiff's view would require issuing a degree to that student because of a timing quirk. Nothing in the contract requires that nonsensical result.

Plaintiff first asserts that Harvard's "sufficiently persuaded" standard of review is unintelligible. Opp. 10; *see* Compl. Ex. 4 at 2. But he does not offer any actual argument for why that standard is particularly difficult to understand. As Harvard explained, it is analogous to a preponderance of evidence standard. Plaintiff accuses Harvard of contradicting itself by citing the preponderance standard as an analogue, but there is no contradiction—the fact that Harvard wanted to avoid legalese in a pedagogical setting does not mean there is any material difference between a preponderance and "sufficiently persuaded" standard. And in any event, that is the standard that Harvard promised Plaintiff it would apply, and that it in fact applied.

Plaintiff next argues that Harvard's definition of "sexual misconduct" is unenforceably vague. Opp. 11-12. As the opening brief explained, the suggestion that a reasonable student would not know that the sexual assaults of which Plaintiff was accused and found to have committed fall within that policy is frivolous and should be summarily rejected. Mot. 19-20.

Plaintiff also argues that the Handbook violates the Clery Act by failing to allow him to hire counsel. Opp. 16-17. That is simply wrong: the Handbook affirmatively encourages him to do so. Compl. Ex. 3 at 2-3. And in any event, Plaintiff admits that he is not suing under the Clery Act but under the contract. Whether or not Harvard's procedures violated the Clery Act (which they do not) "would have no bearing on Plaintiff's pending contractual and quasi-contractual claims." *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 757-58 (E.D. Tenn. 2009).

3. Plaintiff's opposition (like his Complaint) also includes a laundry list of his "reasonable expectations" that Harvard allegedly violated. As Harvard's opening brief explained, Harvard promised its students robust procedures that balanced the students' rights while accounting for its pedagogical objectives consistent with Massachusetts law. Mot. 12, 17-

19. And the Complaint and incorporated documents make clear that Plaintiff received the precise procedures he was promised. Mot. 9-17. Plaintiff's contrary contentions are incorrect.

*First*, Plaintiff argues that Harvard violated his expectations by accepting untimely complaints and by taking longer than six weeks to complete the investigatory process. But Harvard's documents do not impose any strict time limit on sexual misconduct complaints or investigations. Rather, Harvard's documents state that "[c]omplaints must ordinarily be brought to the College in a timely manner" without defining "timely," and that proceedings will "ordinarily" be completed in six weeks. Compl. Ex. 2 at 4; Compl. Ex. 3 at 1. But Plaintiff points to no provision that renders the serious sexual misconduct complaints here untimely, and the word "ordinarily" in any event makes clear neither "timely" complaints nor six-week proceedings are required in every instance. Harvard did not break any timing-related promises. *See Doe v. Brown Univ.*, 327 F. Supp. 3d 397, 417 (D.R.I. 2018) (no breach where proceedings took longer than specified but the handbook provided for exceptions).

*Second*, Plaintiff asserts that the Handbook is silent with respect to two of the procedures Harvard employed—*i.e.*, the Subcommittee's inclusion of credibility determinations in the disciplinary case reports and the Ad Board Chair's filing of a response to his appeal—and so is at least ambiguous as to whether those procedures violated Plaintiff's reasonable expectations.

Plaintiff's argument is both wrong and irrelevant. It is wrong because the contract is clear on both these points: (1) As Plaintiff ultimately concedes (*see* Opp. 14), the appeal process chart states that the Ad Board Chair will respond to appeals, (Compl. Ex. 7 at 1); and (2) the student information form designates the Subcommittee as the primary observer of witnesses, putting any reasonable reader on notice that it might assess credibility (Compl. Ex. 3 at 4-5). The argument is irrelevant because a student cannot possibly develop a reasonable expectation

that he will receive a particular procedure based on contract silence. He must instead identify a provision that plausibly gives rise to such an expectation. That is why courts have routinely rejected breach of contract claims where the student fails to identify any provision in the "Handbook []or related documents" that "create[s] obligations that are in conflict with the College's actions." *Bleiler*, 2013 WL 4714340, at *15; *accord Schaer v. Brandeis Univ.*, 735 N.E.2d 373, 378-81 (Mass. 2000).

*Third*, Plaintiff contends that Harvard broke a promise to afford him a Board Representative who would advocate for him and with whom he would enjoy a confidential relationship. No Handbook provision promised Plaintiff any such thing. The statements he cites that encourage students to be honest and open with their Board Representatives, *e.g.*, Compl. Ex. 3 at 3, do not promise confidentiality. Indeed, as Harvard explained, without rebuttal by Plaintiff, when the Handbook intended for a relationship or a proceeding to be confidential, it said so explicitly. Mot. 14-15. Plaintiff's asserted expectation of confidentiality and advocacy is especially implausible because the Handbook expressly provides that the Board Representative "is an officer of the College" who "will not advocate for you." Compl. Ex. 3 at 3. Plaintiff says (Opp. 13) that assertion is inconsistent with other statements—*e.g.*, that the Board Representative "will make certain that your perspective is clearly presented"—but there is no inconsistency: the Board Representative is a reporter, not an advocate.

*Fourth*, Plaintiff contends that Harvard neglected in its motion to address his allegation that Harvard broke a promise to share with him the identities of adverse student witnesses. Even if this allegation were true, which it is not, it was embedded in a laundry list of procedures that Plaintiff described collectively as Harvard's "failure to provide fundamental fairness." Compl. ¶ 402. Harvard addressed them all by explaining why Plaintiff's proceeding was fundamentally

fair.  To the extent Plaintiff now claims that this was an independent contractual promise, he has never identified a Handbook provision that could be read to make that promise.  Moreover, he admits that he *did* know of the identity of witnesses against him, Compl. ¶¶ 316-17, and does not dispute that he was informed of the factual allegations in detail.

*Fifth*, Plaintiff asserts that his disciplinary proceeding was infected with bias in violation of Harvard's promise to provide him a non-biased hearing.  But as Harvard's opening brief explained, "a presumption of impartiality favors [school] administrators," and the burden is on Plaintiff "to produce evidence to rebut this presumption." *Doe v. Trs. of Bos. Coll.* (*Doe I*), 892 F.3d 67, 84 (1st Cir. 2018) (quotation and other marks omitted).  Plaintiff attempts to overcome that presumption in three ways, but none succeeds.

- He cites articles opining generally about flaws in Title IX proceedings and the criminal justice system writ large. *See* Opp. 16; Compl. ¶¶ 39-42.  None of these provides grounds for inferring race-based discrimination in these specific proceedings. *See Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 218-19 (D. Mass. 2017) (court could not "plausibly infer race-based discrimination" in a particular proceeding based on report cautioning generally against discrimination in Title IX proceedings).

- He alleges that the Ad Board lacked black male members.  Plaintiff is very careful to avoid alleging that the Ad Board lacked black women. *See* Opp. Ex. 1.  Regardless, assuming that a university body is motivated by racial bias because of its composition is precisely the kind of "tenuous inference[]" that cannot support a finding of prejudice. *Doe I*, 892 F.3d at 84.

- He claims that the Ad Board Secretary impermissibly both solicited the complaints and voted in Plaintiff's case.  Even taking these allegations as true, Harvard's procedures contemplate the dual role of the Secretary in receiving complaints and casting a vote. *See* Compl. Ex. 3 at 2.  Moreover, the First Circuit has made clear that "contentions that [an administrator's] various roles or 'multiple-hats' are evidence of bias and undue influence . . . 'assumes too much.'" *Gorman v. Univ. of R.I.*, 837 F.2d 7, 15 (1st Cir. 1988).

For all of these reasons, the presumption of impartiality may not be overturned here.

**B.     Harvard Provided Plaintiff With "Basic Fairness."**

No Massachusetts court has ever found that the procedures Plaintiff lists (*see, e.g.*, Opp. 18-19) are necessary for "basic fairness" under Massachusetts law.  And as Harvard's opening

brief shows, there are numerous cases where Massachusetts courts have sanctioned proceedings with far fewer procedural protections. Mot. 17-19. Plaintiff conspicuously does not even mention those Massachusetts cases. Those cases, moreover, were recently adopted by *Doe v. Trs. of Bos. Coll.* (*Doe II*), 942 F.3d 527, 533-34 (1st Cir. 2019), in which the First Circuit reiterated that federal courts must "take care not to extend state law beyond its well-marked boundaries in an area . . . that is quintessentially the province of state courts," including the scope of the "basic fairness" requirement. *Id.* at 534 (quotation omitted). Plaintiff's attempt to limit *Doe II* to its precise facts ignores that the First Circuit's *rationale*—which squarely addressed this same argument about the limited nature of the "basic fairness" doctrine under existing Massachusetts law—plainly precludes his claim.

Plaintiff also cites several district court cases that are inapposite because they found proceedings unfair for reasons different than those Plaintiff advances here. *See, e.g.*, *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 604-07 (D. Mass. 2016) (unfair based on a totality of factors including that the accused never received notice of the conduct giving rise to the charge and had no ability to review evidence, access the examiner's report, or submit evidence); *Amherst Coll.*, 238 F. Supp. 3d at 217 (unfair because investigator did not investigate potentially exculpatory evidence). In short, Plaintiff cites no case remotely suggesting that allegations like those asserted here validly state a claim that the totality of the robust procedures Harvard provided to Plaintiff violate basic fairness.

## CONCLUSION

The Complaint should be dismissed with prejudice.

Dated: February 4, 2020

Respectfully submitted,

/s/ *Anton Metlitsky*
Anton Metlitsky (*pro hac vice*)
ametlitsky@omm.com
Patrick McKegney (*pro hac vice*)
pmckegney@omm.com
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Apalla U. Chopra (*pro hac vice*)
achopra@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Bradley N. Garcia (*pro hac vice*)
bgarcia@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Victoria L. Steinberg, BBO #666482
Tara D. Dunn, BBO #699329
TODD & WELD LLP
One Federal Street
Boston, MA 02110
Telephone: (617) 624-4714
Facsimile: (617) 624-4814
vsteinberg@toddweld.com
tdunn@toddweld.com

*Attorneys for Defendants,*
*Harvard University, Harvard University*
*Board of Overseers, and the President and*
*Fellows of Harvard College*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 4, 2020.

*/s/ Anton Metlitsky*
Anton Metlitsky (*pro hac vice*)
