# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **DAMILARE SONOIKI,** | ) | **CIVIL CASE NO. 1:19-cv-12172** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CASPER** |
| | ) | |
| v. | ) | Pending Motion for Leave to File |
| | ) | Sur-Reply Brief *Instanter* filed on |
| **HARVARD UNIVERSITY, et al.** | ) | February 26, 2020 |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S SUR-REPLY BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

**EXHIBIT 1**

## I. Introduction

Harvard's Reply misrepresents Damilare's claims and its own documents. Harvard's misrepresentations, particularly after Damilare addressed them in his Opposition to the Motion to Dismiss, show that its policy is too confusing to be enforceable. There is only one Handbook, and it controls Harvard's ancillary documents. Harvard does not rebut this claim in its Reply.

This Court should allow Damilare's breach of contract and good faith and fair dealing claims to continue because he reasonably expected to graduate. Instead, Harvard failed to timely issue disciplinary charges and impermissibly withheld his degree. This Court should also deny Harvard's Motion to Dismiss (the "Motion") because Damilare reasonably expected other rights, such as the prompt adjudication of timely complaints.

Finally, Harvard violated its contractual and independent basic fairness duties when it subjected Damilare to an unfair process. It is not fair for Harvard to order Damilare to depend on his Board Representative so she could best speak on his behalf, but then deny him confidentiality and earnest representation from her before the Ad Board. This Court should deny the Motion.

## II. Harvard Continues to Mispresent Its Own Documents to this Court

Harvard's ongoing failure to properly reference its own documents shows that its policy is too confusing to be enforceable as a matter of law. Harvard's Ad Board procedures are spread across ten policies in seven documents. Compl. ¶¶121-129. The Handbook controls and limits ancillary documents, including the Student Information Form and General Information Form. *Id.*

In its Motion, Harvard called all documents "the Handbook," which Damilare refuted in his Opposition. *See* Opp. 15. Rather than admitting its mistake, Harvard doubled down. Harvard not only continues to call the Student Information Form "the Handbook," but it makes false claims about it. Despite Harvard's claim that "the Handbook affirmatively encourages [Damilare] to [hire

1

counsel as his personal advisor]," the Handbook never mentions attorneys, and, in violation of federal law, limits advisors to only Harvard officers. Reply 3. Compl. Ex. 2 at 4. Also, Harvard's ancillary forms expressly forbid counsel's involvement. Compl. Ex. 3 at 2-3; Ex. 4 at 2.

Either Harvard is intentionally misrepresenting its own documents, or it is incapable of understanding them. If it is the latter, then they are too confusing to constitute an enforceable contract as a matter of law. *See United States v. Data Translation, Inc.*, 984 F.2d 1256, 1259 (1st Cir. 1992). Thus, this Court should deny Harvard's Motion.

### III. This Court Should Deny the Motion as to Counts One and Three Because Damilare Reasonably Expected to Graduate and Receive Other Rights Under Harvard's Policies

#### A. Damilare's Reasonable Expectations Cause His Breach of Contract and Good Faith and Fair Dealing Claims to Survive Harvard's Motion to Dismiss

This Court should deny the Motion on Damilare's breach of contract and good faith and fair dealing claims (Counts 1 and 3) because Damilare reasonably expected to receive his degree and other rights under Harvard's policies. Damilare's reasonable expectations go to the heart of both claims. In the breach of contract context, the Court must "review the procedures followed to ensure that they fall within the range of reasonable expectations of one reading the relevant rules." *Doe v. Trs. of Boston Coll.*, 892 F.3d 67, 80 (1st Cir. 2018) ("*BC I*"). The covenant of good faith and fair dealing exists in every Massachusetts contract to "ensure that neither party interferes with the ability of the other to enjoy the fruits of the contract." *Eigerman v. Putnam Invs., Inc.*, 877 N.E.2d 1258, 1264 (Mass. 2007). Although the covenant does not create duties not otherwise provided for in the contract, a breach occurs "when one party violates the reasonable expectations of the other." *Id. See also Doe v. W. New Eng. Univ.*, 228 F. Supp. 3d 154, 181 (D. Mass. 2016).

In *Doe v. Johnson & Wales Univ.*, Case No. 18-cv-106, 2019 U.S. Dist. LEXIS 206741 at *8-9 (D.R.I. Nov. 26, 2019), which was decided after *Doe v. Trs. of Boston Coll.*, 942 F.3d 527

(1st Cir. 2019) ("*BC II*"), the court denied summary judgment to a private university on breach of contract and good faith and fair dealing claims, holding that a jury must decide if the student reasonably expected more rights in a fair proceeding than were enumerated in the university's policy. *See also Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 218, 220 (D. Mass. 2017) (denying motion for judgment on the pleadings on breach of contract and good faith and fair dealing). Thus, this Court must consider Damilare's reasonable expectations and deny the Motion.

### B. Damilare Reasonably Expected to Graduate Under the Handbook's Clear Terms

Damilare reasonably expected to graduate and be outside Harvard's jurisdiction because the Handbook allowed Harvard to withhold his degree only if he were subject to disciplinary charges at graduation. Compl. Ex. 2 at 5. Harvard alleges that Damilare is claiming that Harvard would *have* to issue degrees whenever it "did not have sufficient time to investigate the complaints before graduation." Reply 1. Harvard would also like this Court to believe that its hands were tied until the complaints were filed two days before graduation. Both claims are false.

Although Harvard ignores this fact, Harvard had three options to permissibly withhold his degree, and failed to exercise any of them. First, Harvard could have independently initiated charges against Damilare at any point, even on graduation day, without the filing of complaints by students. Compl. Ex. 2 at 4. Second, Harvard had the authority to "place a student involuntarily on a leave of absence" in the case of "alleged serious criminal behavior." *Id.* 4-5. There was no requirement that a complaint be filed, and Harvard never exercised this option, despite being aware of Ann's claims since June 25, 2012. Compl. ¶49. Third, even if Harvard demanded a preliminary investigation following the submission of complaints, there was nothing in the Handbook stopping Rankin from filing the complaints on behalf of third parties. Compl. Ex. 2 at 4 (noting that complaints may be filed Harvard faculty, students, or another "member of the community").

3

Harvard knew of Ann and Cindy's claims since June 25, 2012 and May 9, 2013. Compl. ¶¶49, 70. Harvard took only eight days between starting interviews and issuing charges. *Id.* ¶¶295, 303-307. Had Rankin, or even Dean Ellison, filed complaints on May 9, 2013, or in 2012, Harvard would have had more than enough time to issue charges before Damilare's graduation.

Harvard had multiple options across two years to permissibly delay and/or withhold Damilare's degree. Harvard cannot now excuse its own failure to act and blame Damilare for its own "timing quirk." Reply 2, fn. 1. Damilare reasonably expected to receive his degree and be free from Harvard's jurisdiction under the Handbook's clear terms. This Court should deny the Motion.

**C. Damilare Reasonably Expected Harvard to Promptly Adjudicate Timely Claims**

Harvard breached Damilare's reasonable expectation it would promptly adjudicate timely claims. Under Harvard's policy, complaints "must ordinarily be brought to the College in a timely manner," and the process must be resolved "as quickly as reasonably possible," with the "entire process, from start to end, ordinarily [taking] between 3 to 6 weeks." Compl. ¶¶147-48.

Harvard took 80 weeks to dismiss Damilare, and, excluding appeals, Harvard still took four to eight times too long. This is nothing like *Doe v. Brown Univ.*, 327 F. Supp. 3d 397, 417 (D.R.I. 2018), where the school took 92 days instead of 60. Reply 4. Also, neither Ann nor Betty's claims are timely. Ann did not file her complaint for 626 days, and Rankin knew of her claim for 337 days prior. Betty did not file for a year, and only <u>after</u> Damilare's graduation. Compl. ¶88, 264.

Harvard alleges that it is saved by the word "ordinarily." Reply 4. Rather than helping Harvard, however, this argument proves this Court must deny the Motion. Contractual terms that have more than one reasonable meaning are questions of fact, and the use of such wiggle words must be construed against the college. *See Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 787 (1st Cir. 2011); *Ackermann v. President & Trs. of the Coll. of the Holy Cross*, 2003 Mass. Super.

4

LEXIS 111 at *7 (Mass. Super. Ct. Apr. 1, 2003) (granting preliminary injunction after the college failed to follow a process that the handbook "normally" used). The Motion should be denied.

### D. Damilare Reasonably Expected Confidentiality and Earnestness from Johnson

Damilare also reasonably expected confidentiality and earnest representation from his Board Representative, Laura Johnson. Harvard's claim that its policies do not expressly promise these rights is immaterial to Damilare's reasonable expectations. Reply 5. Damilare was prohibited from advocating for himself before the Ad Board and was ordered to "work closely" and be "open and honest" with Johnson, even on personal issues, so she could best serve as his "official representative on the [Ad Board]." Harvard also told Damilare that Johnson "speaks on [his] behalf," represents him to the Ad Board, and makes certain that his "voice is heard." Opp. 13. Based on these exhortations, Damilare reasonably expected confidentiality and earnest representation from the only person who could speak on his behalf to the Ad Board.

### E. Damilare Reasonably Expected a Fair Ad Board Hearing and the Fair Adjudication of All Appeals Without Opposition from the Dean of Harvard College

Damilare reasonably expected a fair Ad Board and appeals process. In promising him "fair treatment . . . relative to all undergraduates," Damilare reasonably believed that Dean Ellison would not solicit complaints and then vote on them. Compl. Ex. 4 at 2. The Handbook does not reference him in the complaint process, and the Student Information Form notes only his receipt, not solicitation, of complaints. Compl. Ex. 2; Ex. 3 at 2. Also, Harvard's cite to *Gorman v. Univ. of R.I.*, 837 F.2d 7, 15 (1st Cir. 1988) is misplaced, as the administrator there did not vote.

Damilare also reasonably expected the adjudication of all appeals of his appeals. It is unclear how many appeals Harvard considered. Damilare submitted three appeals, but, in its Motion, Harvard said there was only one appeal and that it issued two decision letters. Mtn. 8, Exs. D & E. Damilare reasonably expected consideration of, and a response to, all appeals.

Finally, Damilare also reasonably expected his appeals not to be opposed by Rakesh Khurana, the Ad Board Chair and Dean of Harvard College. The Appeals Form, which was created in June 2012, contains the entire appeals process. It does not mention the transformation of the Ad Board from a supposedly neutral trier of fact into an opposing party, much less one headed by the Harvard Dean. This is highly significant, and its absence from the Appeals Form is meaningful and glaring. Also, any student would reasonably expect a comprehensive 2012 document to supersede a sentence in a 2010 one-page flow chart. Opp. 14. This Court should deny the Motion.

### IV. This Court Should Deny the Motion as to Counts One and Two Because Harvard's Procedures Lacked Basic Fairness

This Court should also deny the Motion on Damilare's breach of contract and basic fairness claims (Counts 1 and 2) because Harvard's process lacked basic fairness. Just as a contract is breached for violating reasonable expectations, it is also breached if the process is not conducted with "basic fairness." *BC II*, 942 F.3d at 533. This fairness requirement is also an independent duty when the policy does not promise at least basic fairness. *BC I*, 892 F.3d at 88.

There is no one-size-fits-all model to reasonable expectations or basic fairness, and a school's actions can simultaneously fail both tests. *See Doe v. Brandeis*, 177 F. Supp. 3d 561, 601 (D. Mass. 2016) (recognizing basic fairness as an "elastic concept"). In *BC I*, the First Circuit overturned summary judgment to a private college on a breach of contract claim, holding that an administrator's outside influence violated the student's reasonable expectations and basic fairness. *Id.* at 86-87. In *BC II*, the First Circuit, while recognizing that mere policy adherence does not resolve basic fairness, held that the denial of cross-examination, only, does not constitute a breach of contract for lack of basic fairness, and overturned a preliminary injunction. *BC II* at 535-36.

Harvard would have this Court believe that, in its 2019 ruling in *BC II*, the First Circuit gutted its 2018 ruling in *BC I*. Harvard bases this nonsensical claim on the fact that *BC II* cites to

three Massachusetts cases that found no basic fairness violations.[1] Reply 1, 6. Harvard fails to mention, however, that not only did those cases precede *BC I*, but they were cited in the decision. *BC I* at 80, 87. Also, there are many cases applying Massachusetts law and finding basic fairness violations. *See Doe v. Brandeis*, 177 F. Supp. 3d at 601-12; *Doe v. Amherst Coll.*, 238 F. Supp. 3d at 217-18; *Byrne v. Curry Coll.*, 2019 Mass. Super. LEXIS 48 (Mass. Super. Ct. Jan. 28, 2019) (granting preliminary injunction where hearing denial failed to meet fundamental fairness); *Krauss v. Lawrence Mem'l/Regis Coll. Nursing & Radiology Program,* 2010 Mass. Super. LEXIS 283 (Mass. Super. Ct. Aug. 6, 2010) (denying summary judgment where protocols contravened "basic fairness"); *Ackermann*, 2003 Mass. Super. LEXIS 111 (Mass. Super. Ct. Apr. 1, 2003) (granting preliminary injunction where process violated reasonable expectations and basic fairness).

Although it is unnecessary to recite every basic fairness violation, as in the Complaint and Opposition, Harvard's process was devoid of this concept. Opp. 18-19. It is fundamentally unfair to: subject a student to a disciplinary process without jurisdiction; deny him the identities of adverse witnesses; force him to rely upon a Board Representative who owes him no duty of confidentiality or earnest representation; subject him to a process under an undefined evidentiary standard where a voting member solicited untimely complaints; deny him the chance to advocate before the board in the face of impermissible credibility determinations, and; then turn the neutral adjudicatory body into an adverse party on appeal helmed by the Dean of Harvard College. When a college chooses to provide for a hearing, there must be basic fairness. Harvard's process denied Damilare this right. Thus this Court should deny the Motion on Counts One and Two.

## V. Conclusion

For the foregoing reasons, the Court should deny the Motion and permit discovery.

---

[1] *Coveney v. President & Trs. of Coll. of Holy Cross*, 445 N.E.2d 136 (Mass. 1983); *Schaer v. Brandeis Univ.*, 735 N.E.2d 373 (Mass. 2000), and; *Driscoll v. Bd. of Trs. of Milton Acad.*, 873 N.E.2d 1177 (Mass. App. Ct. 2007).

Respectfully submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/     Susan C. Stone*
SUSAN C. STONE (*pro hac vice*)
KRISTINA W. SUPLER (*pro hac vice*)
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: scs@kjk.com; kws@kjk.com

**NESENOFF & MILTENBERG, LLP**

TARA J. DAVIS (BBO # 675346)
101 Federal Street, 19th Floor
Boston, Massachusetts 02110
Telephone: (617) 209-2188
Facsimile: (212) 736-2260
Email: Tdavis@nmllplaw.com

*Counsel for Plaintiff Damilare Sonoiki*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was filed via this Court's ECF system and served upon the attorney of record for each party as identified on the Notice of Electronic Filing (NEF) on February 26, 2020.

*/s/     Susan C. Stone*
SUSAN C. STONE (*pro hac vice*)