UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAMILARE SONOIKI,<br><br>Plaintiff,<br><br>v.<br><br>HARVARD UNIVERSITY, et al.,<br><br>Defendants. | Civil Action No. 1:19-cv-12172-LTS |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL
PLAINTIFF TO ANSWER DEFENDANTS' DISCOVERY REQUESTS**

**INTRODUCTION**

Plaintiff Damilare Sonoiki alleges that Defendants Harvard University, Harvard University Board of Overseers, and the President and Fellows of Harvard College (together, "Harvard")[1], breached contractual obligations in connection with the disciplinary proceedings conducted by Harvard in response to three sexual assault complaints against Plaintiff. Specifically, Plaintiff alleges that: (i) Harvard was not authorized under its policies to withhold his degree at graduation because it had not yet issued a "charge" relating to the allegations of sexual misconduct (the "Charge Theory"); (ii) Plaintiff's Board Representative, Laura Johnson, failed to advocate on his behalf despite an alleged responsibility to do so under Harvard's published procedures (the "Advocate Theory"); (iii) that Johnson breached a duty of confidentiality that she allegedly had under Harvard's published procedures (the "Confidentiality Theory"); (iv) that Johnson failed to provide Plaintiff with the names of witness against him in

---

[1] The Amended Complaint incorrectly identifies the Harvard entities as "Harvard University, Harvard University Board of Overseers, and the [sic] President and Fellows of Harvard College." President and Fellows of Harvard College is the legal entity for Harvard and is the only proper party to this litigation.

violation of her alleged obligations under Harvard's procedures (the "Names of Witnesses Theory"); and (v) that the Secretary of the Administrative Board, Jay Ellison, failed to include Plaintiff's Board Representative in his meeting about the first two complaints or to meet with Plaintiff about the third complaint in alleged violation of Harvard's procedures (the "Meeting Theory") (together, the "Remaining Claims"). *Sonoiki*, 37 F.4th at 706, 711–13 (1st Cir. 2022); *see also* Am. Compl. ¶ 4.

To date, however, Plaintiff refuses to respond to straightforward discovery requests regarding the supposed contract terms, Harvard's alleged breach, and Plaintiff's alleged damages. As explained more fully below, Harvard therefore respectfully requests that this Court compel Plaintiff to respond to these requests.

## PLAINTIFF'S CLAIMS AND BACKGROUND

Two different women filed complaints shortly before Plaintiff's 2013 Harvard College graduation ceremony, alleging that Plaintiff engaged in non-consensual sexual intercourse with them. Several days later, a third complainant alleged that Plaintiff engaged in non-consensual sex with her several times while she and Plaintiff were roommates. Harvard followed its applicable policies and procedures and investigated the complaints. Its Administrative Board ultimately concluded that Plaintiff had committed the sexual misconduct alleged, required him to withdraw from Harvard College, and recommended to the College Faculty Council that he be dismissed. Plaintiff appealed to the Faculty Council, those appeals were denied, and the Faculty Council concluded that Plaintiff should be dismissed from Harvard.

Five years later – during which time Plaintiff was convicted of insider trading – Plaintiff filed this lawsuit, alleging that Harvard owes him damages because Harvard purportedly violated its procedures for adjudicating sexual misconduct complaints. Specifically, Plaintiff alleged

claims for (i) breach of contract, (ii) violation of Plaintiff's right to basic fairness; (iii) violation of the covenant of good faith and fair dealing; and (iv) estoppel and reliance. Dkt. No. 1 (Complaint). On June 22, 2020, this Court (Casper, J.) granted Harvard's motion to dismiss all Plaintiff's claims. Dkt. No. 41. On June 14, 2022, the First Circuit affirmed the dismissal of the basic fairness, good faith and fair dealing, and estoppel and reliance claims. The First Circuit also affirmed the dismissal of many of the theories Plaintiff advanced in support of his breach of contract claim. However, the First Circuit reversed and remanded as to several of Plaintiff's breach-of-contract theories. *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 717 (1st Cir. 2022).

Plaintiff filed an Amended Complaint on August 11, 2022 to account for the dismissed claims. *See* Dkt. No. 63 ("Am. Compl."). Harvard denies all of the allegations in the Remaining Claims, and will demonstrate that it was well within its rights under applicable policies to withhold Plaintiff's degree in light of the three sexual assault allegations, and that its policies were adhered to in all respects.

## RELEVANT PROCEDURAL HISTORY

The parties exchanged initial disclosures on August 31, 2022. On September 14, 2022, Harvard served its First Set of Interrogatories to Plaintiff ("Interrogatories"). *See* Steinberg Decl., Ex. 2. That same day, Harvard also served its First Set of Requests for Production of Documents to Plaintiff ("Requests"). *See id.*, Ex. 1. Plaintiff refused to supply sufficient information in response to Harvard's Document Requests 3, 4, 5, and 6, or to Interrogatories 5, 11, and 13, identified below. In addition, the damages portion of his initial disclosures was insufficient.

On October 26, 2022, Harvard sent a letter to Plaintiff's counsel pointing out the deficiencies and requesting that Plaintiff supplement his responses. *See* Steinberg Decl., Ex. 5.

The parties met and conferred on November 2, 2022. Following the meet and confer, Harvard asked Plaintiff to confirm by November 7, 2022 that he intended to supplement his responses to Interrogatories Nos. 5, 11, and 13 and Document Requests Nos. 3, 4, 5, and 6. *Id*. ¶ 6. Plaintiff never responded. *See id*. On November 9, Harvard again emailed Plaintiff's counsel to confirm the that parties were at had reached an impasse. *Id*., ¶ 7. The same day, during a meet and confer, Plaintiff's counsel agreed the parties were at an impasse on the discovery requests. *Id*.

## ARGUMENT

The interrogatories and document requests to which Plaintiff has failed to adequately respond are necessary for Harvard to mount a defense against the Remaining Claims and to understand what efforts Plaintiff took to mitigate the damages he alleges to have suffered.

### *Interrogatory No. 5*

In Interrogatory No. 5, Harvard requests that Plaintiff: "Identify all of the statements You made to Laura Johnson that You believed were 'confidential,' including for each one whether you contend that it was subsequently provided to the Administrative Board. Am. Compl. ¶ 278." Steinberg Decl., Ex. 2 at 5. In response, Plaintiff objected that "it seeks information in the possession of, known to, or otherwise equally available to the defendant." *Id*., Ex. 4 at 5. Plaintiff also objected to Interrogatory No. 5 because it "seeks information in a narrative form that is more suitable for deposition." *Id.*

This is incorrect. Plaintiff's complaint specifically alleges a "belief that his communications were confidential," and that it was improper for Johnson to convey certain confidential communications. Am. Compl. ¶¶ 202; *see id.* 278, 403. Harvard has no information or reason to believe that his Board Representative, Laura Johnson, divulged any so-called

"confidential communications," and Harvard is not in a position to know what statements Plaintiff made to his Board Representative that *he* believed were confidential.

Plaintiff also objected to Interrogatory No. 5 because it "seeks information in a narrative form that is more suitable for deposition." Steinberg Decl., Ex. 4 at 5. But all interrogatories are questions—that is what "interrogatory" means—and the fact that a similar question could be posed at deposition does not mean that the question need not be answered if presented in the form of an interrogatory. Millions of written works across the centuries, dating at least as far back as Homer's *Iliad*, support the proposition that written text is fully compatible with a "narrative form" rendition of information, if indeed that is required here. Interrogatory No. 5 is well within the ordinary purpose of interrogatories—it seeks to obtain facts and point Harvard to where it might find relevant evidence. *See DSM IP Assets, B.V. v. Lallemand Specialties, Inc.*, 2018 WL 1937660, at *8 (W.D. Wis. Apr. 24, 2018). Harvard, of course, needs this information in order to adequately prepare for Plaintiff's deposition.

In the face of these objections, which not only have no legal basis but are unsupported by logic and common sense, Harvard can conclude only that Plaintiff either has no answers or does not want to provide them. If he cannot or will not even identify for Harvard those communications that he believed were confidential, Plaintiff's Confidentiality Theory should be dismissed.

### *Interrogatory No. 11*

In Interrogatory No. 11, Harvard asks Plaintiff to: "State all facts that support Your allegation in paragraph 271 that '[e]ven after [You] left Wall Street for a new industry, many in the industry were connected to Harvard, and [You] were confronted about the reason [You] did not have a degree', including the name of the person/people who confronted you, any witnesses

to the confrontation(s), the date(s) of the confrontation(s), and a full description of the confrontation(s)." Steinberg Decl., Ex. 2 at 6.

Plaintiff again raised the puzzling objection that the Interrogatory "seeks information in a narrative form," Steinberg Decl., Ex. 4 at 7, but in this instance did provide the following written narrative: "A major television and film producer learned about these allegations, told others about the allegations, and confronted me about the allegations via text.  Around the same time, I was struggling to find work in the industry.  I have been told that the allegations are the reason I am unable to be employed in desired jobs." *Id*.  Plaintiff then generally pointed Harvard to his entire document production. *Id*.  Harvard subsequently asked Plaintiff to identify the "major television and film producer" referenced in his response to Interrogatory No. 11, and also to include the name(s) of the individual(s) who told Plaintiff that "the allegations…are the reason [he is] unable to be employed in desired jobs," as Interrogatory No. 11 requested in the first instance. *See Id*.  To date, Plaintiff has refused to supplement his response to Interrogatory No. 11 to provide the requested information.

Plaintiff's response is insufficient because it does not give Harvard enough information to determine whether the alleged events at issue in this case caused Plaintiff's alleged damages (or whether, for example, his conviction of insider trading impacted those job opportunities).  8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2177 (3d ed. 1998) ("Evasive or cryptic answers are ordinarily insufficient…").  Plaintiff's catch-all citation to his entire production in response to this Interrogatory does not comply with his discovery obligations in this case.  Fed. R. Civ. P. 33(d) (1) (A party may answer an interrogatory by "specifying the records that must be reviewed, *in sufficient detail*…" (emphasis added)). Plaintiff's production includes text messages between Plaintiff and individuals in the television

or film industry, but it is not clear from the texts the identity of those individuals, when those exchanges took place, or how they relate to Plaintiff's alleged damages. Nor is it clear whether these text messages reflect all of the purported lost opportunities to which he refers in his Interrogatory answer. Harvard explained this to Plaintiff in its October 26, 2022 letter, *see* Steinberg Decl., Ex. 5 at 4, and Plaintiff could have made an easy start of supplementing his response by including that information—but he did not even do that. More importantly, Plaintiff's vague initial Interrogatory answer implies that there are other relevant conversations that are not addressed by the texts in that production. *See id.*, Ex. 4 at 7 ("[I] have been told that the allegations are the reason I am unable to be employed in desired jobs."). Plaintiff therefore needs to supplement his response.

## *Interrogatory No. 13*

In Interrogatory No. 13, Harvard requests that Plaintiff: "Describe all efforts You undertook to prevent or mitigate the damages or harms You alleged to have suffered as a result of Harvard's alleged actions as described in the Amended Complaint, including, but not limited to, all steps taken to find employment between May 1, 2013 to the present." Steinberg Decl., Ex. 2 at 7. In response, Plaintiff objected that the Interrogatory was "vague, ambiguous, overbroad, and unduly burdensome" and again objected that the Interrogatory "seeks information in a narrative form." Steinberg Decl., Ex. 4 at 8. Plaintiff did not provide any response.

Just as with Plaintiff's response to Interrogatory No. 5, Plaintiff's response to Interrogatory No. 13 is wholly insufficient. Interrogatory No. 13 relates directly to Plaintiff's claims that he suffered damages as a result of Harvard's alleged actions. There is no question that a plaintiff has the responsibility to mitigate contract damages, and that a failure to mitigate will negate any claim of damages. *See Brewster Wallcovering Co. v. Blue Mountain*

*Wallcoverings, Inc.*, 68 Mass. App. Ct. 582, 612 (2007) ("'[A] party cannot recover damages for loss that he could have avoided by … reasonable efforts'" (quoting (Second) of Contracts § 350 (Am. L. Inst. 1981))).  Far from vague or ambiguous, the concept of damage mitigation is well elaborated in the case reporters.  For its part, Harvard is in no position to know what steps Plaintiff took to mitigate damages.  In order to prepare for Plaintiff's deposition and to understand what steps Plaintiff did take to mitigate his alleged damages, Harvard requires a sufficient response to this Interrogatory.

*Document Requests Nos. 3-6*

Plaintiff's responses to Document Requests 3, 4, 5 and 6 are similarly insufficient.  Harvard served Plaintiff the following Requests:

- **Request No. 3**: All Documents which refer, pertain, or relate to, or which support or refute, Your allegations in the Amended Complaint that the Secretary of the Ad Board, Jay Ellison, did not follow the relevant policies and procedures.

- **Request No. 4**: All Documents and Communications which refer, pertain, or relate to, or which support or refute, Your allegations that Harvard "impermissibly withheld [Your] degree." Am. Compl. ¶ 93.

- **Request No. 5**: All Documents and Communications which refer, pertain, or relate to, or which support or refute, Your "belie[f] that [Your] communications" with your Ad Board Representative "would be confidential." Am. Compl. ¶ 278.

- **Request No. 6**: All Documents and Communications which refer, pertain, or relate to, or which support or refute, Your belief that Laura Johnson would act as your advocate to the Ad Board.

Steinberg Decl., Ex. 1 at 6.

All of these Requests relate directly to Plaintiff's Remaining Claims:  Request No. 3 relates to the Meeting Theory, Request No. 4 to the Charge Theory, Request No. 5 to the Confidentiality Theory, and Request No. 6 to the Advocate Theory.  Plaintiff provided two identical boilerplate objections to these document requests.  Each fails.

First, Plaintiff stated that he "objects to th[ese] request[s] as impermissibly vague and ambiguous in requesting 'all' documents and communications which 'relate' to a particular allegation without regard for the proportional needs of this litigation."  Steinberg Decl., Ex. 3 at 4–5.  But it is well established that discovery is appropriate where "relevant to the claim or defense of any party," Wright & Miller, *supra*, § 2007, and each of these requests is directed specifically to a Remaining Claim in this case.  In order to mount its defense, Harvard must know the specific terms of the contract Plaintiff alleges it breached.

For example, with regard to Request No. 4, Plaintiff alleges that, under the parties' contract, it was "impermissible" for Harvard to withhold his degree.  Yet, he is refusing to state the basis for that contention and even to identify the terms of the contract he claims were breached by Harvard's decision to withhold his degree after a disciplinary case was initiated against him.  *See Black Hills Molding, Inc. v. Brandom Holdings, LLC*, 295 F.R.D. 403, 414 (D.S.D. 2013) ("[W]ithtout knowledge of the specific statements and actions giving rise to" the contract claim, defendant is "handicapped in its ability to mount a defense to [plaintiff's] allegations").  What contract term made it "impermissible" to withhold Plaintiff's degree when it did?  Plaintiff's answer is fundamental to his claim and essential to Harvard's ability to frame a defense.  Harvard is entitled to that answer.  The same is true of Requests Nos. 3, 5, and 6—each of which is likewise directed to one of the Remaining Claims.

Second, Plaintiff stated that he "objects to th[ese] request[s] to the extent that it seeks documents in the possession of, known to, or otherwise equally available to the defendant." Steinberg Decl., Ex. 3 at 4–5.[2] That is not true. Plaintiff is the party alleging that Harvard breached a contract with him, and he is the one alleging he has resulting damages. Only Plaintiff can explain the specific basis for his allegations. Harvard must not be required to guess what the contract is, what it says, and how it was breached. Only Plaintiff can explain the specific basis for his allegations. Even if Harvard could guess correctly, the Federal Rules entitle Harvard to know this information directly from Plaintiff. Fed. R. Civ. P. 26(b)(1). In the case of Request No. 5, for example, Plaintiff has alleged that he believed his communications with Johnson would be confidential. Harvard is in no position to know what documents or communications Plaintiff believed would be kept confidential. Likewise, Requests Nos. 3, 4 and 6, too, are well within the ordinary scope of discovery and are necessary for Harvard to prepare to take Plaintiff's deposition.

If Plaintiff cannot or will not even identify the contract terms that form the basis for his Remaining Claims, then each such Remaining Claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Harvard respectfully requests that the Court enter an Order compelling Plaintiff to respond, in full, to Interrogatories Nos. 5, 11, and 13 and Document Requests Nos. 3-6 on or before December 1, 2022 in order for the parties to proceed with scheduled depositions in this case and maintain the Court's Scheduling Order.

---

[2] Plaintiff's response to each Request is identical except for his response to Request No. 4. In response to Request No. 4, Plaintiff simply pointed Harvard to his entire production of documents. Steinberg Decl., Ex. 3 at 4. However, none of the documents Plaintiff produced relate to or refer to Plaintiff's allegation that Harvard "impermissibly withheld [his] degree." Am. Compl. ¶ 93. Plaintiff did not agree to search for, produce, or otherwise reference or identify any responsive document in response to Requests Nos. 3, 5, and 6.

Dated:  November 11, 2022					Respectfully submitted,

							/s/ Victoria L. Steinberg
							_____

							Victoria L. Steinberg (BBO #666482)
							vsteinberg@toddweld.com
							TODD & WELD LLP
							One Federal Street
							Boston, MA 02110
							Telephone: (617) 624-4714
							Facsimile: (617) 624-4814

							Anton Metlitsky (*pro hac vice*)
							ametlitsky@omm.com
							O'MELVENY & MYERS LLP
							7 Times Square
							New York, NY 10036
							Telephone:	(212) 326-2000
							Facsimile:	(212) 326-2061

							*Attorneys for Defendants,*
							*Harvard University, Harvard University*
							*Board of Overseers, and the President and*
							*Fellows of Harvard College*

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 11, 2022.

                                            */s/ Victoria L. Steinberg*
                                            Victoria L. Steinberg