UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAMILARE SONOIKI,<br>       Plaintiff,<br>  v.<br><br>HARVARD UNIVERSITY, HARVARD UNIVERSITY BOARD OF OVERSEERS, and THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br>       Defendants. | Civil Action No. 1:19-cv-12172 |

## DEFENDANTS' [REDACTED] OPPOSITION TO PLAINTIFF'S JANUARY 18, 2023 MOTION TO COMPEL

Pursuant to Local Rule 7.1, Defendants Harvard University, Harvard University Board of Overseers, and the President and Fellows of Harvard College ("Harvard")[1] oppose Plaintiff's motion to compel Harvard to respond to Plaintiff's Requests for Production. *See* Dkt Nos. 100, 101. In his motion, Plaintiff seeks to compel Harvard to: (i) conduct a "supplemental search" for documents responsive to Request for Production No. 18 (related to a May 31, 2013 email thread that Harvard previously produced in discovery); and (ii) provide a "supplemental response" to his Request for Production No. 19 (related to testimony from the deposition of Laura Johnson on December 8, 2022 deposition). The motion should be denied.

Fact discovery closed on January 16, 2023, and Plaintiff provides no basis for reopening discovery. Although Plaintiff claims that his motion is grounded in "the revelation of new information in discovery," Dkt. 101 at 3, in fact, Plaintiff's request stems solely from his own delay and lack of diligence. Indeed, the documents underlying his motion are not "new" at all: Harvard produced the "support" email at issue in Request No. 18 on November 16, 2022—two

---

[1] The Amended Complaint incorrectly identifies the Harvard entities as "Harvard University, Harvard University Board of Overseers, and the [sic] President and Fellows of Harvard College." President and Fellows of Harvard College is the legal entity for Harvard and is the only proper party to this litigation.

1

months before the close of fact discovery, and well in advance of the November 28, 2022 deadline to serve discovery requests. And Plaintiff took Laura Johnson's deposition, the purported basis for the motion as to Request No. 19, on December 6, 2022—nearly 6 weeks before the close of fact discovery. In fact, at that deposition, Plaintiff asked Ms. Johnson about *the very items* on which he now bases a motion to reopen fact discovery: the May 2013 email thread and Ms. Johnson's handwritten notes. In short, Plaintiff's motion is nothing more than an attempt to propound *new* discovery requests, well after the November 2022 deadline, under the guise of seeking supplemental discovery of an *existing* Request.

Plaintiff also does not even attempt to establish how the requested documents relate to the sole surviving cause of action[2] in this case—because they do not. For example, Plaintiff tries to make hay of a single email that he claims illustrates a supposed "conflict of interest." Dkt. No. 101 at 1. Tellingly, though, Plaintiff did not attach the thread containing that email to his motion. Harvard attaches the email thread here, and it shows Ms. Johnson emailed the Administrative Board ("Ad Board") Secretary and asked how to navigate a situation where Ms. Johnson was the resident dean to both the complainant ("Betty") and respondent (Plaintiff), since both students lived in the same Harvard College House. That is not a rare circumstance, and it does not demonstrate any "conflict of interest"—to the contrary, as the Ad Board Secretary explained in the very email thread on which Plaintiff relies, students subject to disciplinary

---

[2] The breach of contract theories that remain in the case are: (i) Harvard was not authorized under its policies to withhold Plaintiff's degree at graduation because it had not yet issued a "charge" relating to the allegations of sexual misconduct (the "Charge Theory"); (ii) Plaintiff's Board Representative, Laura Johnson, failed to advocate on his behalf despite an alleged responsibility to do so under Harvard's published procedures (the "Advocate Theory"); (iii) Johnson breached a duty of confidentiality that she allegedly had under Harvard's published procedures (the "Confidentiality Theory"); (iv) Ms. Johnson failed to provide Plaintiff with the names of witnesses against him in violation of her alleged obligations under Harvard's procedures (the "Witness Names Theory"); and (v) the Secretary of the Ad Board, Jay Ellison, failed to include Plaintiff's Board Representative in his meeting about the first two complaints or to meet with Plaintiff about the third complaint in alleged violation of Harvard's procedures (the "Meeting Theory") (together, the "Remaining Theories"). *Sonoiki*, 37 F.4th at 706, 711–13 (1st Cir. 2022); *see also* Am. Compl., Dkt No. 63, ¶ 4.

proceedings are told that their Board Representatives do not advocate on their behalf, so Board Representatives who have relationships with both students are not subject to any conflict when representing one of them. Moreover, it is undisputed that Plaintiff was well aware that Ms. Johnson was Betty's resident dean, and also that Ms. Johnson had been Betty's representative in a prior, unrelated university proceeding. Plaintiff was under no obligation to choose Ms. Johnson as his Board Representative, yet he did choose Ms. Johnson despite this knowledge. This email is not only unremarkable and not actionable on its face, but has nothing to do with the Remaining Theories in the case.

Plaintiff also seeks "handwritten notes" that Ms. Johnson purportedly took at Ad Board meetings. But at Ms. Johnson's deposition, in response to Plaintiff's questioning, she explained she took notes during Ad Board *Subcommittee meetings with witnesses*, not full Ad Board meetings. At best, Plaintiff is confused about the record and unclear about what documents he is specifically seeking; had he not raised this purported discovery dispute for the first time so late in discovery, the parties could have met and conferred further to minimize any potential disputes prior to motion practice involving the Court. But on the merits, there is no substance here either: nothing in the record indicates the existence of the handwritten notes Plaintiff seeks.

In short, Plaintiff's motion amounts to another fishing expedition—at Harvard's and this Court's expense—for documents that are not responsive to his existing discovery requests, are irrelevant to his Remaining Theories, and which Harvard has already produced or otherwise indicated it does not have. Moreover, the motion follows nearly two months of inactivity by Plaintiff, and the disputes raised in the motion were brought forward for the first time on the last business day before the close of discovery—Harvard and the Court should not be required to

shoulder the costs of Plaintiff's neglect or oversight. Accordingly, and for the reasons explained below, Harvard requests that the Court deny Plaintiff's motion to compel in its entirety.

## RELEVANT FACTUAL & PROCEDURAL HISTORY

Shortly before Plaintiff's Harvard College graduation ceremony in May 2013, Plaintiff was accused by two different women of sexual misconduct. Harvard informed Plaintiff it was initiating disciplinary cases against him and that he would not receive his degree while the cases were pending. In June 2013, a third woman accused Plaintiff of sexual assault, which resulted in Harvard initiating another disciplinary case. Harvard followed its applicable policies and procedures and investigated the three complaints.

The procedures applicable to Harvard's disciplinary process during the relevant time period provided that every student involved in a disciplinary proceeding had the option to choose a Board Representative to serve as the student's liaison to the full Ad Board. The Board Representative was normally a student's resident dean, but the procedures made clear that the student was free to choose any other voting member of the Ad Board. This choice was discussed with, and made clear to, Plaintiff, and Plaintiff chose Ms. Johnson, his Currier House Resident Dean, to serve in this role.

The record in this case shows that over the course of the investigations, Plaintiff frequently corresponded with Ms. Johnson regarding the proceedings. In her capacity as Plaintiff's Board Representative, and consistent with her liaison role, Ms. Johnson updated Plaintiff about the status of the disciplinary processes and discussed the statements Plaintiff planned to make to the Ad Board with Plaintiff. At the time, Plaintiff said Ms. Johnson was "so, so helpful" and that he "really appreciate[d]" her help. The record also shows Ms. Johnson took notes from Subcommittee meetings with witnesses and that she offered on several occasions to

go over her notes with Plaintiff, which he declined to do. In the meeting on November 19, 2013, where the Administrative Board voted on the outcome of Plaintiff's three disciplinary cases, Ms. Johnson does not recall taking notes. Johnson Decl. at ¶ 6.

Plaintiff filed this suit against Harvard in 2019 alleging, *inter alia*, that the disciplinary procedures that Harvard followed were unfair. Specifically, Plaintiff asserted claims against Harvard for breach of contract; violation of Plaintiff's right to basic fairness; violation of the covenant of good faith and fair dealing; and estoppel and reliance. *See* Dkt. No. 1. On June 22, 2020, this Court (Casper, J.) granted Harvard's motion to dismiss Plaintiff's Complaint in its entirety. *See* Dkt. No. 41. On June 14, 2022, the First Circuit affirmed the dismissal of the basic fairness, good faith and fair dealing, and estoppel and reliance claims. The First Circuit also affirmed the dismissal of many of the theories Plaintiff advanced in support of his breach of contract claim—including a theory of alleged biases by Harvard administrators. The First Circuit reversed and remanded, however, as to five discrete theories of Plaintiff's breach of contract claim. *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 717 (1st Cir. 2022). Of the few theories that survived the First Circuit's reversal, Plaintiff concedes that only one is relevant to the instant motion: Plaintiff's contention that Ms. Johnson failed to advocate on his behalf despite an alleged responsibility to do so under Harvard's published procedures—the Advocate Theory. *Sonoiki*, 37 F.4th at 706, 711–13 (1st Cir. 2022); *see also* Am. Compl. ¶ 4; Dkt. No. 101 at 1.

This Court set a schedule for the parties to complete fact discovery by November 30, 2022, which was extended to January 16, 2023. *See* Dkt. Nos. 60, 67. On November 16, 2022, Harvard made a large document production, which included the May 2013 email at issue here (HU-DS-0002877–79). The deadline to serve discovery requests was November 28, 2022. *See* Dkt. Nos. 60, 67. Plaintiff took Ms. Johnson's deposition on December 8, 2022. On January 13,

5

2023, one business day before the close of discovery,[3] Plaintiff sent a letter requesting "supplementation or clarification" with respect to the alleged "support" email and Ms. Johnson's handwritten notes.  Cohen Decl. Ex. A.  Harvard responded on January 18, 2023, indicating its position that Plaintiff's requests sought non-responsive or non-existent documents, and clarifying Harvard's retention policies.  Plaintiff's motion followed later that same day.

## LEGAL STANDARD

In general, parties may not conduct fact discovery after the fact discovery deadline has passed.  *See Disability Law Ctr., Inc. v. Mass. Dep't of Corr.*, 2011 WL 13365600, at *4 (D. Mass. Feb. 4, 2011).  "Rule 37 requires that a party who wants to file a motion to compel must make a good faith effort to negotiate with the nonresponsive party."  *Rivera-Almodovar v. Instituto Socioeconomico Comunitario*, 730 F.3d 23, 27 (1st Cir. 2013); *see* Fed. R. Civ. P. 37(a).  And "the party seeking an order compelling discovery responses over the opponent's objection bears the initial burden of showing that the discovery requested is relevant."  *Close v. Account Resolution Servs.*, 557 F. Supp. 3d 247, 248 (D. Mass. 2021).

## ARGUMENT

**A.     Plaintiff's First Request Is An Untimely New Document Request, and Is Irrelevant to the Advocate Theory and His Remaining Theories in This Case.**

In his motion, Plaintiff seeks "any Communications between Ann, Betty, and/or Cindy and Ms. Johnson reflecting Ms. Johnson's 'support' for Betty or any other complainant against Plaintiff in connection with the Disciplinary Proceedings."  ECF No. 101 at 2.  He asserts that this request is a "subset" of Request for Production No. 18.  *Id.*  But that is simply incorrect.

---

[3] The Court granted the parties' joint motion to extend discovery until January 23, 2023 to "permit Plaintiff to review and, if necessary, supplement his responses to existing requests issued during fact discovery."  Dkt. No. 99; *see* Dkt. No. 102.  Harvard also "suspended Plaintiff's deposition pending any supplemental productions, and has reserved its right to resume Plaintiff's deposition in order to complete its inquiry following Plaintiff's completed document productions."  Dkt. No. 99.

6

Plaintiff's new request plainly *does not* fall within Request No. 18, which sought "Documents and Communications concerning all interviews and/or meetings with Ann, Betty, and/or Cindy . . . ." The request in his motion, therefore, is a new request that Plaintiff improperly seeks to propound long after the November 28, 2022 discovery deadline to serve additional requests. *See* Dkt. No. 67. The request should be denied on that basis alone. In addition, even assuming these so-called "support" documents were *responsive* to Request No. 18 (which they are not), the Court should deny Plaintiff's motion because he does not establish they would be *relevant* to the Advocate Theory or any of the Remaining Theories. Plaintiff's request should be denied.

1. **Plaintiff's Motion to Compel Improperly Seeks to Propound New Discovery Requests Under the Guise of Request No. 18.**

Plaintiff's new discovery request comes *two months* after the email thread at issue was produced in this litigation, and a month-and-a-half after the deadline for making new requests. As much as Plaintiff would like to cast the email thread as a "revelation of new information in discovery," *see* Dkt. No. 101 at 3, the undisputed record illustrates that the May 2013 email thread at issue was produced on November 16, 2022, and that Plaintiff inquired about this very email thread at Ms. Johnson's December 6, 2022 deposition. Plaintiff therefore had at least six weeks to raise these issues, seek supplemental productions, confer with Harvard, and/or propound new requests altogether. Instead, Plaintiff waited until January 13, 2023—the last business day before the closing of fact discovery—to ask Harvard in a letter for the supposed "support" documents. Plaintiff made no attempt to meet and confer in advance of the close of discovery about this issue prior to issuing his letter. And after Harvard responded to Plaintiff's letter on January 18, 2023, Plaintiff did not attempt to narrow or resolve the issues identified in the January 13, 2013 letter and Harvard's January 18, 2023 letter.

7

Plaintiff's lack of diligence weighs in favor of denial. *See Wai Feng Trading Co. v. Quick Fitting, Inc.*, 2016 U.S. Dist. LEXIS 77672, at *26 (D.R.I. June 14, 2016) (movant's failure to diligently pursue readily available discovery warranted dismissal of its motion to compel); *Goldenson v. Steffens*, 2012 U.S. Dist. LEXIS 74650, at *22 (D. Me. May 30, 2012) (partially denying motion to compel because, *inter alia*, if "the [movant] wanted this discovery, they could and should have pressed for it shortly after learning" about it).

Presumably because he knows that his new discovery request comes far too late, Plaintiff tries to shoehorn this new request into existing Request No. 18. By its plain terms, though, Request No. 18 seeks the production of documents from interviews and meetings with the complainants in the course of the disciplinary proceedings—which are defined events in the Ad Board procedures. *See* ECF No. 63-03 at 4 (Ad Board process states: "*Interviews* . . . [y]ou and the complainant will have the opportunity to meet individually with the fact finder and subcommittee to discuss the alleged incident and to answer questions . . . [y]our Board Representative will accompany you to all the meetings with the subcommittee or fact finder" (emphasis in original)). Plaintiff's new request, however, asks for communications between Ann, Betty, and/or Cindy and Ms. Johnson reflecting Ms. Johnson's "support" for any of the complainants. These categories do not overlap, and Plaintiff makes no serious attempt to explain how or why they would. Because Plaintiff seeks the production of an entirely new category of documents, the motion should be denied. *See ML-CFC 2007-6 P.R. Props., LLC v. BPP Retail Props. LLC,* 2022 WL 2314558, at *18 (D.P.R. June 28, 2022) (motion to compel an "improper vehicle" for new discovery requests).

**2. The May 2013 Email Does Not Show Any "Conflict."**

8

Plaintiff's motion also fails for a second, independent reason: he does not, and cannot, explain how the documents would be relevant to the Advocate Theory or any of his other Remaining Theories.  *See Torres v. Johnson & Johnson*, 2018 WL 4054904, at *2 (D. Mass. Aug. 24, 2018) (party seeking an order compelling discovery responses over the opponent's objection bears the initial burden of showing that the discovery requested is relevant); *Mongue v. Wheatleigh Corp.*, 2021 WL 9217748, at *2 (D. Mass. Nov. 29, 2021) (defendants not required to produce a document that was not within the scope of document requests).  That is so for two reasons.

First, Plaintiff erroneously asserts that the May 2013 email exchange demonstrates that Ms. Johnson was subject to a "conflict of interest" of which Plaintiff was unaware.  But the "conflict of interest" that Plaintiff describes is simply that Ms. Johnson and Betty had a close relationship, which (i) Plaintiff already knew about and (ii) is a normal occurrence in disciplinary proceedings and specifically contemplated by the governing procedures.  Plaintiff chose Ms. Johnson as his Board Representative despite this knowledge.

Ms. Johnson's relationship with Betty arose because Betty lived in the same residential house as Plaintiff (so Ms. Johnson was also Betty's resident dean), and Ms. Johnson had previously served as Betty's Board Representative in an unrelated matter.  It is undisputed that Plaintiff knew that Ms. Johnson had previously served as Betty's Board Representative— ██████████████████████████████████████████████, s*ee* Cohen Decl. Ex. B, Johnson Dep. Tr. at 112:6-12; 113:16-23, and Plaintiff's own documents confirm his prior knowledge, Cohen Decl. Ex. C (██████████████████████████████████ "██████████████████████████████████████").  What's more, Ms.

Johnson herself discussed with Plaintiff "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Cohen Decl. Ex. B, Johnson Dep. Tr. at 115:18–25. Johnson testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id*. at 115:25–116:3. Indeed, Harvard's procedures themselves anticipate this scenario and state that the resident dean can serve as either the complainant's or respondent's Board Representative, but not both. See ECF No. 63-03 at 3 ("If both you and the complainant are residents of the same House, the resident dean ordinarily will advise only one of you and a "Board alternate" will be assigned to the other by the Dean of the College."). Betty chose a different Board Representative, and Plaintiff chose Ms. Johnson, consistent with the governing procedures, despite full knowledge of Ms. Johnson and Betty's relationship.

Second, Plaintiff mischaracterizes the May 2013 email exchange on which he relies. The email exchange does not support his Advocate Theory—in fact, it expressly refutes it. First, Ms. Johnson wrote the Secretary of the Ad Board, Jay Ellison:



Cohen Decl. Ex. D. The email reflects the situation—that complainant and respondent were both residents of the same house with the same resident dean—which, again, was not uncommon, was accounted for in Harvard's procedures, and of which Plaintiff was fully aware throughout the proceeding. Ellison responded ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.*, and Johnson asked ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ellison

10

responded ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████. Specifically, he wrote:



*Id.* (emphasis added).

Thus, not only does the May 2013 email exchange not show any "conflict of interest," but in fact it underscores that the Board Representative was not an advocate for the Plaintiff, contrary to his Advocate Theory.  Of course, if Plaintiff had thought that Ms. Johnson's relationship with Betty was somehow a procedural violation (which it was not), he could have pleaded it—but Plaintiff's Amended Complaint contains no allegations about any supposed "conflict."  *See P.R. Dairy Farmers Ass'n v. Pagán*, 2019 U.S. Dist. LEXIS 106489, at *5 (D.P.R. Mar. 12, 2019) (motion to compel denied because the requested discovery was "irrelevant to the allegations contained in the instant complaint").  Thus, the motion should be denied as to Request No. 18.

**B.     As To Plaintiff's Second Request, Harvard Fulfilled Its Discovery Obligations With Respect to Laura Johnson's Handwritten Notes.**

Plaintiff also seeks "a supplemental response to his Request for Production No. 19, clarifying whether the handwritten notes of Laura Johnson connected to the Administrative Board proceeding were lost or destroyed."  Dkt No. 101 at 2.  Request No. 19 requested "all Documents and Communications, including any notes, minutes, memoranda, recordings, and/or

reports, of every witness interview conducted by You or any third-party on your behalf, or at your request, in relation to the Disciplinary Proceedings."

In fact, Plaintiff, *still* has not identified the specific handwritten notes he seeks. It remains unclear if Plaintiff means to request: (i) Ms. Johnson's handwritten notes of full Ad Board meetings; (ii) handwritten notes of meetings between Ms. Johnson and Plaintiff; or (iii) Ms. Johnson's handwritten notes from Subcommittee interviews of witnesses. [4] During the January 18, 2023 Court Conference, Plaintiff's counsel indicated they were seeking notes from the November 19, 2013 Ad Board meeting where the Ad Board voted on Plaintiff's three disciplinary cases.

In any event, no request for any of these categories of documents warrants any further action by Harvard or justify Plaintiff's motion to compel:

**Full Ad Board Meetings:** To the extent Plaintiff seeks Ms. Johnson's handwritten notes from full Ad Board meetings, her deposition testimony gave no indication one way or the other that any such notes exist—because Plaintiff did not ask her about that. Nonetheless, Ms. Johnson can confirm she has no such notes. And as reflected in her attached declaration, Ms. Johnson does not recall taking notes at the November 19, 2013 Ad Board meeting at which the Ad Board voted on Plaintiff's three disciplinary cases. Johnson Decl. at ¶ 6.

To be clear, Ms. Johnson did testify at her deposition about other handwritten notes. When asked at her deposition if she "█████████████████████████████████

---

[4] This too could have been clarified through the meet and confer process so that the parties could minimize any disputes and not waste the Court's time and resources. Plaintiff's failure to propose a conference or conferral also weighs in favor of denying the motion. *See Katz v. Liberty Power Corp., LC*, 2020 WL 3492469, at *2 (D. Mass. June 26, 2020) ("A court may deny a motion to compel if the parties failed to meet and confer regarding the discovery dispute" and stating it is the movant's responsibility to arrange a conference); *Bucceri v. Cumberland Farms, Inc.*, 2020 U.S. Dist. LEXIS 1331, at *10 (D. Mass. Jan. 6, 2020) ("This requirement of a conference, rather than letters and emails, serves a salutary purpose of aiding resolution of disputes without requiring the assistance of the court.").

12

"" Ms. Johnson replied that she "                                                                                                                                            

                                                                                    " Cohen Decl. Ex. B, Johnson Dep. Tr. at 60:21-25

(emphasis added).  Ms. Johnson also testified that she was "                                                

                                                                    " and "                                        ."  *Id.* at 61:7-19.  Ms.

Johnson thus gave no testimony indicating she took handwritten notes on full Ad Board

meetings, or that any such notes would be preserved.

      Harvard's 30(b)(6) representative Michael Burke similarly did not testify that

handwritten notes from Ad Board meetings were preserved.  Rather, Burke testified that only

""

Cohen Decl. Ex. E, Burke Dep. Tr. at 52:1–22.  Plaintiff was provided with copies of the

documents Burke referenced: the subcommittee reports and the underlying evidence.

      **Meetings Between Plaintiff and Ms. Johnson:**  Harvard has already searched for all of

Ms. Johnson's notes and has produced what it found: the notes of Johnson's conversations with

Plaintiffs that she emailed to herself, as Harvard explained in its January 18, 2023 letter.  As to

handwritten notes from such conversations, Harvard clarified in that letter that it conducted a

reasonably prudent search and reported that such notes had not been located to date.  Cohen

Decl. Ex. F.

      **Subcommittee Interview Notes:**  With respect to handwritten notes from subcommittee

meetings of witnesses, those documents are not responsive to any of Plaintiff's Remaining

13

Theories.[5]  Regardless, as a part of its search for Ms. Johnson's handwritten notes from her meetings with Plaintiff, Harvard did not locate Subcommittee Interview notes either.

Given these prior productions and explanations, it is entirely unclear what additional information Plaintiff hopes to secure from his motion to compel, nor does Plaintiff offer any relevant authority to support his position.[6]  The ambiguity about what notes Plaintiff was actually seeking could have been readily clarified by meet and confer had Plaintiff made any attempt to do so.

## CONCLUSION

For the foregoing reasons, Harvard respectfully requests that the Court deny Plaintiff's motion to compel.

---

[5] In its October 13, 2022 responses and objections to Plaintiff's First Set of Requests for Production of Documents, Harvard objected to Request No. 19 to the extent it sought documents not relevant to the Remaining Theories and only agreed to search for documents relevant to the Remaining Theories.  Plaintiff never sought to meet and confer further on this objection.

[6] The sole case Plaintiff cites is completely distinguishable. *See* Dkt No. 100 at 2 (citing *NLRB v. Pan Am. Grain Co.*, 2022 U.S. Dist. LEXIS 220967, at *18-19 (D.P.R. Dec. 7, 2022).  In *NLRB*, the court granted a motion to compel where a party impermissibly "failed to identify which, if any, documents were not produced[.]"  *Id.*  But in *NLRB*, the party *specifically stated* other documents would be provided by their attorneys—*i.e.,* they stated they would produce certain documents, but did not do so.  In contrast, here, Harvard has explained the notes *cannot* be produced, and has made no assertion or commitment to the contrary.

Dated: February 1, 2023							Respectfully submitted,


							/s/  Anton Metlitsky
							Anton Metlitsky (*pro hac vice*)
							David Cohen (*pro hac vice*)
							O'MELVENY & MYERS LLP
							7 Times Square
							New York, NY 10036
							(212) 326-2000
							ametlitsky@omm.com
							dcohen@omm.com

							Apalla U. Chopra (pro hac vice)
							O'MELVENY & MYERS LLP
							400 South Hope Street
							Los Angeles, CA 90071
							(213) 430-6000
							achopra@omm.com

							Victoria L. Steinberg, BBO # 666482
							CLOHERTY & STEINBERG LLP
							33 Arch Street
							Boston, MA  02110
							vsteinberg@clohertysteinberg.com



							*Attorneys for Defendants*
							*Harvard University, Harvard Board of*
							*Overseers, and President and Fellows of*
							*Harvard College*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 1, 2023.

/s/  *Anton Metlitsky*
Anton Metlitsky