UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAMILARE SONOIKI,

        Plaintiff,

    v.

HARVARD UNIVERSITY, et al.,

        Defendants.

Civil Action No. 1:19-cv-12172-LTS

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE
TESTIMONY OF PLAINTIFF'S EXPERTS STEVEN D. SHEDLIN,
CHAD L. STALLER, AND STEPHEN M. DRIPPS**

## INTRODUCTION

Harvard declined to award Plaintiff Damilare Sonoiki a degree because, after conducting a thorough investigation under its disciplinary policies then in effect, it concluded that he had sexually assaulted three Harvard students.  In response, Plaintiff brought this suit, alleging that Harvard's actions constituted a breach of contract.  Plaintiff further alleges that the breach caused him damages—specifically, that it deprived him of employment opportunities in entertainment and finance.

Plaintiff began his post-college career in the finance industry.  While working at Goldman Sachs, he engaged in insider trading for which he pled guilty and was later convicted.  He also admits to having misled Goldman Sachs into thinking that he had a Harvard degree when he, in fact, did not.  He resigned from Goldman Sachs and transitioned to the entertainment industry, seeking to be a comedy writer for various television shows in Hollywood.  Despite lacking a Harvard degree, he wrote for *The Simpsons* and *Black-ish*, among other jobs for which he was paid both a salary and residuals.  ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██ Through this lawsuit, Plaintiff now seeks at least an additional $2.5 million, which he claims is the equivalent of the career opportunities he lost because Harvard withheld his degree.

Plaintiff chose not to disclose any fact witnesses, either in his initial disclosures or at any other time during discovery, that could have testified about the career opportunities he purportedly lost due to Harvard's actions.  Instead, Plaintiff hired a vocational expert, Steven D. Shedlin, who opines that Plaintiff lost hundreds of thousands of dollars' worth of creative opportunities in

Hollywood as a result of Harvard's degree decision.  In particular, Shedlin's report concludes that Plaintiff, who has been convicted of felony insider trading, would have had no problem getting a job in Hollywood but for the fact that Plaintiff was the subject of Title IX allegations, which Shedlin maintains are toxic in the industry.  Shedlin also opines that while Plaintiff's insider trading conviction precludes him from working in the financial industry, Harvard is somehow to blame for that insider trading because Plaintiff would never have had the opportunity to commit insider trading but for Harvard's withholding of his degree.  Each of these opinions is irredeemably deficient for multiple reasons.

**The Entertainment Industry Opinion.**  Shedlin's report is based on the core opinion that Plaintiff lost opportunities in the entertainment industry because of Harvard's degree decision.  *See generally* Ex. C (Steven D. Shedlin's February 20, 2023 Expert Report).  That opinion is inadmissible for several reasons:

- First, Shedlin is unqualified to render an opinion on the basis for Plaintiff's alleged lost employment opportunities because, as he readily admits, he has no entertainment-industry expertise.  Rather, his knowledge about that industry comes entirely from his conversations with Plaintiff and two of Plaintiff's "Hollywood associates," ███ ████████████████, each of whom communicated to Shedlin their opinion that the Title IX allegations against Plaintiff were the cause of Plaintiff's employment difficulties.  *See* Ex. C at 4.  In short, an expert cannot testify about a subject on which he has no expertise.

- Second, Shedlin's opinion is an improper attempt to pass on the hearsay testimony of ███████████.  Plaintiff did not disclose those two "associates" as fact witnesses, and Shedlin cannot simply relay their hearsay statements in the guise of expert opinion.  *United States v. Cormier*, 468 F.3d 63, 73 (1st Cir. 2006).

- Third, Shedlin's purported methodology is facially unreliable and thus his opinion is inadmissible under Rule 702.  An expert cannot offer a generalized opinion about an entire industry about which he knows nothing based entirely on conversations with just Plaintiff (his client) and two others.

- Fourth, while disclaiming any opinion about liability, Shedlin nonetheless proffers an opinion on causation.  He opines that Harvard's withholding of Plaintiff's degree resulted in the loss of employment opportunities in the entertainment industry, but as

explained below, that causation opinion is factually baseless and suffers from several logical errors.

**The Finance Industry Opinion.**  Shedlin's opinion as to Plaintiff's lost opportunities in the financial industry is similarly inadmissible.  Shedlin also lacks expertise in finance, but nevertheless opines that Plaintiff's insider trading conviction precludes him from working in that industry again. *See* Ex. C at 4.  Shedlin further asserts that, but for Harvard's decision not to award a degree after Plaintiff was found responsible for sexual assault, Plaintiff would not have had the opportunity to commit insider trading—because, according to Shedlin, if Harvard *had* granted Plaintiff a degree, Plaintiff would have left Goldman Sachs for a hedge fund and therefore would not have had the opportunity to commit a crime.  *Id*.  That opinion is not only hopelessly speculative, but also is based on (i) several incorrect factual premises and (ii) an entirely unexplained assumption about why Plaintiff could not have engaged in financial crime at a hedge fund, just as he did at Goldman Sachs.

**The Lost-Earnings Opinions.**  Plaintiff also hired two individuals from the Center for Forensic Economic Studies, Chad L. Staller and Stephen M. Dripps, to render expert opinions regarding Plaintiff's alleged lost earnings.  Because those opinions are based exclusively (and expressly) on Shedlin's improper opinion, they are likewise inadmissible.

*****

In sum, Defendants Harvard University, Harvard University Board of Overseers, and the President and Fellows of Harvard College ("Harvard")[1] respectfully request that the Court exclude the opinions of Plaintiff's proffered experts prior to Harvard's deadline to move for summary judgment.  Harvard intends to raise several causation and damages-related issues on summary

---

[1] Plaintiff's Complaint incorrectly identifies the Harvard entities as "Harvard University, Harvard University Board of Overseers, and the President and Fellows of Harvard College."  The President and Fellows of Harvard College is the legal entity that comprises the various named defendants and is the only proper party to this litigation.

judgment, and a resolution to this motion prior to summary judgment will permit the parties to address those issues efficiently and consistent with the scope of evidence to be considered by this Court at summary judgment and/or at trial.

### **BACKGROUND**

Shortly before his Harvard College graduation ceremony in May 2013, Plaintiff was accused by two different women of sexual misconduct.  Harvard informed Plaintiff that it was initiating disciplinary cases against him, and that he would not receive his degree while the cases were pending.  In June 2013, a third woman accused Plaintiff of sexual assault, which resulted in Harvard initiating another disciplinary case against him.  Harvard, consistent with its applicable policies and procedures, investigated the three complaints.  After Plaintiff was found to have violated Harvard's policies on sexual misconduct, in December 2014, the Faculty Council of Harvard College voted to dismiss him in each of the three cases.

Five years later—during which time Plaintiff pleaded guilty to insider trading and settled a case with the Securities Exchange Commission barring him from associating with investment and broker entities—Plaintiff filed this suit against Harvard, alleging, among other things, that the disciplinary procedures that Harvard followed were unfair.  Specifically, Plaintiff asserted claims against Harvard for breach of contract; violation of Plaintiff's right to basic fairness; violation of the covenant of good faith and fair dealing; and estoppel and reliance.  *See* Dkt. No. 1.  On June 22, 2020, the Court (Casper, J.) granted Harvard's motion to dismiss Plaintiff's Complaint in its entirety.  *See* Dkt. No. 41.  On June 14, 2022, the First Circuit affirmed the dismissal of the basic fairness, good faith and fair dealing, and estoppel and reliance claims.  It also affirmed the dismissal of many of the theories Plaintiff advanced in support of his breach of contract claim. The First Circuit reversed and remanded, however, as to five narrow theories of Plaintiff's breach

of contract claim. *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 717 (1st Cir. 2022). Plaintiff filed an Amended Complaint on August 11, 2022. *See* Dkt. No. 63.

This Court set a schedule for the parties to serve their initial disclosures by August 31, 2022. *See* Dkt No. 60. On November 1, 2022, Harvard sent a letter to Plaintiff noting deficiencies with respect to his damages disclosure. *See* Dkt. No. 91, ¶ 4. On November 23, 2022, Plaintiff supplemented certain of his discovery responses, but did not amend or supplement his damages disclosure. *Id.* at ¶ 7. On December 8, 2022, Harvard moved this Court for an order compelling Plaintiff to comply with his initial disclosure obligations, explaining that, despite numerous requests, Plaintiff refused to provide a computation of each of his claimed damages. *See* Dkt. Nos. 89, 90. This Court, by Order dated December 23, 2022, mandated Plaintiff to comply with his damages disclosure obligations. *See* Dkt. No. 97. In relevant part, the Court noted that "to the extent [Plaintiff's damages] categories involve specific lost opportunities (e.g., a specific job or business opportunity lost), then Plaintiff shall supplement by identifying the *specific* opportunity and *the damage arising therefrom*. *Id.* (emphasis added). Plaintiff supplemented his initial disclosures on January 5, 2023, just days before his deposition. Neither ███████████████ ███████ was identified in either set of disclosures as a fact witness who has knowledge related to this case. Nor did any of the documents that Plaintiff produced mention ████████████.

Harvard took Plaintiff's deposition on January 11, 2023, at which Plaintiff testified to the opportunities he purportedly lost, including those in the entertainment industry. At no point did Plaintiff testify about, or mention, ███████████████. Following his deposition, this Court extended the fact discovery deadline by one week to allow Plaintiff time to supplement his document productions based on the numerous categories of documents he identified for the first time in his deposition. *See* Dkt. Nos. 99, 102. On January 16, Plaintiff made a supplemental

production of documents totaling over 1,500 pages.  Neither ███████████ appeared in this production.

On February 20, 2023, Plaintiff proffered an expert report by Steven D. Shedlin.  Shedlin purports to be a vocational expert.  He testified that he is not an expert in entertainment or finance, and has done no research within those fields in order to reach his opinion in this case.  Ex. D (Steven D. Shedlin's March 29, 2023 Depo. Tr.) at 13:10–22.  Nonetheless, his opinion is based entirely on specific claims about those two industries.  His two basic opinions are:

- **Regarding the Entertainment Industry**.  Shedlin opines that Plaintiff has lost and continues to lose employment opportunities in the entertainment industry. Ex. C at 5. Shedlin does not opine that Plaintiff lost these opportunities because of the lack of a degree.  *Id.*  Rather, he states that the lost opportunities derive from the fact that Plaintiff has ███████████████████████  *See id.* at 4, 5.  Shedlin reached his opinions based entirely on a conversation with Plaintiff, and one 15-20 minute telephone interview with each of ███████████, "two Hollywood associates of [Plaintiff]," whom Plaintiff suggested Shedlin contact.  *Id.* at 2, 4; Ex. D at 59:3–5, 63:20–22, 52:16–19, 59:17–22.

- **Regarding the Financial Industry**.  Shedlin also opines that Plaintiff is effectively precluded from working in the financial industry because of his insider trading. Ex. C at 4. ██████████████████████████████ Ex. D at 157:16–20.  At the same time, he opines that, had Harvard granted Plaintiff a degree, Plaintiff would not have had the opportunity to engage in insider trading.  Ex. C at 4.  Therefore, in Shedlin's view, Plaintiff would have remained in the industry and earned significant salaries.  *Id.*  The amounts that Shedlin claims Plaintiff would purportedly have earned are based solely on the word of an anonymous contributor, *@rumplestiltskin*, who posted at an unknown time to a website that disclaims the reliability of its content.  Ex. E ("Hedge Fund Salary Guide" published on Wall Street Oasis website) at 3; Ex. F (Wall Street Oasis terms and conditions).

Plaintiff also proffered an expert report co-signed by Chad L. Staller and Stephen M. Dripps purporting to address "the economic loss incurred . . . as a result of [Plaintiff's] undergraduate degree being withheld."  Ex. G (Chad L. Staller and Stephen M. Dripps' Expert Report) at 1.  The opinions contained in that report are based entirely upon and assume the

reliability of Shedlin's opinions.  *Id.* at 4–5 (excerpting Shedlin's opinions and acknowledging as much).

Harvard deposed Shedlin and Staller[2] on March 29 and March 31, 2023, respectively.

## LEGAL STANDARD

Expert witnesses may testify in the form of an opinion only if their "knowledge, skill, experience, training, or education" qualifies them to do so.  Fed. R. Evid. 702.  An expert's report must fully disclose "the facts or data" the expert relied upon, and any opinion testimony must be the product of "reliable principles and methods" and "based on sufficient facts or data," Fed. R. Civ. P. 26(a)(2)(B)(ii); Fed. R. Evid. 702(b)–(c).  The expert "may not simply summarize the out-of-court statements of others as his testimony."  *United States v. Cormier*, 468 F.3d 63, 73 (1st Cir. 2006).

To ensure these requirements are met, the trial court must act as a gatekeeper.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (extending *Daubert* beyond scientific experts).  The Court must conduct a preliminary assessment of the expert's testimony to determine whether there is a valid basis for admission and find that "the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion."  *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002).  The proponent of the expert's testimony bears the burden of proof on this inquiry "by a fair preponderance of the evidence."  *United States v. Green*, 405 F. Supp. 2d 104, 118 (D. Mass. 2005).

---

[2] Although the report was co-signed by Staller and Dripps, Staller testified that he considered himself the author of the report and was competent to testify about the opinions contained in the report.  Ex. H (Chad L. Staller's March 31, 2023 Depo. Tr.) at 36:15–37:5.

If "there is simply too great an analytical gap between the data and the opinion proffered, the expert's testimony should be excluded." *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 32 (1st Cir. 2012) (internal quotation marks omitted) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also Koken v. Black & Veatch Constr., Inc.*, 426 F.3d 39, 47–48 (1st Cir. 2005) (trial court properly excluded expert evidence where expert's opinion was not shown to rest on any reliable methodology); *Bogosian v. Mercedes-Benz of N.A., Inc.*, 104 F.3d 472, 477–79 (1st Cir. 1997) (trial court properly determined that the methodology used by a proffered expert lacked the requisite reliability).

## **ARGUMENT**

### I.   Shedlin's Opinion Regarding Plaintiff's Alleged Inability To Obtain Work In Hollywood Is Inadmissible For Several Reasons.

#### A.   Shedlin Is Unqualified to Opine on Plaintiff's Employability in the Entertainment Industry.

"Before accepting expert testimony, a district court must determine that a witness is 'qualified as an expert by knowledge, skill, experience, training, or education.'" *United States v. Vargas*, 471 F.3d 255, 262 (1st Cir. 2016) (citing Fed. R. Evid. 702).  "That a witness qualifies as an expert with respect to certain matters or areas of knowledge does not mean that he or she is qualified to express expert opinions as to other fields." *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) (cleaned up).

An expert's "longstanding experience" is not a sufficient basis for an expert opinion without that person explaining "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Maciel v. Thomas J. Hastings Props., Inc.*, 2012 WL 13047595, at *5 (D. Mass. Nov. 30, 2012) (citing Fed. R. Evid. 702 advisory committee's note).  In other words, "[t]he gate-keeping

function of the trial court requires more than merely 'taking the expert's word for it.'" *United States v. Zolot*, 968 F. Supp. 2d 411, 429–30 (D. Mass. 2013).

Here, nothing in Shedlin's credentials or background suggests that he has "achieved a meaningful threshold of expertise" in the workings of the entertainment industry such that he may credibly opine on the cause of Plaintiff's inability to obtain work there. *See Prado Alvarez v. R.J. Reynolds Tobacco Co.*, 405 F.3d 36, 40 (1st Cir. 2005). In fact, though he is a "Certified Rehabilitation Counselor," Shedlin admits that he has *no* experience in entertainment. *See* Ex. C at 1–2; Ex. D at 13:13–18 ██████████████████████████████████ ████████████████████████████ This by itself should preclude Plaintiff from relying on his "expert" testimony.

Notwithstanding his lack of expertise, Shedlin opines that "the reputational harm stemming from [Plaintiff's] not receiving his degree from Harvard stemming from the finding of responsibility in the Title IX claims" has prevented Plaintiff from working in Hollywood. *See* Ex. C at 5. The only basis for that opinion is his conversation with Plaintiff and two industry participants, "associates" of Plaintiff ████████████████████████. ████████████ ████ also allegedly told Shedlin that Plaintiff's insider trading conviction would not affect Plaintiff's ability to get a job in Hollywood. *Id.* at 4. However, Shedlin admits that neither ████████████████ is an industry expert and that their views may not be representative of the industry generally. *See* Ex. D at 38:19–39:11 █████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████; *id.* at 40:17–22 ██████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████; *id.* at 53:17–19

████████████████████████████████████████████████████████████

████████████████ ; *id.* at 61:3–8 ███████████████████████████

██████████████████████████████████████████████

It is therefore improper for Plaintiff to rely on the purported "expert opinion" that a felony conviction would not impact Plaintiff's ability to obtain employment in the entertainment industry based solely on the fact that ████████████ personally do not appear to mind that Plaintiff is a convicted felon. Shedlin simply has engaged in no reliable methodology that would provide a basis upon which to opine about Plaintiff's employability in the entertainment industry. He has no professional experience in the industry, failed to conduct any independent research on the number or type of positions available in entertainment at any time period relevant to this case, *id.* at 13:13–21, and indeed has no knowledge of ██████████████████████████ *id.* at 15:8–12. As a result, his opinion is inadmissible.

**B.      Shedlin's Opinion Is a Vehicle to Introduce Otherwise Inadmissible Hearsay Without Any Additional Required Specialized Knowledge.**

The fact that Shedlin arrives at his opinion based solely on Plaintiff's own opinion and those of Plaintiff's "associates," ████████████████, *see* Ex. C at 4 (summarizing Shedlin's conversations with each); Ex. D at 135:7–15 ██████████████████████████ ████████████████████████ renders it inadmissible for an additional, independent reason: the opinion impermissibly regurgitates otherwise inadmissible hearsay without bringing to bear any expertise of Shedlin himself.

Under Federal Rule of Evidence 703, an expert may rely on hearsay evidence, provided that he "form[s] his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials." *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 141 F. Supp. 3d 147, 148 (D. Mass. 2015) (quoting *United States v. Meijia*, 545 F.3d 179, 197 (2d Cir. 2008)). An

expert "may not simply summarize the out-of-court statements of others as his testimony." *Cormier*, 468 F.3d at 73; *see also Everlight*, 141 F. Supp. 3d at 149 (noting that "Rule 703 was never intended to allow oblique evasions of the hearsay rule or to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion"); *Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 461, 469 (D. Mass. 2017) (explaining that an expert may not "'parrot' the conclusions of other witnesses" or "blindly rely on his client's representations"). Indeed, "an expert who parrots an out-of-court statement is not giving expert testimony; he is a ventriloquist's dummy." *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014).

Here, Shedlin acts as a stenographer for Plaintiff, ████████████, without even a hint of further analysis. But to the extent that it is admissible, Plaintiff can directly testify as to his own knowledge; Shedlin adds nothing by passing on Plaintiff's views. *See Doe by and through Pike v. Pike*, 405 F. Supp. 3d 243, 251 (D. Mass. 2019) (refusing to let expert testify to party's knowledge when "the jury [could] make their own determinations as to [the party's] knowledge and credibility"). And if Plaintiff believes that ████████████ are relevant to this matter, he should have included them in his initial disclosures. Fed R. Civ. P. 26(a)(1). But he did not. Nor did he raise them in his deposition, or at any other point during discovery. It is now far too late to add new fact witnesses to the mix without any basis for the delay, and it is highly improper and prejudicial to Harvard to offer their untested hearsay testimony through the guise of expert opinion.

Indeed, the fact that Shedlin is merely passing on the hearsay statements of potential fact witnesses and offering no additional analysis of his own reflects yet another problem with his opinion—"if admitted, [it] likely would [not] assist the trier of fact to understand or determine a

fact in issue." *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d, 77, 81 (1st Cir. 1998); *see Schneider v. BMW of N. Am., LLC*, 2022 WL 1718996, at *3 (D. Mass. Feb. 22, 2022) ("[E]xpert testimony does not assist where the jury has no need for an opinion because it easily can be derived from . . . the jury's own perceptions. . . ." (quoting 29 Charles Alan Wright, et al., Federal Practice and Procedure § 6274 (1997)). If Shedlin's opinion simply passes on the statements of three lay witnesses, then it is not an appropriate subject for expert testimony in the first place, and should be excluded. *See Pike,* 405 F. Supp. 3d at 251.

### C.   Shedlin's Entertainment Industry Opinion Is Not Based On Reliable Principles Or Methodology.

Shedlin's lack of industry expertise itself suffices to exclude his opinion, but that lack of expertise also results in his having to rely entirely on inherently unreliable anecdotal evidence. "[A]necdotal evidence derived from random interviews . . . is, by definition, non-systematic and non-generalizable." *Recreational Devs. of Phoenix, Inc. v. City of Phoenix*, 220 F. Supp. 2d 1054, 1061 (D. Ariz. 2002) (calling an expert report reliant on such evidence "completely devoid of any reliable methodology"). Here, once again, Shedlin's opinion turns on his conversation with Plaintiff and interviews with just two of Plaintiff's Hollywood associates, in part because he reached out to only three such associates *in total*. Ex. D at 49:2–5 ████████████████ ███████████████████████████████████████████████████████████ ████████████████████ *Id.* at 45:2–5.

Moreover, Shedlin provides no indication whatsoever that any of these sources is unbiased. Plaintiff certainly is not, so Shedlin's opinions based on conversations with him must be discounted. And Shedlin does not claim that ██████████████ is unbiased either. *See* Ex. D at 52:5–10 ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████



; *id.* at 52:1–4

*id.* at 51:3–7

*id.* at 51:9–12

Furthermore, in order to render an opinion on Plaintiff's earning capacity, Shedlin relies on the purported current availability of one alleged writing project that ███, again herself not an expert in employability issues in the entertainment industry, identified as a job that Plaintiff could apply for were he not the subject of Title IX allegations.  Ex. D at 113:14–17.  But this project was identified as a general job opening, not a position that ███ could offer Plaintiff outright.  *Id.* at 66:19–23.  Once again, Shedlin fails to explain how a single, speculative data point speaks to Plaintiff's likely earnings in, as Shedlin describes it, a ████████████ industry.  *See id.* at 142:13.

Given these deficiencies, Plaintiff cannot satisfy his burden to demonstrate that Shedlin's opinion was the result of reliable principles or methods.  *See Green*, 405 F. Supp. 2d at 118; Fed. R. Evid. 702, Advisory Comm. Notes to 2000 Amendments ("An opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist.").

For all the above reasons, Shedlin's entertainment-industry opinion should be excluded.

### D.      Shedlin Fails to Connect Harvard's Decision to Withhold Plaintiff's Degree to the Relevant Alleged Harm In the Entertainment Industry.

Shedlin's opinion also suffers from a separate yet equally fundamental methodological defect:  Although he claims not to be a liability expert, Shedlin nonetheless opines—without any

basis in fact or as an "expert"—that Harvard's withholding of Plaintiff's degree, rather than the

underlying allegations of sexual misconduct or ███████████████████, caused Plaintiff's

inability to find work in Hollywood.

The hearsay opinions of █████████████ that Shedlin relays without analysis claim

that Title IX allegations caused Plaintiff to lose employment opportunities in entertainment.  *See*

Ex. C at 4 ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Even Shedlin acknowledges the importance of the allegations of sexual misconduct to Plaintiff's

employability.  Ex. D at 58:9–10 ████████████████████████████████

███████████████████████  Yet in the same breath, Shedlin insists without explanation that

Plaintiff's "not receiving his degree from Harvard" is to blame for Plaintiff's purported

employability problem.  Ex. C at 5.  Shedlin does not contend that Harvard's withholding of

Plaintiff's degree caused any so-called "me too" allegations to become known to potential

employers.  Nor does Plaintiff allege that Harvard violated its own confidentiality rules and

disclosed the nature of the allegations against him to anyone.  Shedlin thus provides no logical link

between the reasons he believes Plaintiff is unemployable in the entertainment industry and

Harvard's withholding of Plaintiff's degree.

Shedlin's causation analysis also fails to take into account record evidence that contradicts

his purported "expert" opinion.  For example, █████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████  When asked about that

statement, Shedlin admitted that he failed to consider it in formulating his opinion, ██████████

████████████████████  Ex. D at 43:10–21.  Shedlin's failure to consider this evidence

while offering an opinion that the evidence directly contradicts offers yet another reason to exclude

his testimony.  *See* Fed R. Evid. 702, Advisory Comm. Notes to 2000 Amendments (reliability of

expert testimony considers "[w]hether the expert has adequately accounted for obvious alternative

explanations").

## II.    Shedlin's Opinion About The Finance Industry Is Also Inadmissible.

### A.    Shedlin is Unqualified to Opine on Plaintiff's Employability in the Finance Industry.

Shedlin admits that he has no expertise in the finance industry and thus should not be opining

on Plaintiff's employability and earning capacity in it.  Ex. D at 13:10–12 ███████████████████

██████████████████████████████████████████████; *see Vargas*, 471 F.3d at 262.

Nonetheless, he opines that Plaintiff's "conviction for insider trading has made it extremely

difficult, if not impossible for [him] to continue working in" finance.  Ex. C at 4.  And at the same

time, Shedlin opines that, if Plaintiff would never have had an insider trading conviction, then he

would be earning ███████████████████████  in that industry at this time.  *Id.*  Because he is

not an expert in this industry, and has done no reliable research nor (as explained below) has he

engaged in any reliable methodology regarding employability in the industry, his opinion should

be excluded.

### B.    Shedlin's Finance Industry Opinion Depends Upon an Uncredited Blog Entry, Rather than the Specialized Knowledge Required of an Expert Opinion, and Is Therefore Unreliable.

Shedlin's opinion that, but for Harvard's degree decision, Plaintiff ██████████████████

██████████████████████████  is based on a wholly unreliable foundation.  Shedlin

premised his opinion on a "February 9, 2023 article from Wall Street Oasis," Ex. C at 2, 4, a site that explicitly advises that its information may be "inaccurate, and in some cases will be mislabeled or deceptively labeled," Ex. F.

The article sources the relevant data from the forum post of a single anonymous user, *@rumplestiltskin*, who claims to present numbers "based on their personal experience at their fund." Ex. E at 3. When pressed, Shedlin testified that █████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████ *Id.* at 90:10–16.

Ultimately, when asked whether—in light of all the aforementioned unknowns—the data in the Wall Street Oasis article were █████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Ex. D at 97:5–15.

Because Shedlin's opinion is based on a wholly unreliable foundation, it is inadmissible and thus should be excluded.

### C.   The Opinion Assumes Causation Based on Incorrect Facts and Speculation, While Ignoring Key Record Evidence.

Shedlin further opines that Plaintiff "would not have had the ability to engage in insider trading" had Harvard granted him his degree. Ex. C at 4. In particular, Shedlin contends that (i) Plaintiff did not begin to engage in insider trading until September 2014 while working at Goldman Sachs; (ii) he had a job offer to go to the hedge fund, ██████████████████████████, in May 2014, but that offer was rescinded when the hedge fund found out about Plaintiff's lack of a

degree; and (iii) had Plaintiff gone to the hedge fund rather than staying at Goldman Sachs, he would not have had the opportunity to engage in insider trading. *Id.* at 3–4. Shedlin's attempt to get Plaintiff off the hook for the crime to which he pleaded guilty is based on faulty facts, baseless assumptions, and a non-existent methodology.

*First*, Shedlin's entire premise—that ██████ rescinded its offer of employment because Plaintiff did not have a Harvard degree—is contradicted by record evidence Shedlin did not consider. Soon after ██████ withdrew its offer, Plaintiff texted Betty, one of the complainants, stating that ███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████ Ex. D at

107:5–12. Without having meaningfully dealt with such countervailing evidence, Shedlin cannot properly opine as to the cause of Plaintiff's harm. *See* Fed R. Evid. 702, Advisory Comm. Notes to 2000 Amendments. And without this main premise—*viz.*, that ████████ withdrew its offer because Harvard withheld Plaintiff's degree—the remainder of Shedlin's opinion makes no sense.

*Second*, Shedlin appears to base his opinion that Plaintiff would not have engaged in insider trading on the proposition that Plaintiff did not begin insider trading until September 2014, months after he received his hedge fund offer. That is demonstrably incorrect—the criminal conduct began months earlier. Ex. K (Plaintiff's September 19, 2018 Plea Hrg. Tr.) at 38:6–40:1 (explaining that Plaintiff's first insider trade began in July 2014); Ex. D at 111:13–23 ████████████████████ Because the inaccurate September date appears to be a predicate for Shedlin's opinion, the opinion is inadmissible for that reason too. *See Riani v. Louisville Ladder, Inc.*, 2010 WL 2802040, at *6

(D. Mass. July 14, 2010) ("An expert cannot render an opinion that is based on an incorrect factual premise."); *Damon v. Sun Co.*, 87 F.3d 1467, 1474 (1st Cir. 1996) ("[E]xpert testimony must be predicated on facts legally sufficient to provide a basis for the expert's opinion.").

*Third*, Shedlin's opinion assumes that Sonoiki would not or could not have engaged in financial misconduct if he no longer worked at Goldman Sachs and instead worked at a hedge fund. But Shedlin provides no credible explanation as to why he holds this belief. *See* Ex. D at 110:6–9 ███████████████████████████████████████████████████████████

██████████████████████████████████ The assumption has no reliable basis in fact or common sense. Plaintiff met the person to whom he passed on inside information at a party in late 2013, before he had a job offer to go to a hedge fund, Ex. L (Plaintiff's July 29, 2021 Sentencing Hrg. Tr.) at 47:16–21—a fact which Shedlin appeared not to know or have considered, *see* Ex. D at 110:23–111:2. Furthermore, Plaintiff presumably would still have had the inside information he obtained at Goldman Sachs, and he would have been exposed to new financial information at the hedge fund and could have illegally misused that as well. At minimum, Shedlin has no way of knowing either way, because he admittedly has no expertise in finance. Ex. D at 13:10–12. And to the extent Shedlin's opinion is based on the proposition that Plaintiff would not have committed insider trading but for Harvard's withholding of his degree, that proposition is also wrong. After all, Plaintiff explained in open court that he did not commit insider trading because he lacked a Harvard degree, *see* Ex. L at 76:16–77:1—a fact that Shedlin fails to grapple with or even note in his report. And, as Shedlin testified: ████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████ Ex. D at 105:15–19.

**III.    By Extension, the Court Should Also Exclude the Corresponding Opinions of Plaintiff's Damages Experts.**

To support his extraordinary damages claim, Plaintiff separately turns to the expert testimony of Chad L. Staller and Stephen M. Dripps, who opine that (1) Plaintiff's cumulative lost earnings, assuming a career in the entertainment industry, will range from ████████████ ████████; and (2) his cumulative lost earnings, assuming a career in finance, will range from ████████████. *See* Ex. G at 8–9 (Tables 1 & 2). But to reach those opinions, Staller and Dripps explicitly rely on the Shedlin opinions addressed above. *See id.* at 4–5 (quoting the opinions before explaining that their estimates are "[b]ased on the above opinions of Mr. Shedlin"); Ex. H at 60:20–23 ████████████████████████████████████████████ ████████████████████████████, 107:10–18 ████████████████████ ████████ They also adopt the same defective causation analyses. *See id.* at 117:11–20 (████ ████████████████████████████████████████████ ████████████. Because Shedlin's vocational opinions and his approach to causation are clearly unreliable, the damages opinions that turn on them are similarly tainted and thus should be excluded as well. *See Eaton v. Hancock Cnty.*, 2010 WL 1223600, at *1 (D. Me. Mar. 24, 2010) (affirming order precluding economics expert from testifying about future earnings calculations based on vocational expert's excluded opinions).

## **CONCLUSION**

For the foregoing reasons, in advance of the May 31, 2023 summary judgment deadline, the Court should grant Harvard's motion to exclude (1) Steven D. Shedlin's unreliable opinions and (2) the corresponding lost-earnings opinions of Plaintiff's proffered damages experts Chad L. Staller and Stephen M. Dripps.

Dated: April 19, 2023                    Respectfully submitted,

                                         */s/ Anton Metlitsky*

                                         Anton Metlitsky (*pro hac vice*)
                                         ametlitsky@omm.com
                                         David Cohen (*pro hac vice*)
                                         dcohen@omm.com
                                         O'MELVENY & MYERS LLP
                                         7 Times Square
                                         New York, NY 10036
                                         Telephone:    (212) 326-2000
                                         Facsimile:    (212) 326-2061

                                         Apalla U. Chopra (*pro hac vice*)
                                         achopra@omm.com
                                         O'MELVENY & MYERS LLP
                                         400 South Hope Street
                                         Los Angeles, CA  90071
                                         Telephone:    (213) 430-6000
                                         Facsimile:    (213) 430-6407

                                         Victoria L. Steinberg (BBO #666482)
                                         vsteinberg@clohertysteinberg.com
                                         Rebecca M. O'Brien (BBO #693592)
                                         robrien@clohertysteinberg.com
                                         CLOHERTY & STEINBERG LLP
                                         33 Arch Street, Suite 3150
                                         Boston, MA  02110
                                         Telephone:    (617) 481-0160

                                         *Attorneys for Defendants,*
                                         *Harvard University, Harvard University*
                                         *Board of Overseers, and the President and*
                                         *Fellows of Harvard College*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 19, 2023.

*/s/ Anton Metlitsky*

Anton Metlitsky
