# **<u>EXHIBIT K</u>**

GELP

(31)

1          IN THE UNITED STATES DISTRICT COURT

2         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

3

4   UNITED STATES OF AMERICA      :   CRIMINAL ACTION
                                  :
5              vs.                :
                                  :
6   DAMILARE SONOIKI              :   NO. 18-368-1

7

               PHILADELPHIA, PENNSYLVANIA

8                 SEPTEMBER 19, 2018

9

10  BEFORE:      THE HONORABLE GENE E.K. PRATTER, J.

11

               CHANGE OF PLEA HEARING

12

13  APPEARANCES:

14              OFFICE OF THE UNITED STATES ATTORNEY
                BY:  DAVID J. IGNALL, ESQUIRE
15              Assistant United States Attorney
                Eastern District of Pennsylvania
16              Suite 1250 - 615 Chestnut Street
                Philadelphia, PA  19106
17              Counsel for the Government

18
                FEDERAL DEFENDER ASSOCIATION
19              BY:  MARK T. WILSON, ESQUIRE
                601 Walnut Street, Suite 540W
20              Philadelphia, PA  19106
                Counsel for the Defendant

21

22              KATHLEEN FELDMAN, CSR, CRR, RPR, CM
                Official Court Reporter
23              Room 1234 - U.S. Courthouse
                601 Market Street
24              Philadelphia, PA 19106
                (215) 779-5578

25

        (Transcript produced by machine shorthand via C.A.T.)

FILED
OCT - 9 2018
KATE BARKMAN, Clerk
By _____ Dep. Clerk

ORIGINAL

1   alleged conspirator showed a unity of purpose and the intent

2   to achieve a common goal or objective, in this case, to commit

3   an offense against the United States; and that at some time

4   during the existence of the agreement or conspiracy, at least

5   one of its members performed an overt act in order to further

6   the objectives of the agreement.

7          With respect to securities fraud that's charged in

8   Count Two, the Government must prove the following:  The

9   Government must prove that the defendant did any one or more

10  of the following as charged in the Information:

11         A, knowingly employed a device, scheme, or artifice

12  to defraud;

13         B, knowingly made an untrue statement of a material

14  fact, or omitted to state a material fact necessary in order

15  to make the statements made, in light of the circumstances

16  under which they were made, not misleading; or,

17         C, knowingly engaged in a transaction, practice, or

18  course of business that operated or would operate as a fraud

19  and deceit on any person;

20         Two, The defendant did so in connection with the

21  purchase or sale of a security;

22         Three, in connection with the purchase or sale of a

23  security, the defendant made use of or caused the use of any

24  means or instrumentality of interstate commerce, or of the

25  mails, or of any facility of any national securities exchange;

1       Four, the defendant acted knowingly, wilfully, and

2  with the intent to defraud.

3       With respect to the factual basis if this case were

4  to go to trial, the Government would prove the following

5  facts:

6       Records from an investment bank show that from

7  July 2013 to May 2015, the defendant, Damilare Sonoiki, worked

8  in the technology group at the investment bank in New York,

9  New York.  As a member of the group, he had access to

10  information about pending acquisition deals when the

11  investment bank represented either the acquirer or the target.

12       Sometime prior to July 2014, the defendant met the

13  codefendant, Mychal Kendricks, through a mutual friend.  Mr.

14  Kendricks knew the defendant worked for an investment bank and

15  the defendant offered information to Mr. Kendricks.

16       The first deal for which the defendant shared

17  material nonpublic information with Mr. Kendricks involved

18  Compuware, an investment bank client that, according to

19  records from the investment bank, was in talks to be acquired

20  by Thoma Bravo, private equity firm.  Phone records show that

21  on July 14, 2014, the defendant texted Mr. Kendricks, "Got

22  something for us."  Records from OptionsXpress, which is a

23  service of the Charles Schwab Corporation, which itself is a

24  bank and brokerage firm based in San Francisco, California --

25  OptionsXpress provided customers with an electronic trading

1  platform for investing in financial instruments, specializing

2  in the trading of options contracts.  The records from

3  OptionsXpress showed that a few days later on July 19, 2014,

4  Mr. Kendricks opened an account at OptionsXpress.  Mr.

5  Kendricks opened the account at 7:36 a.m.  The notes section

6  of Mr. Kendricks' telephone shows the note with title CPWR

7  created at 8:05 a.m.  CPWR is the ticker symbol for Compuware.

8  At the time that Mr. Kendricks opened the account, he was a

9  resident of Philadelphia, Pennsylvania.

10       Bank and brokerage records show that on July 26,

11  2014, Mr. Kendricks transferred $80,000 from his brokerage

12  account at UBS to his Wells Fargo account and then to his

13  OptionsXpress account.  Phone records show texts from Mr.

14  Kendricks to the defendant the same day saying, "Yo, so the 80

15  is there."

16       On July 30, 2014, the defendant made the first

17  Compuware call options purchases from his computer in New

18  York.  He purchased options in Mr. Kendricks' account.

19  Brokerage records show that Mr. Kendricks purchased additional

20  call options for Compuware on August 1st, August 4th, August

21  5, and August 15, 2014.

22       On September 2nd, after Mr. Kendricks purchased the

23  options, Compuware announced publicly that it was acquired by

24  a private company, leading to a significant increase in the

25  value of the options that Mr. Kendricks had purchased.  Mr.

1    Kendricks sold his options at a net profit of $78,423.

2            The next deal for which Mr. Sonoiki provided

3    material nonpublic information to Mr. Kendricks involved Move,

4    Inc.  By early 2014 -- September 2014, investment bank records

5    showed that Move was in discussions with News Corporation

6    regarding a merger deal.  The investment bank represented News

7    Corporation in the transaction.  By this time, however,

8    OptionsXpress had put a freeze on Mr. Kendricks' account

9    because having seen the IP address of Mr. Sonoiki in New York,

10   OptionsXpress suspected that there was an unauthorized person

11   making trades.  OptionsXpress contacted Mr. Kendricks by

12   e-mail three times in August, but Mr. Kendricks did not

13   respond.  Having learned from Mr. Sonoiki of the opportunity

14   to purchase Move options, Mr. Kendrick called OptionsXpress on

15   September 5th -- excuse me, September 5, 2014, on a line

16   recorded by OptionsXpress in order to have that block lifted.

17   Brokerage records showed Mr. Kendricks began purchasing Move

18   call options on September 8 after the trading restriction was

19   lifted by OptionsXpress.  Phone records show numerous calls

20   between Kendricks and the defendant in this time period.

21   Phone records also show significant contacts between Mr.

22   Sonoiki and Person Number One, who, according to text

23   messages, acted on Mr. Kendricks' behalf to make trades in Mr.

24   Kendricks' OptionsXpress account.  The News Corporation

25   acquisition of Move was announced on September 30, 2014.  Mr.

1    Kendricks then sold his open options contracts at a net profit

2    of $278,701.

3          The last two companies about which the defendant

4    provided material nonpublic information to Mr. Kendricks and

5    Person Number One were Sapient and Oplink.  Mr. Kendricks'

6    account began trading in Sapient on October 26, 2014.  At this

7    time, investment bank records show that Sapient was in

8    discussions with Publicis Corporation regarding a merger deal.

9    The investment bank represented Sapient in this transaction.

10   Mr. Kendricks' account purchased call options in Sapient

11   between October 6 and October 14, 2014.  Phone records show

12   the defendant had contact with both Mr. Kendricks and Person

13   Number One during this period.  On November 3rd, the merger

14   was announced, and subsequent to that, Mr. Kendricks sold all

15   his options at a net profit of $489,079.

16         In October 2014, Oplink was in discussions with

17   Molex, a subsidiary of Koch Industries, regarding a merger

18   deal.  The investment bank represented Molex and Koch

19   Industries in this transaction.  Brokerage records show that

20   Mr. Kendricks' account purchased call options between

21   October 31 and November 17, 2014.  Phone records show that Mr.

22   Sonoiki called Person Number One six times on October 30,

23   2014.  On October 31st, Mr. Sonoiki called Person Number One,

24   he also called it three times, and called Mr. Kendricks once

25   before Mr. Kendricks' account made the first purchase of