UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

DAMILARE SONOIKI,

          Plaintiff,

  v.

HARVARD UNIVERSITY, et al.,

          Defendants.

Civil Action No. 1:19-cv-12172-LTS

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERTS STEVEN D. SHEDLIN, CHAD L. STALLER, AND STEPHEN M. DRIPPS**

Now comes Plaintiff Damilare Sonoiki, ("*Plaintiff*" or "*Mr. Sonoiki*") by and through counsel, and submits, pursuant to Local Rule 7.1(b)(2), his Opposition to Defendants Harvard University, Harvard University Board of Overseers, and the President and Fellows of Harvard College's ("*Harvard*" or "*Defendants*") Motion to Exclude Testimony of Plaintiff's Experts Steven D. Shedlin, Chad L. Staller, and Stephen M. Dripps, filed April 19, 2023, ECF No. 123, (the "*Defendants' Motion*").

Defendants have moved to exclude the testimony of all of Plaintiff's expert witnesses. Defendants' Motion should be denied for, at least, the following reasons:

- **Mr. Shedlin's Credentials:** Defendants argue that Mr. Shedlin is "unqualified" to render opinions on Plaintiff's career prospects in the entertainment and finance industries due to an alleged lack of industry-specific experience. However, Mr. Shedlin is a vocational expert and rehabilitation counselor, with expertise in career placement, generally. Mr. Shedlin's expertise and experience as a vocational specialist and rehabilitation counselor permit him to make individualized assessments of earning capacity, regardless of industry. Mr. Shedlin has been a working professional in the industry since 1978. He employs common methods in

i

rehabilitation counseling to offer an assessment of Mr. Sonoiki's specific earning capacity in two industries, entertainment and finance, given his lack of a Harvard degree. [1]

- **Mr. Shedlin's Methodology:**

  - **Entertainment:** Defendants object to Mr. Shedlin's entertainment opinions due to Mr. Shedlin's reliance, in part, upon interviews with two of Mr. Sonoiki's Hollywood contemporaries, ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮, in assessing Mr. Sonoiki's earning capacity within entertainment. Defendants argue that, because Mr. Shedlin does not use industry-wide, generalized data to support his assessment of Mr. Sonoiki, his opinions are inadmissible. However, Mr. Shedlin makes an individualized, holistic assessment of Plaintiff's specific prospects and opportunities, given his work history, talents, experience, and actual industry contacts.

  - **Finance:** Defendants object to Mr. Shedlin's opinions regarding Plaintiff's earning capacity as a hedge fund analyst based, in part, on Mr. Shedlin's conditional acceptance of the premise that Plaintiff would not have had an opportunity to commit insider trading if he had accepted his job offer at a hedge fund. In his report, Mr. Shedlin acknowledges the possibility that Mr. Sonoiki would not have had the opportunity to commit insider trading at a hedge fund, but offers no opinion regarding whether this premise should be accepted by the finder of fact in this case. Mr. Shedlin's methodology in forming his opinions regarding the earning capacity of Plaintiff in the hedge fund industry are nonetheless based in accepted methods within his field and are also grounded and in line with independent sources regarding the earnings capacity of a hedge fund analyst.

- **Mr. Shedlin Provides No "Causation Analysis:"** Plaintiffs object to Mr. Shedlin's report on the basis that Mr. Shedlin allegedly provides a "causation analysis." Mr. Shedlin does not offer such analysis, and thus any "improper opinion regarding causation" does not exist and is not subject to exclusion.

- **Mr. Staller and Mr. Dripps' Opinions are Independently Admissible:** Although Mr. Staller and Mr. Dripps' opinions are, in part, based upon Mr. Shedlin's opinions, they are also supported by Plaintiff's testimony, Plaintiff's actual tax returns from 2013 to 2021, and other independent, publicly available sources supporting Mr. Sonoiki's past and present earning capacity. Mr. Staller and Mr.

---

[1] Mr. Shedlin expressly identifies his sources for both his entertainment and hedge fund opinions as sources commonly used within his industry and upon which he may base his analysis. *See* **Exhibit 1**, Expert Report of Steven D. Shedlin, M.Ed., CRC, dated February 20, 2023 (the "*Shedlin Report*"), at p. 2. Without employing their own vocational expert or relying upon any literature from the rehabilitation counseling field, Defendants have not effectively challenged Mr. Shedlin's methods, which he employed based on his training and expertise.

ii

> Dripps have provided past and future earnings estimates that are critical in order to contextualize Plaintiff's potential career paths, providing necessary guidance to the jury regarding the damages at issue in this case.

Each of Mr. Shedlin's and Mr. Staller's opinions are based in proper and reliable methods that are common and accepted within the fields of both rehabilitation counseling and economics. For these and all of the reasons set forth in the accompanying Memorandum in Support, Plaintiff respectfully requests that the Defendants' Motion be denied.

Respectfully Submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/      Anna E. Bullock*
SUSAN C. STONE (*pro hac vice*)
KRISTINA W. SUPLER (*pro hac vice*)
ANNA E. BULLOCK (*pro hac vice*)
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: scs@kjk.com; kws@kjk.com


**NESENOFF & MILTENBERG, LLP**

TARA J. DAVIS (BBO # 675346)
101 Federal Street, 19th Floor
Boston, Massachusetts 02110
Telephone: (617) 209-2188
Facsimile: (212) 736-2260
Email: Tdavis@nmllplaw.com
*Counsel for Plaintiff Damilare Sonoiki*

iii

## **CERTIFICATE OF SERVICE**

I hereby certify that I served a true copy of the above document upon all parties with an interest in this matter by electronically filing it through this Court's CM/ECF filing system on May 3, 2023.

>　　　*/s/      Anna E. Bullock*
>　　　ANNA E. BULLOCK (*pro hac vice*)

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

DAMILARE SONOIKI,

    Plaintiff,

v.

HARVARD UNIVERSITY, et al.,

    Defendants.

Civil Action No. 1:19-cv-12172-LTS

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERTS STEVEN D. SHEDLIN, CHAD L. STALLER, AND STEPHEN M. DRIPPS**

**I.    INTRODUCTION**

Mr. Shedlin, using his professional experience as a vocational expert and rehabilitation counselor, opines upon Mr. Sonoiki's present potential earnings capacity in two industries: the hedge fund industry, and entertainment, based on his individualized assessment of Mr. Sonoiki, combined with his review of evidence and his related interviews. *See* **Exhibit 1**, Shedlin Report. Mr. Staller then uses Mr. Shedlin's report, in combination with other sources, to extrapolate Mr. Shedlin's damages from 2014-onward in the hedge fund industry and 2019-onward in entertainment. *See* **Exhibit 2**, Expert Report of Chad L. Staller, JD, MBA, MAC, CVA and Stephen M. Dripps, M. Fin., CVA, dated February 24, 2023 (the "***Staller Report***").

Mr. Shedlin's testimony is well within that which is properly offered by vocational specialists and rehabilitation counselors. *See Timmons v. Massachusetts Bay Transp. Auth.*, 412 Mass. 646, 648, 591 N.E.2d 667 (1992); citing 8 P.M. Deutsch & F.A. Raffa, Damages in Tort

1

Actions § 100.53, at 100-21 (1992) (allowing vocational rehabilitation counselor to assess vocational handicaps and impact on range of job alternatives and individual's base earning capacity). Many jurisdictions have recognized that a vocational expert may be used to prove loss of earning capacity. *Liston v. Univ. of W. Va. Bd. of Trs. ex rel. W. Va. Univ.,* 190 W. Va. 410, 413, 438 S.E.2d 590, 593 (1993), citing P.M. Deutsch & H.W. Sawyer, *A Guide to Rehabilitation* § 1.01 *et seq.* at 1-13 (1993); *see also Norfleet v. Southern Baptist Hosp.*, 623 So. 2d 891 (La. App. 1993); *Ashby v. First Data Resources, Inc.*, 242 Neb. 529, 497 N.W.2d 330 (1993); *Riddle v. Anderson*, 85 Pa. Commw. 271, 481 A.2d 382 (1984); *Klingman v. Kruschke*, 115 Wis. 2d 124, 339 N.W.2d 603 (App. 1983). Here, where Mr. Shedlin has based his analysis of Mr. Sonoiki's specific earnings capacity upon his individualized assessment of Mr. Sonoiki's skills, experience, talents, work history, and other information commonly relied upon in his field; Mr. Shedlin is well positioned to offer opinions regarding Mr. Sonoiki's potential earning capacity, based in Mr. Shedlin's experience and expertise.

Mr. Staller and Mr. Dripps' opinions are independently admissible, as they are supported both by the record in the form of Mr. Sonoiki's testimony, employment materials from "The Simpsons" and Taconic, Mr. Sonoiki's tax returns from 2013-2021, as well as contemporaneous sources outlining the earnings of individuals at large funds in the hedge fund industry around 2013-2014. *See* **Exhibit 3**, Taconic Offer Letter to Damilare Sonoiki, dated May 5, 2014; **Exhibit 4**, Agreement between Damilare Sonoiki and Twentieth Century Fox Television for the animated series entitled "THE SIMPSONS," dated December 19, 2017; **Exhibit 5**, Katie Holliday, *This Industry has an Entry Level Salary of $335,000,* CNBC, Nov. 2013 ("salary for an entry-level analyst at a mid-performing hedge fund totaling $335,000 in 2013, an industry report has found"); **Exhibit 6**, Private Banker International, Editorial, *Hedge Fund Compensation Climbs as*

*Competition for Personnel Intensifies: HFR and Glocap,* Nov. 2014 ("Analysts at large hedge funds, managing greater than $4 billion and performing near the industry average, experienced a base salary increase of 6 percent and a bonus increase of approximately 5 percent, for an average compensation increase of 5.4 percent to a total compensation of $372,000")[2]; **Exhibit 9**, David Benoit, *Wanted, Entry Level Hedgies; $353,000 Salary,* The Wall Street Journal, Oct. 2013.

## II.     LAW & ARGUMENT

"The role of an expert witness is to help the jury understand issues of fact beyond their common experience." *Timmons v. Massachusetts Bay Transp. Auth.*, 412 Mass. 646, 648, 591 N.E.2d 667 (1992). "Under modern standards, expert testimony on matters within the witness's field of expertise is admissible whenever it will aid the jury in reaching a decision, even if the expert's opinion touches on the ultimate issues that the jury must decide." *Id.* citing *Commonwealth v. LaCorte*, 373 Mass. 700, 705 (1977); *Commonwealth v. Montmeny*, 360 Mass. 526, 527-528 (1971); *Simon v. Solomon*, 385 Mass. 91, 105 (1982). Mr. Shedlin and Mr. Staller each provide useful, practical analysis grounded in their specific expertise, experience, credentials and methods acceptable in their fields to provide a comprehensive damages assessment that will aid the factfinder in this case. This case is particularly complex. After Mr. Sonoiki was denied his Harvard degree, he worked mainly in two industries: finance and entertainment. He was forced to pivot and support himself in many ways from 2013 to present. The expert testimony at issue in Defendants' Motion is key to assist the jury in framing the potential career paths that Mr. Sonoiki could have pursued, and, by extension, outlining the damages he seeks.

---

[2] N.B., Taconic was managing $8.2 billion as of 2013 and $11 billion as of 2023. *See* **Exhibit 7**, William Alden, Taconic Co-founder to Retire, New York Times, Dec. 2013 ("Taconic, a so-called event-driven fund with $8.2 billion under management, has logged "strong" results recently[.]"); *see also* **Exhibit 8**, 2023 Form ADV for Taconic Capital Advisors, LP dated March 30, 2023, at p. 12 (showing approximately $11 billion in assets under management).

### A.  Mr. Shedlin's Credentials are Appropriate to Support his Opinions.

Mr. Shedlin has training in rehabilitation counseling, including the *RAPEL* method of determining clients' employability and earnings capacity. *See* **Exhibit 10**, RAPEL Methodology, reprint of Weed & Field, 1994. Mr. Shedlin has employed his training and experience in assessing Mr. Sonoiki's earnings capacity within two industries, relying on certain premises that Mr. Sonoiki plans to demonstrate at trial. Rule 703 permits an expert to base an opinion on "facts or data in the case that the expert has been made aware of" and not just facts or data that the expert has "personally observed." The facts or data "need not be admissible" for the expert's opinion to be admitted if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703.

Mr. Shedlin's experience is outlined in his extensive credentials as a rehabilitation counselor. As a rehabilitation counselor and vocational expert, Mr. Shedlin has "achieved a meaningful threshold of expertise" in employability, qualifying him to opine on employability issues. *See Prado Alvarez v. R.J. Reynolds Tobacco Co.*, 405 F.3d 36, 40 (1st Cir. 2005). Thus, Mr. Shedlin then uses his "longstanding experience" to support his expert opinions regarding Mr. Sonoiki's present employment prospects, with a clear connection between his professional qualifications as a rehabilitation counselor and his opinions regarding present earnings capacity. *Maciel v. Thomas J. Hastings Props., Inc.*, 2012 WL 13047595, at *5 (D. Mass. Nov. 30, 2012).

### B.  Mr. Shedlin's Methods are Appropriate to Support his Opinions.

Defendants, despite failing to disclose their own expert in any form of vocational services or rehabilitation counseling, baselessly assert that Mr. Shedlin's opinions regarding Mr. Sonoiki's present earning capacity are not based in methods considered accepted and reliable within his field. Defendants further claim that Mr. Shedlin offers "no additional analysis of his own" in his report.

*See* Defendant's Motion, p. 12. This claim is false. Mr. Shedlin writes in his report that the material upon which he bases his opinions "is the very type of material, research, information, and data that experts in the Rehabilitation Counseling field such as me rely upon when undertaking studies regarding earning loss, future employability, and future earning capacity." *See* **Exhibit 1**, Shedlin Report, at p. 2.

It is true that Mr. Shedlin relied, in part, upon an apparently pseudonymous blog entry authored by Wall Street Oasis user *@rumplestiltskin* in reaching his opinions regarding Mr. Sonoiki's earning capacity in the hedge fund industry. Mr. Shedlin conceded at deposition that this single source's lack of attribution provided him with some doubt as to its accuracy. However, Mr. Shedlin's opinions are not based on the blog entry, alone. Mr. Shedlin also used Mr. Sonoiki's actual employment documents from Taconic, Mr. Sonoiki's deposition testimony, and an interview with Mr. Sonoiki to build his comprehensive assessment. Defendants also apparently discount Mr. Shedlin's opinions because they are not extensively based in statistical averages. The Federal Rules of Evidence impose no requirement that an expert's opinions be based in averages (or any statistical model for that matter) in order to be admissible. Instead, experts may offer their opinions whenever their "knowledge, skill, experience, training, or education" qualifies them to do so. Fed. R. Evid. 702. When an expert meets the threshold established by Rule 702, the expert may testify, and the finder of fact may decide how much weight to give that testimony.

With regard to expert testimony, "no clear line" can be drawn between the different kinds of knowledge an expert may possess, and "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Company v. Carmichael*, 526 U.S. 137, 156 (1999). The *Kumho* opinion adopts a flexible approach that emphasizes the importance of identifying "the particular circumstances of the particular case at

issue." *Id.* at 156. Courts then ensure that the proffered expert will observe the same standard of "intellectual rigor" in testifying as he or she would employ when dealing with similar matters inside the relevant field. *Id.* at 152. Fed. R. Evid. 702 is not limited to expert testimony based on scientific principles but also applies to testimony of persons with technical and other specialized knowledge and experience, i.e. "non-science" experts. *See, e.g., Correa v. Cruisers, Inc.*, 298 F.3d 13 (1st Cir. 2002) (mechanic); *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017) (police practices and post-mortem root banding); *United States v. Valdes*, 681 F. App'x 874, 880 (11th Cir. 2017) (firearms); *Antrim Pharm. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423, 430 (7th Cir. 2020) (regulatory framework).

Mr. Shedlin, in the course of his everyday employment, counsels clients in rehabilitation and career placement, identifying strengths and skills in order to assess present earnings capacity and to direct clients to career development opportunities appropriate for their skill set and ability level, both physically and mentally. In this case, Mr. Shedlin does the same, assessing Mr. Sonoiki's past employment, interviewing him, reviewing certain key records, and interviewing his contemporaries in order to develop a holistic assessment of his capabilities and earnings potential. Finally, Mr. Shedlin offers his opinion about the earnings capacity of Mr. Sonoiki assuming he were granted his Harvard diploma.

> **1. Mr. Shedlin's Opinions Regarding Mr. Sonoiki's Present Employability in Entertainment are Grounded in a Review of the Record, as well as Interviews he Undertook and Applied through the Lens of his Training as a Rehabilitation Counselor.**

Mr. Shedlin disclosed the "facts or data" upon which his opinion relied, including review of the record, an interview and the sworn deposition testimony of Plaintiff, along with Mr. Shedlin's interviews of ▓▓▓▓▓▓ and ▓▓▓▓▓▓. ▓▓▓▓▓▓ and ▓▓▓▓▓▓ are two professionals within the entertainment industry who have direct knowledge of Mr. Sonoiki's

*specific* entertainment career and his employability. Mr. Shedlin did not, as Defendants assert, merely "summarize the out-of-court statements of others as his testimony," but rather used several interviews, in connection with his review of other evidence, to inform and support his specific analyses. *See United States v. Cormier,* 468 F.3d 63, 72-73 (1st Cir.2006) citing *United States v. Smith*, 869 F.2d 348, 355 (7th Cir. 1989).

Using several sources, analyzed through the lens of Mr. Shedlin's training as a rehabilitation counselor, Mr. Shedlin provided his opinions regarding Mr. Sonoiki's present earning capacity in the entertainment industry. While Defendants object that these sources may not be industry-wide, generalizable data, these sources are appropriate to form the basis for Mr. Shedlin's opinions regarding Mr. Sonoiki's *specific* employability. Defendants make much of the contention that Mr. Shedlin's opinions regarding Mr. Sonoiki's employability may not be "representative of the industry as a whole[,]" but this is immaterial where Mr. Shedlin sought to evaluate *Mr. Sonoiki*, whose demonstrated track record and talent set him apart from the average worker within the entertainment industry. Mr. Sonoiki was far from average in many respects: he had a Harvard education (and no degree), he had earned significant sums in television writing, and was in the midst of developing a highly impressive resume when his career prospects were derailed and unable to recover after Harvard's withholding of his degree in connection with Title IX allegations were publicized and made him untouchable in the industry.

Defendants assert that Mr. Shedlin's methodology comprises "random interviews," but this is not the case. *See Recreational Devs. of Phoenix, Inc. v. City of Phoenix,* 220 F. Supp. 2d 1054, 1061 (D. Ariz. 2002) ("[A]necdotal evidence derived from random interviews . . . is, by definition, non-systematic and non-generalizable."). Instead, Mr. Shedlin surveyed individuals with *specific* knowledge of Mr. Sonoiki and his entertainment industry experience and marketability to

determine how the impact of Harvard's withholding Mr. Sonoiki's degree has held him back in the industry.

### 2. Mr. Shedlin's Opinions Concerning Mr. Sonoiki's Prospects in Finance Absent an Insider Trading Conviction are Derived from Mr. Sonoiki's Sworn Testimony, Publicly Available Sources, and Mr. Shedlin's Experience.

Mr. Shedlin also opines regarding Mr. Sonoiki's employability in the finance industry absent an insider trading conviction. While Defendants call the suggestion that Mr. Sonoiki might have made different choices absent Harvard withholding his degree "hopelessly speculative," Mr. Shedlin makes this explicit assumption in his assessment without opining as to whether this causal link may eventually be accepted by the finder of fact in this case. Doubtlessly, human beings are all motivated in our actions at least in some respects because of our circumstances. Harvard's denial of Mr. Sonoiki's degree put him on a path upon which he might not have found himself, given different circumstances. While Defendants are not expected to agree with this premise, it is within the province of the jury to make these determinations.

Whether or not a jury decides to make that causal connection has nothing to do with Mr. Shedlin's opinion. Expert testimony must account for the "particular facts and circumstances of the particular case" in which the testimony is employed. *See United States v. Mooney*, 315 F.3d 54, 63 (1st Cir.2002). "*Daubert* does not require that the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct. . . . It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Id.* citing *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998). Here, Mr. Shedlin has utilized his methods as a rehabilitation counselor in order to evaluate Mr. Sonoiki's present earnings potential absent his denial of a Harvard degree. This opinion testimony is well within the scope of his

expertise as a rehabilitation counselor and vocational expert.[3] While Mr. Shedlin relied upon a somewhat suspect source in supporting his potential salary figures, his opinions are nonetheless in line with other publicly available information regarding the earning potential of hedge fund analysts in similar positions. *See* **Exhibits 3-5**.

### III. Mr. Shedlin Offers No "Causation Opinion" nor "Causation Analysis;" Rather, His Opinions are Limited to Evaluation of Mr. Sonoiki's Earning Capacity.

Defendants take issue with a purported "causation analysis" which is absent from Mr. Shedlin's report. Mr. Shedlin does not undertake to opine on the causation of Mr. Sonoiki's employment struggles. He assesses Mr. Sonoiki's present employability within two fields. Mr. Sonoiki's present employability is doubtlessly a multifactored issue: he has a myriad of circumstances contributing to his overall employability including his education, experience, work history, personal history, and other factors. Mr. Shedlin merely opines as to Mr. Sonoiki's employability, holistically. Defendants, in their motion, allege (contradictorily) that Mr. Shedlin "assumes" causation and that his opinion is excludable in the form of his "causation analysis." *See* Defendants' Motion, pp. 15, 17-18.

Expert testimony is proper where it will "assist the trier of fact to understand or determine a fact in issue." *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d, 77, 81 (1st Cir. 1998); *see Schneider v. BMW of N. Am., LLC*, 2022 WL 1718996, at *3 (D. Mass. Feb. 22, 2022). Mr. Shedlin's opinions will assist the trier of fact in assessing Mr. Sonoiki's present employability.

---

[3] While "expert testimony must be predicated on facts legally sufficient to provide a basis for the expert's opinion[,]" *Damon v. Sun Co.*, 87 F.3d 1467, 1474 (1st Cir. 1996), Defendants objection to Mr. Shedlin's use of a September or August date for insider trading activity is a red herring. Regardless of which month in which the activity occurred, the insider trading activity took place after the Taconic job offer was withdrawn. It makes no functional difference in Mr. Shedlin's opinions whether the activity took place in August or September, as the Taconic offer was withdrawn in or around late May.

### IV. Mr. Staller's Opinions are Admissible Independent of Mr. Shedlin's Opinions.

Mr. Staller's opinions are admissible independently of Mr. Shedlin's opinions. Mr. Staller's projections of past and future earnings are based on Mr. Sonoiki's demonstrated earning potential within the entertainment and finance industries based on his offer letters, sworn testimony, and actual income tax returns. Mr. Staller's opinions regarding Mr. Sonoiki's lost earnings in the hedge fund industry is based on Mr. Sonoiki's actual offer letter from Taconic along with the bonus range that was verbally communicated to him. *See* **Exhibit 3**, Taconic Offer Letter.

As outlined above, Mr. Staller's projections regarding Mr. Sonoiki's lost earnings in the finance industry are on par with publicly available information regarding hedge fund compensation during the relevant time. *See* **Exhibits 3-9**. Mr. Staller's opinions regarding Mr. Sonoiki's earnings capacity within the entertainment field is supported by Mr. Sonoiki's actual earnings in that industry prior to the issues regarding his lack of a Harvard degree came out in a public manner. *See* **Exibit 4** "The Simpsons" Contract. In this way, Mr. Staller's opinions may be properly admitted regardless of Mr. Shedlin's opinions.

### V. CONCLUSION

Defendants' Motion is not supported by a vocational expert nor any field-specific research discounting Mr. Shedlin's methods for arriving at his opinions. The reasons Defendants' Motion should be denied are, at least, as follows:

- Mr. Shedlin's credentials and experience are sufficient to permit him to offer expert testimony in the field of rehabilitation counseling as a vocational expert;

- Mr. Shedlin's methodology in individually assessing Mr. Sonoiki are appropriate and conform with the standards of his field;

- Mr. Shedlin does not offer an opinion regarding the causation of Mr. Sonoiki's damages, and thus any "improper opinion regarding causation" does not exist and is not subject to exclusion; and

- Mr. Staller and Mr. Dripps' opinions are independently admissible, as their assessment is supported by several independent sources demonstrating Mr. Sonoiki's past and present earning capacity and based upon which Mr. Staller may base past and future earnings projections.

For these and all of the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion be denied.

Respectfully Submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/      Anna E. Bullock*
SUSAN C. STONE (*pro hac vice*)
KRISTINA W. SUPLER (*pro hac vice*)
ANNA E. BULLOCK (*pro hac vice*)
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: scs@kjk.com; kws@kjk.com


**NESENOFF & MILTENBERG, LLP**

TARA J. DAVIS (BBO # 675346)
101 Federal Street, 19th Floor
Boston, Massachusetts 02110
Telephone: (617) 209-2188
Facsimile: (212) 736-2260
Email: Tdavis@nmllplaw.com
*Counsel for Plaintiff Damilare Sonoiki*