UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAMILARE SONOIKI,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br><br><br>HARVARD UNIVERSITY, et al.,<br><br>　　　　　　Defendants. | Civil Action No. 1:19-cv-12172-LTS |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO LIMIT TESTIMONY OF DR. LAURA MALOWANE**

**(LEAVE TO FILE GRANTED ON JUNE 16, 2023)**

Plaintiff Damilare Sonoiki ("***Plaintiff***" or "***Mr. Sonoiki***") by and through counsel, and pursuant to Local Rule 7.2, hereby moves to limit the testimony provided by Dr. Laura Malowane, an expert employed by Defendants Harvard University, Harvard University Board of Overseers, and the President and Fellows of Harvard College, (together, "***Harvard***" or "***Defendants***"). Dr. Laura Malowane is an economist, employed by Defendants to offer expert testimony regarding Plaintiff's damages. However, nearly all of the testimony that Dr. Malowane offers falls outside of this stated purpose and is properly classified as inadmissible lay opinion regarding topics outside of her areas of expertise, education, training and experience.

As such, Dr. Malowane's opinions are inadmissible pursuant to Fed. R. Evid. 701-703 and 403, as more fully outlined herein. *See also Maciel v. Thomas J. Hastings Properties,* D.Mass. Civil Action No. 10-12167-JCB, 2012 U.S. Dist. LEXIS 204761, at *16 (Nov. 30, 2012) citing

1

*Perez-Garcia v. P.R. Ports Auth.*, No. 08-1448, 873 F. Supp. 2d 435, 2012 U.S. Dist. LEXIS 94550, at * 13 (D.P.R. July 9, 2012).

Defendants employed Dr. Malowane, an economist, to offer expert opinion testimony concerning Plaintiff's damages. Instead of applying her economics background and education to a damages analysis in this case, Dr. Malowane instead improperly opines upon areas outside of her expertise, including Plaintiff's job placement prospects. She further opines on liability directly, including legal analysis regarding the causation of damages and the elements of proving a breach of contract.

## I. DR. MALOWANE'S OPINIONS

Dr. Malowane spends much of her report analyzing Plaintiff's vocational specialist's opinions regarding Plaintiff's employability, despite a lack of formal education or training in career placement and absent any specific experience in the fields of entertainment and finance that might permit her to do so. Dr. Malowane's report specifies that she was retained by Defendants to "analyze and respond to Plaintiff Damilare Sonoiki's claims for damages[,]" yet her report strays widely from this stated purpose. As such, many of Dr. Malowane's opinions are inadmissible. *See* Evid R. 702. Specifically:

- Dr. Malowane renders opinions regarding Plaintiff's general employability, and the propriety of Plaintiff's job search activities, yet she has no experience or training in the fields of rehabilitation counseling or vocational placement;

- Dr. Malowane provides bare legal conclusions regarding liability under the guise of expert testimony where such analysis is not grounded in her field of expertise;

- Dr. Malowane offers lay opinions that she does not personally find Plaintiff's expert's opinions to be convincing;

- Dr. Malowane improperly opines upon the alleged "inevitability" of Plaintiff's insider trading conviction; and

- Dr. Malowane claims a superior ability to analyze *all* data, yet she is not qualified as an expert in data analysis, and she has not reviewed all of the evidence in this case.

In short, Dr. Malowane may not use her economics expertise as "*carte blanche*" to opine directly upon liability when her expertise is in the field of economics and the stated purpose in her report is to analyze Plaintiff's damages claims. *See Dinco v. Dylex Ltd.,* 111 F.3d 964, 973 (1st Cir. 1997) citing *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir. 1997). She states that "[t]o form my opinions, I have relied on my training and experience as an economist, material in the record, and publicly available sources." *Id.* at ¶ 4. However, Dr. Malowane only *begins* her analysis of Plaintiff's damages estimates on page 9 of her report, and spends the bulk of her time opposing the opinions of a vocational expert. *See* Exhibit 1, Malowane Report, p. 9 ¶¶ 31-37. Dr. Malowane's testimony must be limited to ensure that she may only offer opinions based in her expertise as an economist, applying such methodology as is appropriate in her field.

    **II.    LAW AND ARGUMENT**

The admissibility of the opinion evidence at issue is governed by Fed. R. Evid. 701-703 and Fed. R. Evid. 403. Rule 701 provides, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: rationally based on the witness's perception; helpful to clearly understanding the witness's testimony or to determining a fact in issue; and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Id.* (a-c). Here, Dr. Malowane's lay opinion testimony is not within the scope of admissible testimony for any expert. She is not a fact witness and did not perceive any of the actual events in question in this case. As such, any lay opinion testimony contained within her report is "immaterial to issues jury ha[s] to resolve" and should be excluded. *See Pelletier v. Main St. Textiles, LP*, 470 F.3d 48, 21 O.S.H. Cas. (BNA) 1793, 2006 U.S. App. LEXIS 32287 (1st Cir. 2006).

Fed. Evid. R. 702 specifies that expert witnesses may offer opinion testimony in areas in which their "knowledge, skill, experience, training or education" gives them specialized knowledge that may assist the trier of fact. Such an expert may only "testify in the form of an opinion or otherwise if: the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." Fed. Evid. R. 702 (a-c). Here, Dr. Malowane fails to apply any principles and methodologies within the field of economics to issues of: (i) Plaintiff's employability; (ii) Plaintiff's job search efforts and damages mitigation; (iii) proof of causation in a breach of contract cause of action; or (iv) the inevitability of Plaintiff's insider trading conviction.

Fed. R. Evid. 703 provides, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." In keeping with the spirit of Fed. R. Evid. 703, Fed. R. Evid. 403 also excludes from admission relevant evidence that would serve to mislead the jury and cause confusion to a degree that outweighs probative value of the evidence proffered. Expert testimony may be excludable pursuant to "Fed. R. Evid. 403 because it would mislead jury and cause confusion; …[where] testimony [i]s not based upon sufficient facts or data, was not product of reliable principles and methods, and …[an expert] witness ha[s] not applied principles and methods reliably to facts of [a] case." *United States v. Giambro*, 544 F.3d 26, 2008 U.S. App. LEXIS 20837 (1st Cir. 2008). Even if Dr. Malowane's opinions were not excludable pursuant to Fed. R. Evid. 701-703, Fed. R. Evid. 403

would form an independent basis for their exclusion where Dr. Malowane's testimony confuses the issues and would be more prejudicial than probative in stating the legal theories of Defendants in this case without independent economics analysis.

### A. Dr. Malowane May Not Opine Upon Plaintiff's Employability and Job Placement Prospects.

Dr. Malowane writes of Plaintiff's experts: "Plaintiff's damages and rehabilitation experts do not delineate how Harvard's alleged misconduct impacted Plaintiff's potential earnings. That is, even absent any alleged breach of contract, the allegations of sexual misconduct would still have existed, and the possibility of…not receiving a degree would still have been a potential outcome of the investigation." *Id*. p. 4, ¶¶ 15. Although Dr. Malowane attempts to undermine Plaintiff's experts generally by stating their conclusions do not make sense in her opinion, this type of testimony based on "personal understanding" is not an appropriate subject for expert testimony. *See United States v.* Prange, 771 F.3d 17, 95, 2014 U.S. App. LEXIS 21091 (1st Cir. 2014). In many cases, it is the province of "jurors …to decide whether to credit expert testimony or believe individual witnesses." *United States v. Teganya*, 997 F.3d 424, 2021 U.S. App. LEXIS 14573 (1st Cir. 2021). She attempts to supplant the jury's role in determining the impact of Plaintiff not receiving his degree. Purported expert "[o]pinions that merely tell the jury what result to reach should be deemed inadmissible under Rules 701, 702, and 403." *Perez-Garcia v. P.R. Ports Auth*., No. 08-1448, 873 F. Supp. 2d 435, 2012 U.S. Dist. LEXIS 94550, at * 13 (D.P.R. July 9, 2012) (citing Rule 704 Advisory Committee notes).

An expert's testimony must be based in a proper body of education or experience in the expert's field, and the expert must explain how the conclusion is grounded in that expertise. *See, e.g.,* American College of Trial Lawyers, Standards and Procedures for Determining the Admissibility of Expert Testimony after *Daubert*, 157 F.R.D. 571, 579 (1994) ("[W]hether the

testimony concerns economic principles, accounting standards, property valuation or other non-scientific subjects, it should be evaluated by reference to the 'knowledge and experience' of that particular field."). Here, Dr. Malowane repeatedly attacks the analysis and conclusions of Plaintiff's vocational expert despite a complete lack of education and training in professional placement.

Dr. Malowane does not consider herself an expert in vocational services or job training. Exhibit 2, Malowane Deposition Transcript, p. 14, ¶ 12. Dr. Malowane is "not a job placement professional. [She] can interpret data and understand salaries. And [she stated she] can understand earnings in different places[] [a]nd … count dates and numbers of applications when they're made." *Id.* p. 99, ¶¶ 15-19. This is no different than the ability of the jury to interpret and assess the evidence of Plaintiff's damages. Dr. Malowane provides no special insight into the evidence based in her professional training and experience. Thus, she should be precluded from offering opinions regarding Plaintiff's employability and mitigation earnings. *See Prange*, 771 F.3d 95, 2014 U.S. App. LEXIS 21091 (1st Cir. 2014).

Dr. Malowane likewise has no experience placing professionals in the entertainment industry. *Id*. p. 15, ¶ 1; p. 75, ¶ 6. Dr. Malowane claims the entertainment industry is a "risky" source of income after evaluating only Mr. Sonoiki's actual earnings and a generalized review of materials published by the Bureau of Labor Statistics. *Id*. p. 74, ¶¶16-20; p. 75, ¶ 20-21.; p. 76, ¶¶ 3-6. Likewise, Dr. Malowane also has no experience working for hedge funds. *Id*. p. 15, ¶ 4. She has no information regarding the day-to-day function of an investment banker. *Id*. p. 89, ¶ 15. She admits she is not an expert in banking or hedge funds. *Id.* p. 89,¶ 6. She has never placed professionals in the banking industry. *Id*. p. 15, ¶ 7.

Dr. Malowane did not analyze Plaintiff's specific employment opportunities in order to determine his specific employment prospects. She did not analyze Taconic Capital's performance in 2014 or thereafter, instead only reviewing their website and documents defendants provided her. *See* Exh. 2, p. 30, ¶ 17, p. 34, ¶¶ 11-12. As outlined above, Dr. Malowane is not qualified to opine upon job placement, generally, nor about job placement in the fields of finance and entertainment. When asked if Mr. Sonoiki could have earned between 300,000 and 750,000 at a hedge fund, Dr. Malowane responded "there's a lot of different possibilities for his career and where it might have gone." She further stated "[Plaintiff] could have earned 700,000. There's just a lot of different possibilities." *Id.* p. 43, ¶¶ 12-13. Asked about Taconic directly, Dr. Malowane stated Plaintiff "had a base salary he could expect of 150,000. I didn't see anything that indicated what the bonus could be." *Id.* p. 43, ¶¶17-20. Indeed, a vocational expert has the ability to project compensation for a given field; an economist does not have that training. Dr. Malowane's analysis of Plaintiff's employability and earning potential does not add in any meaningful way to an assessment of Plaintiff's damages in this case and should be excluded. *See Pelletier v. Main St. Textiles, LP*, 470 F.3d 48, 21 O.S.H. Cas. (BNA) 1793, 2006 U.S. App. LEXIS 32287 (1st Cir. 2006).

### B. Dr. Malowane May Not State Legal Conclusions Under the Guise of Expert Testimony.

Dr. Malowane has a doctorate degree and identifies herself as an expert in economics. Exh. 2, p. 10 ¶¶ 7, 15-16. Although she holds an LLB degree, she does not purport to offer any analysis or conclusions surrounding the legal issues in this case. *Id.* p. 10, ¶ 9-10; p. 18, ¶ 3; p. 70, ¶ 11; p. 72. ¶¶1-3. Despite disclaiming any analysis or conclusions regarding legal issues, Dr. Malowane offers opinions regarding the breach of contract and causation of damages in this case in a section entitled "Causal Link Between Alleged Damages and Wrongdoing." *See* Exh. 1, p. 4. Dr.

Malowane cites a litigation services handbook in this section relating to a *court's* scrutiny of a plaintiff's breach of contract claim in this section. *Id.* at fn. 12. In evaluating whether an expert offers appropriate opinion testimony, courts must consider "[w]hether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give." Advisory Committee Notes to Rule 702, citing *Kumho Tire Co. v. Carmichael,* [143 L. Ed. 2d 238,] 119 S.Ct. 1167, 1175 (1999)(additional citations omitted).

Expert witnesses so qualified under Fed. Evid. R. 702 may offer opinion testimony only where "knowledge, skill, experience, training or education" permit them to do so. However, the fact "[t]hat a witness qualifies as an expert with respect to certain matters or areas of knowledge does not mean that he or she is qualified to express expert opinions as to other fields." *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) citing *Nimely v. City of New York,* 414 F.3d 381, 399 n. 13 (2d Cir. 2005). Dr. Malowane has not been, and should not be, identified as a liability expert, and her attempts to introduce opinion testimony regarding the application of the law in this case should be precluded. Pursuant to Fed. R. Civ. P. 26, expert disclosures must be accompanied by a written report, and the report must be prepared and signed by the proffered witness. The report must contain a complete statement of all opinions the witness will express and the basis and reasons for them. *See id*. Dr. Malowane's report lacks any basis to qualify her as an expert in contract law in order to support the admission of her opinion testimony regarding the operation of contract law in this case. Dr. Malowane is unlike liability experts that have been permitted to opine upon causation in complicated legal matters, for example, "attorneys well-versed in insurance law who [may] offer[] opinion evidence as to proximate cause, since insurance is complicated subject, insurance industry has developed patina of custom and usage, and experts could reasonably be

8

expected to shed some light in shadowy domain." *Peckham v. Continental Casualty Ins. Co.*, 895 F.2d 830, 15 Fed. R. Serv. 3d (Callaghan) 1375, 1990 U.S. App. LEXIS 1775 (1st Cir. 1990).

Dr. Malowane also claims in her report "even absent any alleged breach of contract, the allegations of sexual misconduct would still have existed, and the possibility of being found responsible for assault and therefore not receiving a degree would still have been a potential outcome of the investigation." Exh. 1, p. 4, ¶ 15. Here, in assessing whether Dr. Malowane "proposing to testify about matters growing naturally and directly out of research [she] ha[s] conducted independent of the litigation, or whether [she] ha[s] developed their opinions expressly for purposes of testifying[,]" it is clear that Dr. Malowane merely repeats the legal theories of Defendants in her report. *See* Fed. R. Evid. 702 Advisory Committee Notes, citing *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 43 F.3d 1311, 1317 (9th Cir. 1995). This is a legal argument, not a proper subject for expert opinion. When pressed at deposition, Dr. Malowane admitted that the theories of liability that Plaintiff has set forth in this case are "outside [her] area of understanding." And further that she is not aware of any avenues for information regarding the sexual assault allegations to have become known. Exh. 2, p. 96, ¶¶ 17-18.

### C. Dr. Malowane Did Not Provide Any Basis for her Opinions Regarding Plaintiff's Reputational Harm.

When asked if not receiving a degree after being found responsible for sexual assault could cause reputational harm, Dr. Malowane stated she has "looked at it from an economic perspective." Exh. 2, p. 27, ¶¶ 14-15. She goes on, "[i]n addition to a lack of appropriate analysis of damages causation in the finance industry, Plaintiff's experts also do not address what specific impact…Harvard's alleged wrongdoing had on Mr. Sonoiki's potential earnings in the entertainment industry. For example…the sexual assault allegations may still have become known." *Id*. at ¶ 19. Dr. Malowane admittedly has no experience working in the entertainment

industry. Exh. 2, p. 14, ¶19. Dr. Malowane nonetheless assesses the impact of insider trading on Mr. Sonoiki's entertainment career, referencing an email from Mr. Sonoiki to his ex-agent, ▇▇▇▇▇▇, in which, (in part) Mr. Sonoiki bemoans the fact that there is no good time to disclose that he lacks a Harvard degree. *See* Exh. 1, p. 6, ¶ 19. Dr. Malowane is not qualified to opine upon Plaintiff's reputational harm as it relates to employability and job placement prospects, generally or in the specific industries in which he worked, and her views amount to improper lay opinion on this topic.

When asked how reputational harm could impact an individual's earning capacity, generally, Dr. Malowane stated "it depends on the facts of the case." *Id.* p. 28, ¶ 10. Dr. Malowane has not reviewed all the facts of this case, nor is she a fact witness qualified to opine upon her rational perception. *See* Fed. Evid. R. 701. Dr. Malowane conceded at deposition that reputational harm may factor into Plaintiff's future earning potential. She stated "[t]here's a potential of reputational harm that an employer might care about. There's a potential of if…you're in the public eye and let's say you're on a show. Ratings might be impacted by it." *Id.* p. 103, ¶¶ 1-5.

Dr. Malowane failed to assess the value of a Harvard degree, which would be within her purview as an Ivy-Leaguer economist herself. Despite being engaged as an economics expert to opine upon damages, Dr. Malowane avoided this analysis. *Id.* p. 24, ¶ 4. At deposition, Dr. Malowane minimized the value of a Harvard education. She confirmed she was not aware that US News and World Report ranks Harvard number one in best global universities. *Id.* p. 21, ¶ 20. She identified the Ivy League as merely a "sports league" with no other cultural significance. *Id.* p. 23, ¶ 1-2. Although Dr, Malowane did acknowledge that "some people would say" that Harvard is a prestigious institution, she doesn't "think [she'd] use those words." *Id.* p. 21, ¶ 13.

### D. Dr. Malowane is Neither a Psychologist nor Criminologist and May Not Opine Upon the Alleged "Inevitability" of Plaintiff's Insider Trading Conviction.

10

In her report, Dr. Malowane writes, "Shedlin baselessly asserts that Harvard's responsibility for Plaintiff's insider trading lies in the circumstances and environment in which its alleged wrongful actions placed Plaintiff in." p. 5, ¶ 17. Dr. Malowane admitted at deposition that she is not a psychologist nor criminologist. Exh. 2, p. 16, ¶¶ 7, 9. Nonetheless, in her report, Dr. Malowane opines that Plaintiff, absent a breach of contract by Defendants, "may have still" committed securities fraud based upon her personal review of the facts as presented to her by Defendants. P. 5, ¶ 18. She speculates, "[a]s a threshold matter, since Plaintiff gained his insider knowledge while at Goldman Sachs and had met his 'co-conspirator' before he departed from this job, he may have continued to possess valuable insider information for some time after beginning a job at Taconic and may have still committed securities fraud based on that information." *Id*. at ¶ 18.  However, at deposition, Dr. Malowane confirmed, even commenting generally on whether circumstances drive human behavior was decidedly "outside [Dr. Malowane's] area of expertise." *Id.* p. 81, ¶ 2. Indeed, even with insider trading or other eventualities that came to pass, "the future is always based on estimates and forecasts. And we can't say with certainty what would happen." *Id.* p. 85, ¶¶ 13-14.

### E.  Dr. Malowane is Not Qualified as an Expert in *All* Data Analysis.

Dr. Malowane, at deposition, claimed to be an "expert in understanding data as it relates to different industries, including [hedge funds and banking]." Exh. 2, p. 89, ¶¶ 6-8. Dr. Malowane also stated "I can interpret data and understand salaries. And I can understand earnings in different places. And I can assess – I can count dates and numbers of applications when they're made." *Id.* p. 99, ¶¶ 15-19. This is not specialized knowledge of the type permissible as the subject of expert testimony. Expert testimony is not admissible where the proposed testimony does "not add to common sense evaluation." *United States v. Fosher*, 590 F.2d 381, 3 Fed. R. Evid. Serv. (CBC)

552, 1979 U.S. App. LEXIS 17587 (1st Cir. 1979). As far as Dr. Malowane claims to have a superior ability to assess *all* data and explain data that is already be available to the jury, she should be precluded from doing so.

### III. CONCLUSION

Courts must employ their gatekeeping function "under Fed. R. Evid. 702, and … admit expert testimony only if proposed expert witness is sufficiently qualified, reliable basis for expert's opinions and testimony is shown, and proposed expert testimony would provide assistance to triers of fact in understanding or determining fact in issue." *United States v. Stokes*, 388 F.3d 21, 65 Fed. R. Evid. Serv. (CBC) 963, 2004 U.S. App. LEXIS 23290 (1st Cir. 2004), (cleaned up). The proper subject for expert testimony concerns topics within the expert's area of expertise and concerning "a subject beyond the ken of the ordinary juror[.]" *United States v. Fosher*, 590 F.2d 381, 383 n.1. (1st Cir. 1979). Here, Dr. Malowane's report strays widely from her areas of expertise and will not assist the trier of fact. Dr. Malowane may not provide her own evaluation of Plaintiff's vocational expert's opinion without any basis in her experience or training.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an order precluding Dr. Malowane from testifying regarding the following topics:

- The propriety of Plaintiff's job search activities and Plaintiff's general employability;
- Legal conclusions regarding liability;
- Lay opinion regarding Plaintiff's rehabilitation expert's report;
- The alleged "inevitability" of Plaintiff's insider trading conviction; and
- The sufficiency of the evidence in this case.

Respectfully Submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/     Anna E. Bullock*
SUSAN C. STONE (*pro hac vice*)
KRISTINA W. SUPLER (*pro hac vice*)
ANNA E. BULLOCK (*pro hac vice*)
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: scs@kjk.com; kws@kjk.com

**NESENOFF & MILTENBERG, LLP**

TARA J. DAVIS (BBO # 675346)
101 Federal Street, 19th Floor
Boston, Massachusetts 02110
Telephone: (617) 209-2188
Facsimile: (212) 736-2260
Email: Tdavis@nmllplaw.com
*Counsel for Plaintiff Damilare Sonoiki*

## **CERTIFICATE OF SERVICE**

    I hereby certify that I served a true copy of the above document upon all parties with an interest in this matter by electronically filing it through this Court's CM/ECF filing system this June 16, 2023.

                                     */s/     Anna E. Bullock*
                                     ANNA E. BULLOCK (*pro hac vice*)