UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

DAMILARE SONOIKI,

             Plaintiff,

    v.

HARVARD UNIVERSITY, HARVARD
UNIVERSITY BOARD OF OVERSEERS,
and THE PRESIDENT AND FELLOWS OF
HARVARD COLLEGE,
             Defendants.

Civil Action No. 1:19-cv-12172

## STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HARVARD'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, Defendants Harvard University, Harvard University Board of Overseers, and the President and Fellows of Harvard College ("Harvard")[1] submit the following Statement of Undisputed Material Facts[2] in Support of their Motion for Summary Judgment:

---

[1] The Amended Complaint incorrectly identifies the Harvard entities as "Harvard University, Harvard University Board of Overseers, and the [sic] President and Fellows of Harvard College." President and Fellows of Harvard College is the legal entity for Harvard and is the only proper party to this litigation.

[2] Email exchanges produced by Harvard as a part of ESI in this matter have time stamps at the top of an email chain in Coordinated Universal Time (UTC). The time stamps in the remainder of the email chain are in local time. Declaration of David Cohen ¶ 5 n.3.

## I.       Background, Policies, and Procedures

1.       Plaintiff Damilare Sonoiki attended Harvard College ("Harvard" or the "College") as a member of the Class of 2013.  While at Harvard, Plaintiff studied Economics. ██████████████████████████████████████████; Am. Compl. at ¶ 19, 25.

PLAINTIFF'S RESPONSE: So stipulated.

2.       Harvard's Ad Board reviews all undergraduate records, hears all undergraduate petitions for exceptions to the administrative rules of the College, and handles any undergraduate disciplinary case for which there is governing faculty legislation and/or for which there is precedent for interpreting and applying the rules and standards of conduct of the College. Metlitsky Decl., Ex. D (HU-DS-0000000767) at HU-DS-0000981; Metlitsky Decl., Ex. F (HU-DS-0001562).

PLAINTIFF'S RESPONSE: Disputed. The Administrative Board process at issue in this litigation does not involve any "petitions for exceptions to the administrative rules of the College." Additionally, to the extent that this statement raises an issue of law, this argument is reserved for the Opposition filed concurrently with this response.

3.       Harvard's disciplinary process is based on a pedagogic model that is ████ ████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. The "charge" process outlined in the Student Handbook mirrors a charge in a criminal proceeding. The use of this term is influenced by the criminal justice system's use of a "charge" or a "formal accusation after preliminary investigation." Miriam-Webster Dictionary defines a "charge" as "a formal assertion of illegality" or "a statement of complaint or hostile criticism." *See* https://www.merriam-webster.com/dictionary/charge. Likewise, Harvard's policies require preliminary investigation

before issuance of a "charge" in an Administrative Board proceeding. Between a complaint and a charge, ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

   4.    Harvard's disciplinary process is ███████████████████████████████████

███████████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. The "charge" process outlined in the Student Handbook

mirrors a charge in a criminal proceeding. The use of this term is influenced by the criminal

justice system's use of a "charge" meaning a "formal accusation after preliminary investigation."

Miriam-Webster Dictionary defines a "charge" as "a formal assertion of illegality" or "a

statement of complaint or hostile criticism." *See* https://www.merriam-

webster.com/dictionary/charge. Likewise, Harvard's policies require preliminary investigation

before issuance of a "charge" in an Administrative Board proceeding. Between a complaint and a

charge, ███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

████████████ To the extent that Defendants' contention raises an issue of law, this argument is

reserved for Plaintiff's Opposition, filed concurrently with this document.

   5.    Any Harvard College student involved as a principal or witness in a matter under

review by the Ad Board is expected to respect the privacy and confidentiality of the process.

The confidentiality obligations remain in full force even after the conclusion of the disciplinary

case.  The confidentiality obligations are intended to help protect the privacy of the students

involved in the process.  Metlitsky Decl., Ex. G (HU-DS-0001564); ████████████████████

████████████████████; *see* Am. Compl. at ¶ 192.

PLAINTIFF'S RESPONSE: So stipulated. On June 3, 2013, (after commencement) Mr. Sonoiki

met with Dr. Ellison via a conference call. ███████████████████████████ The form Dr.

Ellison filled out in connection with that call referred to Mr. Sonoiki's situation as ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

    6.       Harvard typically redacts the names of students—including witnesses—in

documents related to its disciplinary proceedings to ensure that if the documents inadvertently

become public, the names of students involved are not disclosed.  Ellison Decl. ¶ 13.

PLAINTIFF'S RESPONSE: Disputed. There were occasions in which witness names were left

unredacted in documents provided to Plaintiff during his Administrative Board processes. The

few witnesses whose identities Plaintiff knew were those left unredacted by mistake. ████████

████████████████████████████████████████

    7.       Any information that is redacted in documents related to a disciplinary proceeding

is made available to the parties.  For example, upon request, the information may be

communicated orally to the requesting party.  Ellison Decl. ¶ 14.

PLAINTIFF'S RESPONSE: Disputed. Plaintiff asked for copies of Laura Johnson's notes

identifying redacted information in documents related to a disciplinary proceeding, and she did

not share them. ███████████████████████████████████████████████████

Mr. Sonoiki, at his deposition ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████

██████ Furthermore, Mr. Sonoiki never knew all of the witnesses' names during the Ad Board

process.  Bullock Decl., Ex. 16, Sonoiki Decl., ¶¶ 19, 20, 27, 28.

      8.     John (Jay) Ellison was the Secretary of the Ad Board from 2005 to 2014. ████

████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

      9.     At that time, the Ad Board ████████████████████████

███████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated. *But see* Plaintiff's Response to SUF ¶ 2.

      10.    Harvard College publishes a Handbook for Students ("Student Handbook"),

which includes the College's policies and codes of conduct.  Metlitsky Decl., Ex. B  (HU-DS-

0000001) at HU-DS-0000180–184; Metlitsky Decl., Ex. C (HU-DS-0000767) at HU-DS-

0000935–937; 945–949.

PLAINTIFF'S RESPONSE: Disputed to the extent that Defendants' list is not exhaustive

regarding the scope and application of Defendants' contractual duties to Plaintiff.

      11.    If a Harvard student is found to have violated the policies contained in the Student

Handbook, the student may be dismissed from the College through the disciplinary process.

███████████████████████████████████████████

███████████████████████████████████████ Am. Compl.

at ¶¶ 221–23.

PLAINTIFF'S RESPONSE: Disputed. Plaintiff notes that the parties fundamentally dispute what conditions are required prior to Harvard withholding a Harvard degree and dismissing a student. Plaintiff relies on the policy provision stating "[a] degree will not be granted to a student who is not in good standing or against whom a disciplinary charge is pending" to support his reasonable expectation to graduate. *See* Metlitsky Decl., Ex. D, HU-DS-0000985. At graduation, Mr. Sonoiki ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ Moreover, according to Harvard's own policies, students with disciplinary cases pending ordinarily cannot participate in graduation or related exercises, yet Mr. Sonoiki spoke at a graduation event and walked at Commencement ████████████████████████████████████████ Metlitsky Decl., Ex. G, HU-DS-0001564.

12.   The 2011-12 and 2012-13 versions of the Student Handbook included the Faculty of Arts and Sciences Policy Statement on Rape, Sexual Assault, and Other Sexual Misconduct (the "Policy"). Metlitsky Decl., Ex. B (HU-DS-0000001) at HU-DS-0000181–184; Metlitsky Decl., Ex. C (HU-DS-0000767) at HU-DS-0000946–49; Am. Compl. at ¶¶ 97, 99.

PLAINTIFF'S RESPONSE: So stipulated.

13.   The 2011-12 Policy is identical to the 2012-13 Policy. Metlitsky Decl., Ex. B (HU-DS-0000001) at HU-DS-0000181–84; Metlitsky Decl., Ex. C (HU-DS-0000767) at HU-DS-0000946–49.

PLAINTIFF'S RESPONSE: So stipulated.

14.   The Policy states that "All members of the University community have a right to treatment with dignity and respect and to full participation in the community. These rights extend to classrooms, workplaces, and residences. They include the right to bodily safety and integrity.

In recognition of these rights, the Faculty of Arts and Sciences is committed to creating and maintaining an environment at Harvard in which all individuals—faculty, staff, and students— are treated with dignity and feel safe and secure in their persons. These principles are fundamental to the attainment of a community devoted to teaching, learning, and research." Metlitsky Decl., Ex. B  (HU-DS-0000001) at HU-DS-0000181; Metlitsky Decl., Ex. C  (HU-DS-0000767) at HU-DS-0000946.

PLAINTIFF'S RESPONSE: So stipulated. The document speaks for itself.

15.      The Policy further states: "In accordance with these principles, the Faculty of Arts and Sciences will not tolerate sexual misconduct including rape and other forms of sexual assault, whether affecting a man or a woman, perpetrated by an acquaintance or a stranger, by someone of the same sex or someone of the opposite sex. Such behavior is unacceptable in our community. A student who commits rape, sexual assault, or other sexual misconduct is subject to severe penalties under the rules of the Faculty of Arts and Sciences. Rape and sexual assault are serious crimes under the laws of the Commonwealth of Massachusetts and the individuals responsible for such acts are subject to prosecution and legal penalties."  Metlitsky Decl., Ex. B (HU-DS-0000001) at HU-DS-0000181; Metlitsky Decl., Ex. C  (HU-DS-0000767) at HU-DS-0000946.

PLAINTIFF'S RESPONSE: So stipulated. The document speaks for itself.

16.      The Policy, and any related disciplinary procedure, "appl[ies] when an allegation of sexual misconduct is made against a student at Harvard College."  Metlitsky Decl., Ex. B (HU-DS-0000001) at HU-DS-0000181; Metlitsky Decl., Ex. C  (HU-DS-0000767) at HU-DS-0000946.

PLAINTIFF'S RESPONSE: Disputed to the extent that Defendants' contention in this statement indicates that the Policy language itself is comprehensive in defining all duties as between Plaintiff and Defendants.

    17.    The Policy further provides:

For the purposes of this policy, sexual misconduct is to be understood as encompassing the following behaviors: Rape includes any act of sexual intercourse that takes place against a person's will or that is accompanied by physical coercion or the threat of bodily injury. Unwillingness may be expressed verbally or physically. Rape may also include intercourse with a person who is incapable of expressing unwillingness or is prevented from resisting, as a result of conditions including, but not limited to, those caused by the intake of alcohol or drugs. Rape includes not only unwilling or forced vaginal intercourse, but also the sexual penetration of any bodily orifice with a body part or other object.

Indecent assault and battery involves any unwanted touching or fondling of a sexual nature that is accompanied by physical force or threat of bodily injury.

Sexual misconduct may also include other serious or persistent unwanted sexual contact or conduct, such as harassment, threats, or intimidation. Being intoxicated does not diminish a student's responsibility in perpetrating rape, sexual assault, or other sexual misconduct.

Metlitsky Decl., Ex. B  (HU-DS-0000001) at HU-DS-0000181–82.

PLAINTIFF'S RESPONSE: So stipulated. The document speaks for itself.

18.     The Policy then lists resources available to victims, including the Office of Sexual

Assault Prevention and Response ("OSAPR").  Metlitsky Decl., Ex. B  (HU-DS-0000001) at

HU-DS-0000182; Metlitsky Decl., Ex. C  (HU-DS-0000767) at HU-DS-0000947.

PLAINTIFF'S RESPONSE: So stipulated.

19.     The Student Handbook contains a section titled "General Regulations" that

describes a "brief introduction" to the Administrative Board ("Ad Board Overview").  Metlitsky

Decl., Ex. D (HU-DS-0000767) at HU-DS-0000981.

PLAINTIFF'S RESPONSE: Disputed to the extent that Defendants characterize the Student

Handbook as an "overview." The Student Handbook itself is billed as a "guide to academic

requirements, [Harvard's] residential system, and the many activities that take place outside the

classroom. It also clarifies the standards that should inform your academic and personal conduct

within the College." Metlitsky Decl., Ex. B, HU-DS-000001. It is also a "user's manual for the

College[.]" Metlitsky Decl., Ex. C, HU-DS-0000767.

20.     The Ad Board Overview states: "A degree will not be granted to a student who is

not in good standing or against whom a disciplinary charge is pending."  Metlitsky Decl., Ex. D

(HU-DS-0000767) at HU-DS-0000985.

PLAINTIFF'S RESPONSE: So stipulated. ███████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████ A charge is a "decision by the board to pursue a

case against a respondent." Metlitsky Decl. Ex. A HU-DS-001561 ████████████████

███████████████████████████████████████ Between a

complaint and a charge, ███████████████████████████████
███████████████████████████████████████████████████████
██████████████████████████ There are cases in which, although a complaint is
lodged, a charge is not warranted, and ████████████████████
████████████████████████████

21.     The Ad Board Overview states: "When court action is pending or in progress, the
Administrative Board may delay or suspend its own review process, in recognition of the
student's criminal defense interests."  Metlitsky Decl., Ex. D (HU-DS-000767) at HU-DS-
0000984.

PLAINTIFF'S RESPONSE: So stipulated. There has never been court action pending or in
progress against Damilare in regard to alleged sexual misconduct. Sonoiki Decl., ¶ 17.

22.     The Ad Board Overview states: "Students are expected to comply with all
disciplinary rules from matriculation until the conferring of the degree."  Metlitsky Decl., Ex. D
(HU-DS-0000767) at HU-DS-0000985.

PLAINTIFF'S RESPONSE: So stipulated.

23.     The Ad Board Overview states: "Board actions begin ordinarily with a discussion
between the student and the Resident Dean."  Metlitsky Decl., Ex. D (HU-DS-0000767) at HU-
DS-0000983.

PLAINTIFF'S RESPONSE: So stipulated.

24.     The Ad Board Overview states: "Disciplinary cases also begin with a
conversation between the student, his or her Resident Dean, and the Secretary of the
Administrative Board or his or her designee, during which they discuss the incident, the relevant

College rules or standards of conduct, and possible courses of action."  Metlitsky Decl., Ex. D (HU–DS-0000767) at HU-DS-0000983–84.

PLAINTIFF'S RESPONSE: Disputed. Plaintiff notes there is fundamental disagreement between Plaintiff and Defendants regarding the difference between the "begin[ning]" of a process and when that process is deemed a "case," "pending" and in progress. Plaintiff asserts that, although a case may *begin* with an allegation, the allegation does not constitute a case. Rather, a case follows a charge, which is defined as "the decision by the Board to pursue a case against the respondent[.]" Metlitsky Decl., Ex. A, HU-DS-001561.  *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case."

25.    The Ad Board Overview expressly states that they provide an overview of the disciplinary process, and that students should look on the Ad Board's website for more details, stating "for a more detailed description…visit the website of the Administrative Board at www.adboard.fas.harvard.edu."  Metlitsky Decl., Ex. D (HU-DS-0000767) at HU-DS-0000981.

PLAINTIFF'S RESPONSE: Disputed. The Ad Board Overview reads, "For a more detailed description, students ***may consult with their Resident Dean*** or visit the website of the Administrative Board at www.adboard.fas.harvard.edu.  *See* Metlitsky Decl., Ex. D, HU-DS-0000981.

26.    The "detailed description" of the disciplinary process on the Ad Board's website was contained in a form entitled "The Administrative Board of Harvard College: Information for

students facing allegations in a peer dispute case" (the "Student Information Form").  Ellison

Decl. ¶¶ 6–7.

PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶ 25.

27.    Complaints of sexual misconduct may be filed with Harvard in accordance with

the "Student Information Form."  The Student Information Form provides that the student

bringing the allegation is called the "complainant" and the student against whom a complaint is

brought is the "respondent."  Metlitsky Decl., Ex. B (HU-DS-0000001) at HU-DS-0000181–84;

Metlitsky Decl., Ex. C (HU-DS-0000767) at HU-DS-0000946–49; Metlitsky Decl., Ex. G (HU-

DS-0001564); ███████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

28.    A respondent in the disciplinary process is provided documents covering the

procedures applicable to their case, including the Student Information Form, the General

Information on Disciplinary Cases form (the "General Information Form"), and a summary flow

chart of the Ad Board Disciplinary Process (the "Flow Chart").  Metlitsky Decl., Ex. A (HU-DS-

0001561); Metlitsky Decl., Ex. F (HU-DS-0001562); Metlitsky Decl., Ex. G (HU-DS-0001564);

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. Mr. Sonoiki was not immediately provided with all of

these documents. The earliest Mr. Sonoiki was notified that he would not graduate was when

Laura Johnson pulled him aside in line at graduation ██████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

[BLACK REDACTION BLOCK]

29.     The Student Information Form is a "guide . . . meant to give [a student] information about the process by which the Administrative Board will address the complaint that has been brought against [the student] by one of [the student's] peers and to provide guidance for [the student] as [their] case moves forward."  Metlitsky Decl., Ex. G (HU-DS-0001564).

PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶ 19. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case."

30.     The Student Information Form states: "The College's disciplinary process is pedagogical rather than judicial, and attorneys for students are not permitted to participate." Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001565–66.

PLAINTIFF'S RESPONSE: Disputed. [BLACK REDACTION BLOCK]

[BLACK REDACTION BLOCK]

[BLACK REDACTION BLOCK] However, a "charge" is defined as "the decision by the Board to pursue a case against the respondent[.]" Metlitsky Decl., Ex. A, HU-DS-001561. This parallels a criminal context. Miriam-Webster Dictionary defines a "charge" as "a formal assertion of illegality" or "a statement of complaint or hostile criticism." *See* https://www.merriam-webster.com/dictionary/charge.

13

31.     The Student Information Form states that "a disciplinary case always begins with an *allegation* of student misconduct in the form of a complaint or report."  The purpose of the initial meeting notifying a student that an allegation has been against them is to "outline for [the Student] the College's confidentiality policies, disciplinary process, and the allegation." Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001564 (emphasis in original), HU-DS-0001565.

PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case." Additionally, this policy was not followed in Mr. Sonoiki's situation. ███████████████████████████████████████████

███████████████████████████████████████████████████████████

32.     The Student Information Form states: "A student cannot receive a degree before a pending disciplinary case is resolved."  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001570.

PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case." Defendants' selective quotation misrepresents the full context of the document from which it is drawn. The Student Information form states "A student cannot receive a degree before a pending disciplinary case is resolved, ***or before his or her status in the college is restored to good standing, and ordinarily may not participate in commencement or related activities or exercises.*** *See* Metlitsky Decl., Ex. G, HU-DS-0001570. Here, there is no allegation that Mr. Sonoiki was not a student in "good standing" at the time of graduation. Good standing

████████████████████████████████████████████████████████████

████████████████████████████████████ If a student is in good standing before an

Ad Board process is initiated ███████████████████████████████████████████

███████████████████████████████████████████████ As of

May 30, 2013, Mr. Sonoiki was a student in good standing. ██████████████████████

█████████████████ No charges had been issued against him until June 25, 2013. Bullock

Decl., Ex. 13, HU-DS-1796. He was permitted not only to participate in commencement, but to

participate as a featured speaker in a "related activit[y][,]" Class Day. "The college's underlying

premise is that, except in the rarest of circumstances, students involved in disciplinary cases will

ultimately graduate from Harvard." *See* Metlitsky Decl., Ex. G (HU-DS-0001562).

33.      The Student Information Form states: "Together, [a] subcommittee [of the Ad

Board] and fact finder will decide whether to recommend that the College issue a charge, and

[the respondent] and the complainant will be notified individually by [their] Board

Representatives of that decision."  The Student Information Form also states: "In all cases, [the

respondent] and the complainant will be informed by [their] respective Board Representatives

whether the Board issued a charge."  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-

0001567–68.

PLAINTIFF'S RESPONSE: So stipulated. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45,

81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties

as to the definition of a "case."

34.      The Student Information Form states: "The Board will issue a charge when it

determines that the allegations, if true, might constitute a violation of the rules of the Faculty of

Arts and Sciences."  Metlitsky Decl., Ex. G (HU-DS-0001564).

PLAINTIFF'S RESPONSE: So stipulated.

35.     The Student Information Form states: "In cases other than those involving allegations of sexual assault or physical violence, the complainant will not be informed of the Board's decision."  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001570.

PLAINTIFF'S RESPONSE: So stipulated. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case."

36.     Every Harvard College student involved in the disciplinary process has an official representative on the Ad Board, called a "Board Representative," who serves as a liaison with the College in any Ad Board matter.  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001566.

PLAINTIFF'S RESPONSE: Disputed to the extent this statement is incomplete. Board Representatives' role as outlined in the policies and as implemented in practice are more than "liaisons." ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ When speaking about the role of a Board representative, Dr. Ellison ████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████████████████████. As a Board

Representative, Ms. Johnson ████████████████████████████████████████

████████████████████████████████████████████████

37.    The Student Information Form tells students:

"Your Board Representative is an officer of the College and you should be open
and honest when talking with him or her. The role of your Board Representative .
. . is to represent you to the subcommittee and the Board. He or she will be
present at all meetings and will make certain that you are kept informed
throughout the process. Your Board Representative also will present to the Board
a full summary of the facts of the case in which you are involved; he or she will
not advocate for you but will make certain that your perspective is clearly
presented. Though your Board Representative does not vote on your case, he or
she does speak on your behalf and participates in deliberations about your case."
Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001566.

PLAINTIFF'S RESPONSE: Disputed to the extent this statement is incomplete. *See*

Plaintiff's Response to SUF ¶ 36. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45,

81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the

parties as to the definition of a "case."

38.    The Student Information Form states: "Ordinarily, a student's representative to

the Board is his or her Resident Dean of Freshman or Allston Burr Resident Dean.  *If [the*

*student] believe[s] that [their] resident dean is not the best person to assist [them] with the case*,

[they] may choose any other voting member of the Board (except for the Chair and the

Secretary) as alternate to serve as [their] Board Representative, in which case all communication

will be through the alternate rather than [their] resident dean."  Metlitsky Decl., Ex. G (HU-DS-

0001564) at HU-DS-0001566 (emphasis in original).

PLAINTIFF'S RESPONSE: Disputed to the extent this statement is incomplete. *See* Plaintiff's

Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the

fundamental disagreement between the parties as to the definition of a "case." Harvard attempts

to use this section to create the illusion that Mr. Sonoiki had a "choice" in selecting an

Administrative Board representative. To the extent Mr. Sonoiki had any "choice," ████████

████████████████████████████████████████████████████████████████████████████

████ Mr. Sonoiki also did not have all relevant information available that would have informed

this choice. ████████████████████████████ Specifically, ████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████ The policies state

"[i]f you believe that your resident dean is not the best person to assist you with the case, you

may choose any other voting member of the Board…as an alternate[.]" Cohen Decl., Ex. G, HU-

DS-0001566.

     39.    The Student Information Form states that "Board Representatives participate in

the discussion with the subcommittee . . . to address the subcommittee briefly if there are

relevant facts that [the student and the Board Representative] previously discussed but that [the

student] failed to raise in [their] interview."  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-

DS-0001567.

PLAINTIFF'S RESPONSE: Disputed to the extent this statement is incomplete. *See* Plaintiff's Response to SUF ¶¶ 36, 38.

40.     The Student Information Form states: "[A respondent student's] Board Representative and the complainant's Board Representative will be present for all interviews so that they can inform [the respondent student] and the complainant about what was said during the interview and about any information that was obtained."  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001567.

PLAINTIFF'S RESPONSE: Disputed to the extent this statement is incomplete. *See* Plaintiff's Response to SUF ¶¶ 36, 38.

41.     The Student Information Form states: "The Board's proceedings and decisions are confidential and communicated only to those with a need to know."  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001570.

PLAINTIFF'S RESPONSE: So stipulated.

42.     The Student Information Form states: "As with all proceedings of the Board, any material related to a case must remain confidential and its disclosure to anyone other than Board representatives, resident deans, family members, legal counsel, or personal advisers (officers of the University affiliated with the Faculty of Arts and Sciences; see below) is strictly prohibited and may subject a student to disciplinary action."  Metlitsky Decl., Ex. G (HU-DS-0001564) (emphasis in original).

PLAINTIFF'S RESPONSE: So stipulated.

43.     The Student Information Form states: "At the conclusion of its investigation, the subcommittee will issue a confidential report . . . to the full Board."  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-000-1568.

19

PLAINTIFF'S RESPONSE: Disputed to the extent this quotation is incomplete. The quotation goes on to state "the [report] describes the facts of circumstances of the case and may include a recommendation for disciplinary action. [Reports] include copies of all statements and other documents obtained by the fact finder or subcommittee and deemed relevant to the allegations (such as police reports, court documents, or other records)." Metlitsky Decl., Ex. G, HU-DS-000-1568. HU-DS-0001568. Harvard could have imposed disciplinary action *prior to graduation* such that Damilare's status would be changed from "good standing" and putting him on notice that he would not receive his degree. Harvard did not do so. Metlitsky Decl., Ex. D, HU-DS-000986. The charge recommendation issued on June 25, 2013 lists Mr. Sonoiki's Probation Status as "none." Bullock Decl., Ex. 2, HU-DS-001793. ████████████████

████████████████████████████████████████████████

44.     The Student Information Form provides that there are three phases in a disciplinary case: (1) an initial review; (2), further investigation (after a charge is issued); and (3), and the issuance findings (which concludes the case, unless there is an appeal).  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001565 ███████████████ ██████████

PLAINTIFF'S RESPONSE: Disputed to the extent that Defendants misidentify when a disciplinary "case" is pending. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case."

45.    In the initial review phase of a disciplinary case, an independent fact finder and the subcommittee undertake a preliminary investigation to determine whether the Ad Board should issue a charge. ███████████████████████████████████████████████████ ███████████████████ Metlitsky Decl., Ex. G (HU-DS-0001564, 1567); Metlitsky Decl., Ex. A (HU-DS-0001561); Am. Compl. at ¶ 134–135.

PLAINTIFF'S RESPONSE: Disputed. When describing how an Ad Board proceeding begins,

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████ A charge is a "decision by the board to pursue a case against a respondent." Metlitsky Decl. Ex. A HU-DS-001561. ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████



The Ad Board may issue charges *sua sponte.* The Student Handbook specifies that "[t]he Administrative Board may independently initiate a charge against a student, and usually does so when a student has been charged with a crime in a court of law." Metlitsky Decl., Ex. D, HU-DS-000984.

46.     The initial review phase typically consists of the subcommittee meeting with the parties and potentially other sources of information, such as witnesses.  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001567.

PLAINTIFF'S RESPONSE: Disputed. This information is not found on the cited page. Instead, the cited page reads "[a] disciplinary case always begins with an *allegation* of student misconduct in the form of a complaint or report. In a peer dispute case, one student makes an

allegation against another student (peer), but any ensuing charges must be brought by, and on behalf of, the College. In other words, an allegation begins an initial review by the Administrative Board which may or may not end with the College issuing a *charge*. A charge triggers further investigation by the Administrative Board. A charge does not assume misconduct has occurred. Once the charge has been investigated, the Board will review the case and issue a *finding* and *outcome*, which is a determination as to whether a student has violated the rules of the College and the College's response, as appropriate." Metlitsky Decl., Ex. G HU-DS-0001564 and HU-DS-0001567. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case."

47.     The subcommittee may issue a recommendation to the full Ad Board that a charge should issue.  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001568; Metlitsky Decl., Ex. A (HU-DS-0001561); ███████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

48.     If the Ad Board votes to issue a charge, the second phase begins, in which a fact finder and the subcommittee conduct a further investigation into the matter.  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001568.

PLAINTIFF'S RESPONSE: Disputed. Metlitsky Decl., Ex. G, HU-DS-0001567 reads: "Once the subcommittee is ready, your Board Representative will escort you and your personal adviser into the meeting where the subcommittee and the fact finder will introduce themselves. The complainant's Board Representative will also be present. This meeting is an opportunity to discuss your memories of the event in question, voice any concerns you may have and work with

the fact finder to determine what information may be available for the second phase of the investigation, *if a charge is issued*[.]" (emphasis supplied).

49.    The investigation phase involves, among other steps, additional interviews with the relevant parties.  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001568–69; Am. Compl. at ¶ 184.

PLAINTIFF'S RESPONSE: So stipulated. However, the Ad Board may issue charges *sua sponte.* The Student Handbook specifies that "[t]he Administrative Board may independently initiate a charge against a student, and usually does so when a student has been charged with a crime in a court of law." Metlitsky Aff., Ex. D, HU-DS-000984.

50.    At the conclusion of its investigation, the subcommittee makes a recommendation in the form of a confidential report called a Subcommittee Report to the full board.  This is the same report referred to as the "Disciplinary Case Report" in the Student Information Form.  The Report describes the facts and circumstances of the case (i.e., the subcommittee's findings), may recommend disciplinary action, and includes copies of all statements and other documents relevant to the allegations.  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001568; Am. Compl. at ¶ 192; Ellison Decl. ¶ 15.

PLAINTIFF'S RESPONSE: Disputed to the extent that the Disciplinary Case Report contains "copies" of all statements and documents. The copy of the Disciplinary Case Report that Mr. Sonoiki received was redacted to obscure witness identities.  Bullock Decl., Ex. 16, Sonoiki Decl., ¶ 20.

51.    The complainant and respondent have an opportunity to read and respond to the Subcommittee Report in advance of the meeting at which the Board will decide the case.  That

response can be either written or made orally to the Board Representative, who will be present when the Board hears the case.  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001569.

PLAINTIFF'S RESPONSE: Disputed to the extent that Mr. Sonoiki had no idea what Ms. Johnson could or did share with the Ad Board from their conversations nor that Ms. Johnson felt she should share all of their communications, facts that undermined Mr. Sonoiki's position, and her opinion regarding whether charges should be issued against him. *See* Bullock Decl., Ex. 16, Sonoiki Decl., ¶¶ 21-26.

52.     The full Ad Board hears an oral presentation by the subcommittee and the fact finder of the case and the material in the Subcommittee Report.  Then the Chair of the Ad Board will call for a vote on the recommended discipline.  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001569; Am. Compl. at ¶ 207, 209; ███████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

53.     Disciplinary action may take many forms, including admonishment, probation, a requirement to withdraw, or a requirement to withdraw with a recommendation to dismiss or expel.  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001569-70.

PLAINTIFF'S RESPONSE: So stipulated. However, ███████████████████████

54.     Harvard's "Reconsideration and Appeals" form details the process for a student appealing the Ad Board's decision to the Faculty Council.  Metlitsky Decl., Ex. H (HU-DS-0001572); Am. Compl. at ¶ 230.

PLAINTIFF'S RESPONSE: So stipulated. However, Harvard's corporate representative ████

[black redaction box] Harvard's Ad Board

appeals policy echoes this understanding of the process. "All appeals must be filed within six months of the initial decision of the Administrative Board, and once a student has been awarded a degree from Harvard College, the option to have the board reconsider a decision or to appeal to the faculty council is closed." Metlitsky Decl., Ex. H, HU-DS-0001572.

55.    The Faculty Council consists of the Dean of the Faculty (who serves as the Chair) and eighteen elected voting members of the Faculty.  The Faculty Council operates as a reviewing appellate body of Ad Board disciplinary decisions.  Metlitsky Decl., Ex. E (HU-DS-0001555); Metlitsky Decl., Ex. D (HU-DS-0000767) at HU-DS-0000985; Am. Compl. at ¶ 247. PLAINTIFF'S RESPONSE: So stipulated.

56.    Students "have the option to appeal to the Faculty Council disciplinary case decisions of the Administrative Board, where the sanction has been a requirement to withdraw or probation for more than one term."  Students may do so if there has been a procedural error, the Ad Board came "to the wrong conclusion," or if the discipline was inconsistent as compared with similar cases.  Metlitsky Decl., Ex. H (HU-DS-0001572); Am. Compl. at ¶ 234–235. PLAINTIFF'S RESPONSE: So stipulated. *But see,* Plaintiff's Response to SUF ¶ 54.

57.    The Faculty of Arts and Sciences can recommend to Harvard's governing boards that a student's degree be revoked.  The governing boards can then vote to rescind the degree. Burke Decl. ¶ 5.

PLAINTIFF'S RESPONSE: Disputed. There is ***no evidence*** that this process was considered or implemented relative to Mr. Sonoiki.

58.     Harvard has historically revoked degrees previously awarded to students if it learned that, while enrolled, the student violated Harvard's policies.  Burke Decl. ¶ 6.

PLAINTIFF'S RESPONSE: Disputed. There is **no evidence** that this process was considered or implemented relative to Mr. Sonoiki.

II.     **May 2013:  Plaintiff Met with Jay Ellison Regarding Possible Violations of Harvard's Policies**

59.     In 2013, Harvard's Commencement took place on May 30th.  Cohen Decl., Ex. 2 (HU-DS-0001624) at HU-DS-0001708.

PLAINTIFF'S RESPONSE: So stipulated.

60.     On May 17, 2013, two weeks before Harvard's Commencement, Plaintiff received an email from his Resident Dean, Laura Johnson, ███████████████████████████
████████████████████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

61.     The Secretary of the Ad Board is the primary student conduct officer at Harvard College.  That person meets with undergraduate students when there are allegations of a possible violation of Harvard's policies. ██████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. ██████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████

---

[3] Consistent with the pseudonyms used in the Amended Complaint, this Statement of Undisputed Facts refers to the complainants by pseudonyms because of the sensitive subject matter involved.

██████████████████████████████████████████████████

████████████████████████████

62.     On May 17, 2013, Plaintiff met with Ellison and another administrator regarding possible violations of Harvard policies ████████████████████████████

██████████

PLAINTIFF'S RESPONSE: So stipulated. There is no evidence of who the other individual in the room with Ellison and Plaintiff was.

63.     At the May 17 meeting, ████████████████████████████

████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. ███████████████████████

████████████████████████████████████████████████████████

64.     ████████████████████████████████████████

████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

65.     ████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

66.     Johnson was the Resident Dean of Currier House, one of the residence halls at

Harvard College, and where Plaintiff lived during his junior and senior years. ████████

█████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

67.     Shortly after the meeting, Johnson emailed Plaintiff ██████████████

█████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed ████████████████████████

█████████████████████████████████████████

68.     Plaintiff spoke to Johnson. ██████████████████████

█████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. ███████████████████

█████████████████████████████████████████



69.    Later that same day,

PLAINTIFF'S RESPONSE: Disputed. At this point, Mr. Sonoiki did not know who had made

allegations of misconduct against him.  Bullock Decl., Ex. 16, Sonoiki Decl., ¶ 9.

70.

PLAINTIFF'S RESPONSE: Disputed.

71.

---

[4] Consistent with the pseudonyms used in the Amended Complaint, this Statement of Undisputed Facts refers to the complainants by pseudonyms because of the sensitive subject matter involved.

PLAINTIFF'S RESPONSE: So stipulated.

72. ████████████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

**III.**    **Late May 2013 and Early June 2013:  Ellison Informed Plaintiff of Ann's, Betty's, and Cindy's Complaints and the Disciplinary Cases Began**

73.    On May 28, 2013—two days before the Class of 2013 graduation—Ann and

Cindy filed complaints with the Ad Board, alleging Plaintiff had sexually assaulted them. ███

████████████████████████████████████████████████████████
██████████████████████████████████████   Am. Compl. at ¶ 83–84.

PLAINTIFF'S RESPONSE: So stipulated.

74.    Later that day, Ellison emailed Plaintiff: ████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated that an email was sent.

75. ████████████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

76.     Ellison did not receive a response from Plaintiff on May 28. 

PLAINTIFF'S RESPONSE: So stipulated.

77.     On May 29, 2013, Ellison emailed Plaintiff:

PLAINTIFF'S RESPONSE: So stipulated.

78.     On May 29, 2013, Johnson sent Plaintiff a letter from Ellison

PLAINTIFF'S RESPONSE: Disputed. Mr. Sonoiki did not receive this letter prior to graduation. Bullock Decl., Ex. 16, Sonoiki Decl., ¶¶ 7, 8.

79.     The letter notified Plaintiff

PLAINTIFF'S RESPONSE: Disputed. Mr. Sonoiki did not receive this letter prior to graduation, thus, he was not notified of any information concerning his degree status. Bullock Decl., Ex. 16, Sonoiki Decl., ¶¶ 7, 8.

80.     That letter provided

---

[5] ESI email exchanges produced by Harvard in this litigation include time stamps at the top of an email chain in Coordinated Universal Time (UTC).  The other time stamps within the email chain are Eastern Time (ET).

█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████ Am. Compl. at ¶ 140.

PLAINTIFF'S RESPONSE: So stipulated.

81.   ████████████████████████████████████████████

█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. ████████████████████████████
███████████████████████████████████████████████████ The

dictionary definition Defendants cite in their Motion for Summary Judgment contains multiple

definitions, including, "until after," "while waiting for something to happen or be decided," or

"used to say that one thing must wait until another thing happens[.]"

https://dictionary.cambridge.org/us/dictionary/english/pending.

82.   In his May 29, 2013 letter, Ellison also wrote: █████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated. *But see* Plaintiff's Response to SUF ¶ 79;  Bullock

Decl., Ex. 16, Sonoiki Decl., ¶ 9.

83.   Ellison further wrote: ███████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.  *But see* Plaintiff's Response to SUF ¶ 79;  Bullock Decl., Ex. 16, Sonoiki Decl., ¶ 9. Mr. Sonoiki never received *any* notification that he would not graduate until he was pulled aside in line at graduation by Ms. Johnson, in cap and gown, and told ████████████████████████████████████████████████████████████████

████████

84.    Ellison copied Johnson on this letter, and Johnson emailed Plaintiff on May 29, 2013, attaching the letter.  In her email, Johnson noted ██████████████████████████████

████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

85.    On May 29, 2013, Ellison also emailed Michael Burke, then the Registrar of the Faculty of Arts and Science, along with Marc Goodheart, Evelynn Hammonds, and Johnson. Cohen Decl., Ex. 2 (HU-DS-0001624) at HU-DS-0001710.

PLAINTIFF'S RESPONSE: So stipulated.

86.    Marc Goodheart worked with Harvard's governing boards, which are responsible for meeting to vote on and confer degrees.  Evelynn Hammonds was the Chair of the Ad Board, Dean of Harvard College, and the Barbara Gutmann Rosenkrantz Professor of the History of Science and of African and African American Studies.  Cohen Decl., Ex. 2 (HU-DS-0001624) at HU-DS-0001725: ██████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

87.     Ellison informed Burke, Goodheart, Hammonds, and Johnson that 

PLAINTIFF'S RESPONSE: Disputed to the extent that additional context is required.

88.     Plaintiff testified

PLAINTIFF'S  RESPONSE:  Disputed.



*see also* Metlitsky Decl., Ex. G, HU-DS-0001569. If a student is in good standing before an Ad Board process is initiated,

A charge is "a decision by the board to pursue a case against a respondent." Metlitsky Decl., Ex. A, HU-DS-001561. Harvard's policy documents also confirm the difference:

> In a peer dispute case, one student makes an allegation on another student (peer), but any ensuing charges must be brought by, and on behalf of, the college. In other words, an allegation begins an initial review by the Administrative Board, which may or may not end with the College issuing a *charge*. A charge triggers further investigation by the Administrative Board.

Metlitsky Decl., Ex. G, HU-DS-0001564. (emphasis in original).



*See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case." No charges were considered or issued against Mr. Sonoiki until June 25. Bullock Decl., Ex. 3, HU-DS-1796. The earliest Mr. Sonoiki was notified that he would not receive a diploma on May 30, 2013, was when Laura Johnson pulled him aside in line at graduation and said,

89.

PLAINTIFF'S RESPONSE: So stipulated. *But see* Plaintiff's Response to SUF ¶ 88.

90.

PLAINTIFF'S RESPONSE: So stipulated.

91.

PLAINTIFF'S RESPONSE: So stipulated.

92. 

PLAINTIFF'S RESPONSE: So stipulated.

93.

PLAINTIFF'S RESPONSE: Disputed.

In that scenario, a charge may be issued *sua sponte.* The Student Handbook specifies that "[t]he Administrative Board may independently initiate a charge against a student, and usually does so when a student has been charged with a crime in a court of law." Metlitsky Decl.., Ex. D, HU-DS-000984.



94.

PLAINTIFF'S RESPONSE: Disputed. Following this statement,

95.     On May 30, 2013 Plaintiff walked at commencement, but did not receive a

degree.

PLAINTIFF'S RESPONSE: So stipulated.

96.

PLAINTIFF'S RESPONSE: So stipulated.

97.     In his email, Ellison explained

PLAINTIFF'S RESPONSE: So stipulated.

98.   

PLAINTIFF'S RESPONSE: So stipulated.

99.

PLAINTIFF'S RESPONSE: Disputed.

100.   Ellison later testified that

PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶ 99.

101.

PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶ 99.

102.

PLAINTIFF'S RESPONSE: So stipulated.

103.   The Ad Board sometimes used that form with students in instances where a complaint had not yet been filed.  Ellison Decl. ¶ 12.

PLAINTIFF'S RESPONSE: So stipulated.

104. 

PLAINTIFF'S RESPONSE: Disputed. Defendants' contention concerning the contractual

obligations between Plaintiff and Defendants requires legal analysis. This argument is addressed

in Plaintiff's Opposition, filed concurrently with this Statement of Undisputed Facts.

105.

PLAINTIFF'S RESPONSE: So stipulated.

106.

PLAINTIFF'S RESPONSE: So stipulated.

107.



PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case."

108. ████████████████████████████

PLAINTIFF'S RESPONSE: Disputed.  *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case."

109.    On June 4, 2013, Betty filed a formal complaint against Plaintiff, alleging he had non-consensual sexual intercourse with her on several occasions. ████████████████ ████████████████████████████

Am. Compl. at ¶ 88.

PLAINTIFF'S RESPONSE: So stipulated. However, Betty's complaint did not initiate a peer dispute because Mr. Sonoiki was no longer a student. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case." Harvard did not have jurisdiction over Mr. Sonoiki at the time Betty filed her complaint, as he should have graduated. Harvard's corporate representative ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ (emphasis added).

Harvard's Administrative Board appeals policy echoes this understanding of the process. "All appeals must be filed within six months of the initial decision of the Administrative Board, and once a student has been awarded a degree from Harvard College, the option to have the board reconsider a decision or to appeal to the faculty council is closed." *See* Metlitsky Decl. Ex. H HU-DS-0001572.

110.  ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case."

111. 

PLAINTIFF'S RESPONSE: So stipulated.

112.

PLAINTIFF'S RESPONSE: So stipulated.

## IV.   The Disciplinary Cases[6] between May 2013 and November 2013

113.    The 2011-12 Policy applied to Plaintiff's disciplinary cases involving Ann and

Betty.  Cohen Decl., Ex. 64 (HU-DS-0002206) at HU-DS-0002207–08; Cohen Decl., Ex. 63

(HU-DS-0002144) at HU-DS-0002146–47; Am. Compl. at ¶ 99 n.10.

PLAINTIFF'S RESPONSE: Disputed.  The Ad Board policies do not apply to Betty's

complaint, submitted after graduation, because

---

[6] Plaintiff notes that he contends no disciplinary case was pending until June 25, 2013. Bullock Decl., Ex. 3, HU-DS-1796. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case."

████████████████████████████████████████

██████████████████████████████████ *See* Plaintiff's

Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the

fundamental disagreement between the parties as to the definition of a "case."

114.    The 2012-13 Policy applied to Plaintiff's disciplinary case involving Cindy.

Cohen Decl., Ex. 65 (HU-DS-0002278) at HU-DS-0002279–80.

PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81,

83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as

to the definition of a "case."

115.    ████████████████████████████████████

████████████████████████████████████████

████████ *see* Am. Compl. at ¶ 123.

PLAINTIFF'S RESPONSE: Disputed. Plaintiff also contends that the Student Handbook was

relevant to Plaintiff's situation.  *See, e.g.,* Metlitsky Aff., Ex. D, Metlitsky Decl., Ex. D, HU-DS-

0000985.

116.    The general steps of the disciplinary process were communicated to Plaintiff.

████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. ████████████████████████

████████████████████████████████████████

45

117.    Plaintiff reviewed the Student Information Form during the course of his

disciplinary cases. ████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. ████████████████████████████

████████████████████████████████████████████████████████

*See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118

regarding the fundamental disagreement between the parties as to the definition of a "case."

Plaintiff also contends that the Student Handbook was relevant to Plaintiff's situation. *See, e.g.,*

Metlitsky Aff., Ex. D, at HU-DS-0000985.

118.    ████████████████████████████████████████

████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.  On June 3, 2013, Mr. Sonoiki met with Dr. Ellison

via a conference call. ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

119.    ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

120.    In June 2013, pursuant to the procedures, a subcommittee of the Ad Board was convened in response to each of Ann's, Betty's, and Cindy's allegations of sexual misconduct. The subcommittee for each case consisted of two Harvard administrators, Catherine Shapiro (Resident Dean of Freshmen for the Crimson Yard) and Michael Burke (Registrar of the Faculty of Arts and Sciences).  Richard Cole was also appointed to assist in each case as an independent fact finder.  Cohen Decl., Ex. 63 (HU-DS-0002144) at HU-DS-0002147; Cohen Decl., Ex. 64 (HU-DS-0002206) at HU-DS-0002208–09; Cohen Decl., Ex. 65 (HU-DS-0002278) at HU-DS-0002280–81.

PLAINTIFF'S RESPONSE: Disputed to the extent Defendants classify Mr. Sonoiki's situation as a "case" prior to a subcommittee being convened or a charge being issued. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case." As of May 17, 2013, no subcommittee had convened in relation to Mr. Sonoiki. ███████████████████

████████████████████████████████████████████████████

121.    Plaintiff was informed that he could select any member of the Board to serve as his Board Representative in each case. ████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. To the extent Defendants contend Mr. Sonoiki's matter

was a "case" prior to a subcommittee being convened. *See* Plaintiff's Response to SUF ¶¶ 5, 24,

30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between

the parties as to the definition of a "case." Defendants' characterization is wrong: Mr. Sonoiki

was not given an informed choice to "select any member of the Board" to serve as his

representative. On Friday, May 31, 2013, one day after Harvard commencement, Laura Johnson

sent an email to Dr. Ellison, stating, ███████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████ Mr. Sonoiki was not informed that Ms. Johnson

had reservations about serving as his advisor, that she supported Betty, and that Ms. Johnson felt

close to Betty.  Bullock Decl., Ex. 16, Sonoiki Decl., ¶¶ 24, 25. After learning that Ms. Johnson

felt close to Betty, supported Betty, and would have preferred not to work with Mr. Sonoiki, ████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

122.    Plaintiff and Betty both resided in Currier House.  Again, Johnson was the

Resident Dean of Currier House.  Thus, Johnson anticipated the possibility that both Plaintiff and

Betty might ask her to serve as their Board Representative. ███████████████████████████

████████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

123.    The Student Information Form addressed this scenario: "If both [the respondent]

and the complainant are residents of the same House, the resident dean ordinarily will advise

only one of [them] and a 'Board alternate' will be assigned to the other by the Dean of the

College."  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001566.

PLAINTIFF'S RESPONSE: So stipulated.

124.    On May 31, 2013, Johnson emailed Ellison, ████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

125.    Ellison reminded Johnson: ██████████████████████████████

███████████████████████████████████████████ Cohen Decl., Ex.

13 (HU-DS-0002877); Cohen Decl., Ex. 101 (Sonoiki Dep. Tr.) at 212:1–3.

PLAINTIFF'S RESPONSE: Disputed.  Ms. Johnson contributed to Mr. Sonoiki's reasonable

expectation that she would act as his advocate. ████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

126.    Plaintiff knew about Johnson's relationship with Betty, and Plaintiff nonetheless

chose Johnson to serve as his Board Representative in all three cases. ████████████████

████████████████████████; Cohen Decl., Ex. 63 (HU-DS-0002144) at HU-DS-

0002147; Cohen Decl., Ex. 64 (HU-DS-0002206) at HU-DS-0002208–09; Cohen Decl., Ex. 65

(HU-DS-0002278) at HU-DS-0002280–81.

PLAINTIFF'S RESPONSE: Disputed.   *See* Plaintiff's Response to SUF ¶ 121. Ms. Johnson

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████



127.    Johnson never told Plaintiff she was his advocate in the disciplinary cases.  Cohen

Decl., Ex. 101 (Sonoiki Dep. Tr.) at 212:1–3.

PLAINTIFF'S RESPONSE: Disputed. Ms. Johnson contributed to Damilare's reasonable

expectation that she would act as his advocate based on her actions and words. As a Board

Representative, Ms. Johnson stated "[p]art of my role was to present Damilare's perspective with

the Board." Bullock Decl., Ex. 12, (Johnson Dep. Tr.), p.  39, ¶¶ 18-19.

128.    The Student Information Form explained that respondents may select a personal

adviser in addition to their Board Representative.  The Form noted: "Your personal adviser is

given access to all case information, may attend interviews with you, and can provide general

advice and support.  A personal adviser must be an officer of the University affiliated with the

Faculty of Arts and Sciences, such as a proctor or tutor, coach, teaching fellow, instructor, or

family member."  A personal adviser cannot be a member of the Ad Board.  Metlitsky Decl., Ex.

G (HU-DS-0001564) at HU-DS-0001566; ██████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

129.    Each of the three complainants—Ann, Betty, and Cindy—chose a personal adviser.  Cohen Decl., Ex. 63 (HU-DS-0002144) at HU-DS-0002147; Cohen Decl., Ex. 64 (HU-DS-0002206) at HU-DS-0002208–09; Cohen Decl., Ex. 65 (HU-DS-0002278) at HU-DS-0002280–81.

PLAINTIFF'S RESPONSE: So stipulated.

130.    Plaintiff did not choose a personal adviser ██████████████████████

Tr.) at 38:15–18; Cohen Decl., Ex. 63 (HU-DS-0002144) at HU-DS-0002147; ███████

████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

131.    On June 3, 2013, Johnson emailed Plaintiff asking: ████████████████

████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

132.    On June 4, 2013, Johnson replied to Plaintiff: ████████████████

████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated. ████████████████████████

████████████████████████████████████████

133.    On June 5, 2013, Ellison emailed Plaintiff ███████████████████

███████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

134.    In that email, Ellison explained ████████████████████

████████████████████████████████████████

████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated. However, Ms. Johnson did not share the names with

Mr. Sonoiki. ████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

135.    On June 5, Ellison also sent Plaintiff ████████████████

████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

136.   On June 6, 2013, Ellison emailed Plaintiff ███████████████████████
█████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

137.   In that email, Ellison reiterated: ████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.  *But see* Plaintiff's Response to SUF ¶ No. 134.

138.   ███████████████████████████████████████████
█████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. ██████████████████████████

███████████████████████████████████████████████ This further
supports that Ms. Johnson could not accurately convey the witness identities to Mr. Sonoiki.

139. ████████████████████████████████████
████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

140. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

141. ████████████████████████████████████████
████████████████

PLAINTIFF'S RESPONSE: So stipulated.

142.    On June 4, 7, and 8, Ellison and Johnson wrote to Plaintiff ████████
████████████████████████████████████████████
████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

143.    Plaintiff submitted his initial respondent statements in Ann and Cindy's cases on June 3, 2013 and his initial respondent statement in Betty's case on June 6, 2013.  Cohen Decl., Ex. 18 (SONOIKI 000243) at SONOIKI 000244; Cohen Decl., Ex. 64 (HU-DS-0002206) at HU-DS-0002243; Am. Compl. at ¶ 284; ████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

144.     An initial respondent statement is a "written statement [by a respondent]
responding to the allegation against [him.]"  The statement "communicate[s] [the respondent's]
account of the event and its context, as well as [the respondent's] reflections."  Metlitsky Decl.,
Ex. G (HU-DS-0001564) at HU-DS-0001566.

PLAINTIFF'S RESPONSE: So stipulated.

145.     On June 16, 2013, Johnson emailed Plaintiff 

Cohen Decl., Ex. 2 (HU-DS-001624) at HU-DS-0001694.

PLAINTIFF'S RESPONSE: So stipulated. *But see* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43,
45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the
parties as to the meaning of a "case."

146.     In that email, Johnson further explained 

PLAINTIFF'S RESPONSE: So stipulated. Also in the email,

147.     On June 17, 2013, Plaintiff met with the subcommittee regarding Ann's and
Cindy's complaints.  Among those present at the meeting were Johnson and Richard Cole, the
independent fact finder.  Cole took and maintained notes from this meeting.  Cohen Decl., Ex. 63
(HU-DS-0002144) at HU-DS-0002147; Cohen Decl., Ex. 65 (HU-DS-0002278) at HU-DS-
0002281; Cohen Decl., Ex. 26 (HU-DS-0003160); Cohen Decl., Ex. 27 (HU-DS-0003264); Am.
Compl. at ¶ 296.

PLAINTIFF'S RESPONSE: Disputed to the extent that Mr. Sonoiki never knew about the notes. Sonoiki Decl. ¶ 30.

148.    On June 19, 2013, Plaintiff met with the subcommittee regarding Betty's complaint.  Johnson and Cole also attended this meeting, and again, Cole took and maintained notes.  Cohen Decl., Ex. 64 (HU-DS-0002206) at HU-DS-0002208–09; Cohen Decl., Ex. 29 (HU-DS-0003234); Am. Compl. at ¶ 297.

PLAINTIFF'S RESPONSE: *See* Plaintiff's Response to SUF ¶ 147.

149.    On June 21, 2013, Johnson emailed Plaintiff ████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

150.    In response to Johnson's email, Plaintiff stated ████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

151.    Plaintiff further stated he had ████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. While Mr. Sonoiki sent one email reflecting the quoted language, Mr. Sonoiki was depressed and lost in a situation in which he felt the outcome was pre-determined. He later expressed in his appeal that he felt the Ad Board automatically "assumed" him guilty. ████████████████████████████

152.    Plaintiff stated ███████████████████████████████████████████
████████████████████████████████████████████████████████████ Cohen

Decl., Ex. 30 (SONOIKI 000282) at SONOIKI 000282–83.

PLAINTIFF'S RESPONSE: Disputed, *see* Plaintiff's Response to SUF ¶ 151.

153.    Johnson replied ██████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

154.    Johnson also stated ███████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

155.    On June 21, 2013, Johnson informed Plaintiff that the subcommittee

recommended that the Ad Board vote to issue a charge in each of the three cases.  Johnson

explained that Plaintiff could write a statement in response, and he did so.  Cohen Decl., Ex. 32

(SONOIKI 000287).

PLAINTIFF'S RESPONSE: So stipulated.

156.    On June 25, 2013, Johnson informed Plaintiff that the Ad Board voted to issue a

charge against him for sexual misconduct in each of the three cases. ████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

      157.    Later that day, Plaintiff responded

PLAINTIFF'S RESPONSE: So stipulated.

      158.    Plaintiff also noted that

PLAINTIFF'S RESPONSE: So stipulated.

      159.    With the charges issued, the disciplinary process entered the second phase, where the subcommittee "conduct[ed] additional interviews with [the respondent], the complainant[s], and . . . other relevant parties," including witnesses with pertinent information.  Metlitsky Decl., Ex. G (HU-DS-0001564) at HU-DS-0001568.

PLAINTIFF'S RESPONSE: So stipulated.

      160.    On June 28, 2013, Johnson emailed Plaintiff



PLAINTIFF'S RESPONSE: So stipulated.

161.    Over the course of the next several weeks, the subcommittee conducted several
witness interviews, and those witnesses submitted statements.  Cohen Decl., Ex. 51 (HU-DS-
0002387); Cohen Decl., Ex. 50 (HU-DS-0002394); Cohen Decl., Ex. 37 (HU-DS-0002885);
Cohen Decl., Ex. 38 (HU-DS-0002895); Cohen Decl., Ex. 63 (HU-DS-0002144) at HU-DS-
0002147–49; Cohen Decl., Ex. 64 (HU-DS-0002206) at HU-DS-0002210; Cohen Decl., Ex. 65
(HU-DS-0002278) at HU-DS-0002282–83; ███████████████████████████████████
██████

PLAINTIFF'S RESPONSE: So stipulated.

162.    ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81,
83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as
to the definition of a "case."

163.    ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81,
83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as
to the definition of a "case."

164.    ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case."

165.    On June 17, 2013, Plaintiff emailed Ellison and Johnson, ███████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

166.    On July 23, 2013, Johnson sent Plaintiff ██████████████████████████████

██████████████████████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶¶ 5, 24, 30, 43, 45, 81, 83, 88, 93, 94, n.6, 117, and 118 regarding the fundamental disagreement between the parties as to the definition of a "case." ███████████████████████████████████

████████████████████████

167.    ███████████████████████████████████████████████

████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

168.    That same day, Johnson informed Plaintiff ███████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. While Mr. Sonoiki wrote that he had received the documents that were sent to him, he still did not know the identities of the witnesses.  Bullock Decl., Ex. 16, Sonoiki Decl., ¶¶ 27-28.

169.



PLAINTIFF'S RESPONSE: So stipulated.

170.    That same day, Johnson also sent Plaintiff



PLAINTIFF'S RESPONSE: So stipulated.

171.    On August 14, 2013, Plaintiff met again with the subcommittee regarding Ann's, Betty's, and Cindy's complaints.  Among those present at the three meetings were Johnson and Richard Cole.  Cole took and maintained notes from all three meetings.  Cohen Decl., Ex. 63

---

[7] On November 4, 2022, Harvard provided Plaintiff a chart of witness identities that were redacted in documents that Harvard produced to Plaintiff.  Harvard provided Plaintiff with the identities of the redacted witnesses.  Declaration of David Cohen ¶ 39 n.4.

(HU-DS-0002144) at HU-DS-0002148; Cohen Decl., Ex. 64 (HU-DS-0002206) at HU-DS-

0002210; Cohen Decl., Ex. 65 (HU-DS-0002278) at HU-DS-0002281; Cohen Decl., Ex. 47

(HU-DS-0003144); Cohen Decl., Ex. 48 (HU-DS-0003179); Cohen Decl., Ex. 49 (HU-DS-

0003199).

PLAINTIFF'S RESPONSE: So stipulated.

172. ████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. Mr. Sonoiki contends the subcommittee did not use

witness names in his presence.  Sonoiki Decl. ¶ 19.

173. ████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

174.    On August 21, 2013, Johnson informed Plaintiff ████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

175.    On September 11, 2013, Johnson emailed Plaintiff



PLAINTIFF'S RESPONSE: So stipulated.

176.    Plaintiff responded:

ohen Decl., Ex. 52 (HU-DS-0002804).

PLAINTIFF'S RESPONSE: So stipulated. Plaintiff also

177.    Johnson replied that

PLAINTIFF'S RESPONSE: So stipulated.

178.    In October 2013, Plaintiff met again with the subcommittee regarding Betty's complaint.  Among those present at the meeting were Johnson and Richard Cole.  Cole took and maintained notes from this meeting.  Cohen Decl., Ex. 64 (HU-DS-0002206) at HU-DS-0002210; Cohen Decl., Ex. 54 (HU-DS-0003215).

PLAINTIFF'S RESPONSE: Disputed to the extent that Mr. Sonoiki knew nothing about Mr. Cole's notes.

179.    On October 11, 2013, Plaintiff met again with the subcommittee regarding Ann's complaint.  Among those present at the meeting were Johnson and Richard Cole. Cole took and maintained notes from this meeting.  Cohen Decl., Ex. 63 (HU-DS-0002144) at HU-DS-0002148; Cohen Decl., Ex. 55 (HU-DS-0003166).

PLAINTIFF'S RESPONSE: Disputed to the extent that Mr. Sonoiki knew nothing about Mr. Cole's notes.

180.


PLAINTIFF'S RESPONSE: So stipulated.

181.


PLAINTIFF'S RESPONSE: So stipulated. Dr. Ellison also wrote, ████████████

████████████████████████████████████████████████

182. ████████████████████████████████████

████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

183.     On October 15, 2013, Plaintiff met again with the subcommittee regarding Cindy's complaint.  Among those present at the meeting were Johnson and Cole. Cole took and maintained notes from this meeting.  Cohen Decl., Ex. 65 (HU-DS-0002278) at HU-DS-0002281; Cohen Decl., Ex. 57 (HU-DS-0003242).

PLAINTIFF'S RESPONSE: So stipulated.

184. ████████████████████████████████

████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

185. ████████████████████████████████

████████████████████████████████████████████████



PLAINTIFF'S RESPONSE: So stipulated.

186.

PLAINTIFF'S RESPONSE: Disputed.

187. 

PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶ 186.

188.

PLAINTIFF'S RESPONSE: So stipulated.

189.

PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶¶ 186, 188. Mr. Sonoiki could not know what Ms. Johnson shared because he was not permitted to attend all Ad Board meetings. Sonoiki Decl., ¶¶ 10, 11.

190.    Plaintiff sent an email to Johnson,

PLAINTIFF'S RESPONSE: So stipulated.

191.

PLAINTIFF'S RESPONSE: Disputed.

192.   

PLAINTIFF'S RESPONSE: So stipulated.

193.   On November 13, 2013, Johnson sent Plaintiff the three Subcommittee Reports,

telling him

; *see* Am. Compl.

at ¶ 327.

PLAINTIFF'S RESPONSE: So stipulated.

194.

PLAINTIFF'S RESPONSE: So stipulated.

195.

PLAINTIFF'S RESPONSE: So stipulated.

196. 

PLAINTIFF'S RESPONSE: So stipulated.

197.

PLAINTIFF'S RESPONSE: So stipulated.

198.

PLAINTIFF'S RESPONSE: So stipulated.

199.    On November 17, 2013, Johnson emailed Plaintiff

PLAINTIFF'S RESPONSE: Disputed to the extent that Mr. Sonoiki expected to receive his degree at some point. Bullock Decl., Ex. 16, Sonoiki Decl., ¶ 35.

200.   On November 17, 2013, Johnson sent the following note to herself:



PLAINTIFF'S RESPONSE: So stipulated.

201.

PLAINTIFF'S RESPONSE: So stipulated.

202.   In his responses, Plaintiff stated that

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

203.    Johnson responded that ████████████████████████████

████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

204.    In that same email, Johnson explained ████████████████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

205.    ████████████████████████████████████████████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

206.    Plaintiff agreed with Johnson's characterization, admitting he "focused on what Cindy told [him]," and that it "[s]eemed like the documents [he] got were simply procedural." Cohen Decl., Ex. 62 (HU-DS-0002868).

PLAINTIFF'S RESPONSE: Disputed. Mr. Sonoiki's reasonable expectations regarding the process and outcome of the Board Proceeding were much more complex than this characterization. *See, e.g.,* Plaintiff's Response to SUF ¶¶ 3, 106.

207.   ████████████████████████████████████████████

████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated. The few witnesses Mr. Sonoiki knew were only those unredacted by mistake (Bullock Decl., Ex. 14 (Sonoiki Dep. Tr.), p. 237, ¶¶ 8-9) or that he was able to "figure out" or take a "best guess" as to the identity of a particular witness. *See* Bullock Decl., Ex. 14 (Sonoiki Dep. Tr.), p. 241 ¶¶ 12-14.

208.   On November 19, 2013, the full Ad Board voted in each of the three cases to require Plaintiff to withdraw from Harvard College, and recommended to the Faculty Council that he be dismissed. Cohen Decl., Ex. 6 (HU-DS-0001788) at HU-DS-0001874; Cohen Decl., Ex. 14 (HU-DS-0001878) at HU-DS-0001988; Cohen Decl., Ex. 8 (HU-DS-0001991) at HU-DS-0002139.

PLAINTIFF'S RESPONSE: So stipulated.

209.   On November 25, 2013, the Ad Board notified Plaintiff that "the Board voted to require [him] to withdraw for four terms and, further, voted to recommend to the Faculty Council that [he] be dismissed from Harvard College." Cohen Decl., Ex. 6 (HU-DS-0001788) at HU-DS-0001874; Cohen Decl., Ex. 14 (HU-DS-0001878) at HU-DS-0001988; Cohen Decl., Ex. 8 (HU-DS-0001991) at HU-DS-0002139.

PLAINTIFF'S RESPONSE: So stipulated.

210. 

PLAINTIFF'S RESPONSE: So stipulated.

211.

PLAINTIFF'S RESPONSE: Disputed.

212.    Throughout the disciplinary proceedings, Johnson served as Plaintiff's main point

of contact in her role as his Board Representative.  Cohen Decl., Ex. 101 (Sonoiki Dep. Tr.) at

184:4–12.

PLAINTIFF'S RESPONSE: Disputed.

213.

█████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

## V.   <u>Plaintiff's Appeals of the Ad Board Findings</u>

214.   █████████████████████████████████████

█████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

215.   █████████████████████████████████████

█████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

216.    Plaintiff submitted his appeals for each of the cases on May 19, 2014.  Cohen Decl., Ex. 71 (HU-DS-0002931); Cohen Decl., Ex. 72 (HU-DS-0002932); Cohen Decl., Ex. 73 (HU-DS-0002945); Cohen Decl., Ex. 74 (HU-DS-0002958) Am. Compl. at ¶ 355.

PLAINTIFF'S RESPONSE: So stipulated.

217.    In his appeals, Plaintiff █████████████████



PLAINTIFF'S RESPONSE: So stipulated.

218.   Plaintiff's appeals included none of Plaintiff's current allegations about Harvard purportedly not following its procedures.  Cohen Decl., Ex. 72 (HU-DS-0002932) Cohen Decl., Ex. 73 (HU-DS-0002945) Cohen Decl., Ex. 74 (HU-DS-0002958).

PLAINTIFF'S RESPONSE: Disputed. ███████████████████████████



219.   On October 16, 2014, Plaintiff received a letter from Susan Lively, the Secretary of the Faculty Council, stating that the Faculty Council denied Plaintiff's appeals. Cohen Decl., Ex. 80 (SONOIKI 000211) at SONOIKI 000549–51; ECF Dkt. Nos. 25-4, 25-5.

PLAINTIFF'S RESPONSE: So stipulated.

220.   On December 10, 2014, the Faculty Council considered the Ad Board's recommendation and voted to dismiss Plaintiff in each of the three cases. Cohen Decl., Ex. 82 (HU-DS-0001727); Am. Compl. at ¶ 366.

PLAINTIFF'S RESPONSE: So stipulated.

221.   Plaintiff did not receive a degree from Harvard due to being found to have violated the College's policy on sexual misconduct.  Cohen Decl., Ex. 63 (HU-DS-0002144) at HU-DS-0002164; Cohen Decl., Ex. 64 (HU-DS-0002206) at HU-DS-0002224; Cohen Decl., Ex. 65 (HU-DS-0002278) at HU-DS-0002297; Cohen Decl., Ex. 82 (HU-DS-0001726) at HU-DS-0001727.

PLAINTIFF'S RESPONSE: Disputed. Plaintiff was denied a Harvard degree after Defendants failed to follow their disciplinary procedures outlined in their policies in violation of Mr. Sonoiki's reasonable expectations drawn therefrom. *See, e.g.,* Plaintiff's Response to SUF ¶¶ 4, 20, 24, 30, 32.

**VI.** **Plaintiff's Petition for Readmission**

222. 

PLAINTIFF'S RESPONSE: So stipulated.

223. In November of 2017, Plaintiff sent a letter requesting readmission.

PLAINTIFF'S RESPONSE: So stipulated.

224. Plaintiff stated in that email

PLAINTIFF'S RESPONSE: Disputed.

225.

PLAINTIFF'S RESPONSE: So stipulated.

226.

PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶ 225.

227.

PLAINTIFF'S RESPONSE: Disputed. *See* Plaintiff's Response to SUF ¶ 225.

228.

PLAINTIFF'S RESPONSE: Dispute .

229.     On January 17, 2018, the Secretary of the Faculty emailed Plaintiff, writing that the "Docket Committee ha[d] reviewed [his] petition for readmission" and that "[o]n behalf of the Faculty Council, they ha[d] sent the case to the Ad Board for their recommendation."  Cohen Decl., Ex. 87 (SONOIKI 000603).

PLAINTIFF'S RESPONSE: So stipulated.

230.     On January 30, 2018, the Ad Board discussed Plaintiff's readmission request. Cohen Decl., Ex. 88 (SONOIKI 000620).

PLAINTIFF'S RESPONSE: So stipulated.

231.     On February 1, 2018, Brandt sent a letter to Plaintiff informing him of the January 30, 2018 Ad Board meeting, and advising him that the Ad Board "did not recommend [his] readmission to the College."  Cohen Decl., Ex. 88 (SONOIKI 000620).

PLAINTIFF'S RESPONSE: So stipulated.

232.     On February 15, 2018, Susan Lively emailed Plaintiff informing him the Docket Committee scheduled his petition for readmission for discussion by the Faculty Council on April 11.  Cohen Decl., Ex. 89 (SONOIKI 000621).

PLAINTIFF'S RESPONSE: So stipulated.

233.     On March 22, 2018, the Secretary of the Faculty informed Plaintiff that the Faculty Council voted not to grant his request for readmission based on "careful consideration of [his] petition, the documentation from the original three cases, and the Administrative Board's recommendation . . . ."  Cohen Decl., Ex. 90 (SONOIKI 000626).

PLAINTIFF'S RESPONSE: So stipulated.

## VII.  __Plaintiff's Post-Harvard Employment and Activities__

234.    Plaintiff interned with Goldman Sachs as an analyst during the summer of 2011 and 2012, and after receiving a full-time offer, returned to the firm in July 2013, upon leaving Harvard. ██████████████████████████ Cohen Decl., Ex. 36 (SONOIKI 000959).

PLAINTIFF'S RESPONSE: So stipulated.

235.    ████████████████████████████████

████████████████

PLAINTIFF'S RESPONSE: So stipulated.

236.    ████████████████████████████████

██████████████

PLAINTIFF'S RESPONSE: So stipulated.

237.    ████████████████████████████████

████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

238.    ████████████████████████████████

██████████████

PLAINTIFF'S RESPONSE: So stipulated.

239.    ████████████████████████████████

████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. Damilare did not apply to Goldman Sachs with a resume and had the position before graduation.  *See* Bullock Decl., Ex. 16, Sonoiki Decl., ¶¶ 12, 13.

240.    Plaintiff had been offered a job at Goldman Sachs prior to his planned graduation

date. ███████████████████████████████████████████████████████████████

███████

PLAINTIFF'S RESPONSE: So stipulated.

241.    █████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. ████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

242.    Around May 2014, Plaintiff was offered a two-year position at Taconic Capital

Partners, a hedge fund.  Cohen Decl., Ex. 66 (SONOIKI 000092-99).

PLAINTIFF'S RESPONSE: So stipulated.

243.    ███████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. ████████████████████████████████

██████████████████████████████████████████████████████████████████████

█████████████████████████████████████████; Metlitsky Decl.,

Ex. K (September 25, 2018 Wall Street Journal Article, "Ex-Analyst in Insider-Trading Case

Faces Misconduct Allegations at Harvard").

244. 

PLAINTIFF'S RESPONSE: Disputed.

Metlitsky Decl., Ex. K (September 25, 2018 Wall Street Journal Article, "Ex-Analyst in Insider-Trading Case Faces Misconduct Allegations at Harvard").

245.

PLAINTIFF'S RESPONSE: Disputed. Mr. Sonoiki was wrong in his email to Ms. Johnson. He had not applied to Taconic with a resume.  *See* Sonoiki Decl. ¶ 32.

246. ██████████████████████████████████████

████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed to the extent there was no way in which Mr. Sonoiki could

have "disclosed" his circumstances in a manner which would have prevented his termination

from Taconic. *See* Plaintiff's Response to SUF ¶¶ 244; *see* Bullock Decl., Ex. 16, Sonoiki Decl.,

¶¶ 34.

247.   Plaintiff chose to resign from Goldman Sachs in May 2015, ████████████████

████████████████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

248.   Plaintiff has not worked in the financial industry since departing Goldman Sachs

in May 2015.  Cohen Decl., Ex. 93 (Plaintiff's Response to Interrogatory No. 7 in Defendants'

First Set of Interrogatories) at 3.

PLAINTIFF'S RESPONSE: So stipulated.

249.   Plaintiff then transitioned to work in the entertainment industry.  Cohen Decl., Ex.

83 (SONOIKI 000925); Cohen Decl., Ex. 99 (SONOIKI 000900); Cohen Decl., Ex. 102

(SONOIKI 000954); Cohen Decl., Ex. 101 (Sonoiki Dep. Tr.) at 51:7–16.

PLAINTIFF'S RESPONSE: So stipulated.

250.   In May 2015, Plaintiff received an offer to work as a staff writer on the show

*Black-ish* (ABC/Disney) and did so from June 2015 to March 2016.  Cohen Decl., Ex. 99

(SONOIKI 000900); Cohen Decl., Ex. 83 (SONOIKI 000925).

PLAINTIFF'S RESPONSE: So stipulated.

251. ███████████████████████████████████████████
██████████████

PLAINTIFF'S RESPONSE: Disputed. ████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

252. ██████████████████████████████████████
██████████████████

PLAINTIFF'S RESPONSE: Disputed, *See* Plaintiff's Response to SUF ¶ 251.

253.    Plaintiff stopped writing for the show because he was not brought back for the following season.  Cohen Decl., Ex. 101 (Sonoiki Dep. Tr.) at 51:7–16.

PLAINTIFF'S RESPONSE: So stipulated to the extent that Mr. Sonoiki was not brought back.  Mr. Sonoiki was not brought back because he did not have a Harvard degree.  Bullock Decl., Ex. 16, Sonoiki Decl., ¶¶ 37, 38.

254.    In total, Plaintiff earned $108,433 from his time at *Black-ish*.  Cohen Decl., Ex. 99 (SONOIKI 000900).

PLAINTIFF'S RESPONSE: Disputed. ████████████████████████
████████████████████████████████████████████████████
██████████████████████

255. ██████████████████████████████████

████████████████████████████████████████████

████████████████

PLAINTIFF'S RESPONSE: Disputed. ███████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

256. ██████████████████████████████████

████████████████████████████████████████████
██████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. ██████████████

████████████████████████████████████████████
████████████████████████████████████████████

257. ██████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

258.    Beginning in December 2017, Plaintiff was employed as a story editor for *The Simpsons*. ████████████████████████████████████
████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. ██████████████

████████████████████████████████████████████
████████████████████████████████████████████



259.

PLAINTIFF'S RESPONSE: Disputed.

260. 

PLAINTIFF'S RESPONSE: Disputed. Plaintiff earned $26,566 for writing a script for *The*

*Simpsons*. *See*  Bullock Decl., Ex. 16, Sonoiki Decl., ¶ 46.

261.

PLAINTIFF'S RESPONSE: Disputed.

262.

PLAINTIFF'S RESPONSE: So stipulated.

263.

PLAINTIFF'S RESPONSE: Disputed.

264.

PLAINTIFF'S RESPONSE: Disputed. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

     265.    On August 29, 2018, the Securities and Exchange Commission ("SEC")

announced charges against Plaintiff and NFL player Mychal Kendricks for securities fraud and

conspiracy to commit securities fraud.  Metlitsky Decl., Ex.I (https://www.sec.gov/news/press-

release/2018-170); ████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

     266.    The charges were based on activities Plaintiff engaged in from approximately July

2014 through November 2014, during which time he shared material non-public information

████████████████████████████████████████████

(Sonoiki Plea Tr.) at 38:12–42:3.

PLAINTIFF'S RESPONSE: So stipulated.

     267.    On August 29, 2018, the United States Attorney's Office filed a two-count

Information, charging the Plaintiff and his co-defendant Kendricks with one count of conspiracy

to commit securities fraud and one count of securities fraud.  Metlitsky Decl., Ex. L (Sonoiki

Sentencing Hrg. Tr.) at 7:9–16.

PLAINTIFF'S RESPONSE: So stipulated.

     268.    On September 19, 2018, Plaintiff pled guilty to the securities fraud and conspiracy

charges.  In pleading guilty, Plaintiff acknowledged his plea could cause "very serious long-

lasting negative effects on certain kinds of professional licenses" and that his plea would "be a

matter of public record."  Metlitsky Decl., Ex. J (Sonoiki Plea Tr.) at 56:22–57:21; ███████████

████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

269.    On July 29, 2021, Plaintiff admitted under oath during his sentencing hearing for the securities fraud and conspiracy charges that "there are other people who in that same situation would have done the right thing" and "however many offers [he] lost, however many degrees [he] didn't get, that's not an excuse for [committing securities fraud.]"  Metlitsky Decl., Ex. L (Sonoiki Sentencing Hrg. Tr.) at 76:12–77:1.

PLAINTIFF'S RESPONSE: So stipulated.

270.    On September 19, 2022, Plaintiff entered into a settlement with the SEC that expressly bars him from associating with "any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization," and "from participating in any offering of a penny stock."  Metlitsky Decl., Ex. M (September 19, 2022 Order).

PLAINTIFF'S RESPONSE: So stipulated.

271.    ███████████████████████████████
████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

272.    ███████████████████████████████
████████████████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

273. ███████████████████████████████████
███████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

274.    On April 21, 2016, Plaintiff withdrew from the 2+2 program at Harvard Business School.  Cohen Decl., Ex. 84 (SONOIKI 000155).

PLAINTIFF'S RESPONSE: Disputed. Damilare was forced to withdraw because he did not have a degree.  Sonoiki Decl. ¶ 23. ████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

275.    Plaintiff has not attended any educational institutions since departing Harvard in 2013. ██████████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

276. ███████████████████████████████████
███████████████████████████

PLAINTIFF'S RESPONSE: So stipulated.

277. ███████████████████████████████████
███████████████████████████████████████████████

PLAINTIFF'S RESPONSE: Disputed. ███████████████████
███████████████████████████████████████████████

278. 

PLAINTIFF'S RESPONSE: So stipulated.

279.

PLAINTIFF'S RESPONSE: Disputed.

Stipulated to the extent that the one text reads what Defendants quote, and that

280.    Plaintiff states that the allegations of sexual misconduct have deprived him of opportunities in the entertainment industry.  Cohen Decl., Ex. 93 (Plaintiff's Response to Defendants' Interrogatory No. 11) at 7.

PLAINTIFF'S RESPONSE: Disputed. Stipulated to the extent that allegations of sexual misconduct resulting in Mr. Sonoiki being deprived of a Harvard degree have cost Mr. Sonoiki opportunities in the entertainment industry. *See*  Bullock Decl., Exs. 16, 17, 18; Sonoiki Decl., ¶ 37.

281.    Plaintiff also contends that the publicizing of the allegations of sexual misconduct against him have derailed his career prospects.

ECF Dkt. No. 131 at 11.

PLAINTIFF'S RESPONSE: Disputed. Stipulated to the extent that Mr. Sonoiki lacking a Harvard degree connected to allegations of sexual misconduct have significantly undermined Mr. Sonoiki's career prospects. *See*  Bullock Decl., Exs. 16, 17, 18; Sonoiki Decl., ¶¶ 31, 33, 37.

282.    In 2018, news organizations reported on Plaintiff's insider trading case and sexual misconduct allegations.  Metlitsky Decl., Ex. K (September 25, 2018 Wall Street Journal Article, "Ex-Analyst in Insider-Trading Case Faces Misconduct Allegations at Harvard"); Cohen Decl., Ex. 91 (SONOIKI 000633); Cohen Decl., Ex. 92 (SONOIKI 000691) at SONOIKI 000692.

PLAINTIFF'S RESPONSE: So stipulated. The same article Defendants cite also discusses Mr. Sonoiki's lack of a Harvard degree and the issues it has caused for him. Metlitsky Decl., Ex. K (Doc. No. 146-11)

283.



PLAINTIFF'S RESPONSE: Disputed.

284.

PLAINTIFF'S RESPONSE: So stipulated.

285.

PLAINTIFF'S RESPONSE: So stipulated.


Dated: May 31, 2023                    Respectfully submitted,


                                       _David Cohen_ (via email consent)
                                       Anton Metlitsky (*pro hac vice*)
                                       David Cohen (*pro hac vice*)
                                       O'MELVENY & MYERS LLP
                                       7 Times Square
                                       New York, NY 10036
                                       (212) 326-2000
                                       ametlitsky@omm.com
                                       dcohen@omm.com

                                       Apalla U. Chopra (pro hac vice)
                                       O'MELVENY & MYERS LLP
                                       400 South Hope Street
                                       Los Angeles, CA 90071
                                       (213) 430-6000
                                       achopra@omm.com

                                       Victoria L. Steinberg, BBO # 666482
                                       CLOHERTY & STEINBERG LLP
                                       33 Arch Street
                                       Boston, MA  02110
                                       vsteinberg@clohertysteinberg.com


                                       *Attorneys for Defendants*
                                       *Harvard University, Harvard Board of*
                                       *Overseers, and President and Fellows of*
                                       *Harvard College*

**As to Plaintiff's Responses**

Dated: June 28, 2023

Respectfully Submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/ Susan C. Stone*
SUSAN C. STONE (*pro hac vice*)
KRISTINA W. SUPLER (*pro hac vice*)
ANNA E. BULLOCK (*pro hac vice*)
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: scs@kjk.com; kws@kjk.com

**NESENOFF & MILTENBERG, LLP**

TARA J. DAVIS (BBO # 675346)
101 Federal Street, 19th Floor
Boston, Massachusetts 02110
Telephone: (617) 209-2188
Facsimile: (212) 736-2260
Email: Tdavis@nmllplaw.com
*Counsel for Plaintiff Damilare Sonoiki*