UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAMILARE SONOIKI,<br><br>    Plaintiff,<br><br>v.<br><br>HARVARD UNIVERSITY, et al.,<br><br>    Defendants. | Civil Action No. 1:19-cv-12172-LTS<br><br>**LEAVE TO FILE REDACTED GRANTED ON JUNE 30, 2023** |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO LIMIT TESTIMONY OF DR. LAURA MALOWANE

# INTRODUCTION

Harvard[1] has offered Dr. Laura Malowane's opinions in large part to explain the many flaws in the opinions offered by rehabilitation counselor Steven D. Shedlin and damages experts Chad L. Staller and Stephen M. Dripps—the purported experts Plaintiff Damilare Sonoiki has called to substantiate his baseless claim that Harvard owes him millions of dollars in contract damages. In truth, Dr. Malowane's testimony rebutting Plaintiff's experts is unnecessary—Plaintiff's experts' opinions are not only self-evidently unreliable but inadmissible, and should be excluded. *See generally* Dkt. No. 124 (Memorandum in Support of Defendants' Motion to Exclude the Testimony of Shedlin, Staller, and Dripps). But if Plaintiff's experts are allowed to testify, then Harvard is entitled to offer rebuttal testimony from Dr. Malowane—an economist with extensive training and experience in analyzing loss causation—to explain to the jury the many reasons why, as a matter of economic analysis, Plaintiff's experts' opinions are based on faulty premises and generally make no sense. In contrast to Plaintiff's main expert, Mr. Shedlin—who has no relevant expertise—Dr. Malowane's expertise in economic analysis is unchallenged.

Plaintiff's motion seeking to limit Dr. Malowane's testimony borders on frivolous. Plaintiff argues that Dr. Malowane offers a number of opinions outside of her area of expertise, economics. Yet in each portion of Dr. Malowane's testimony to which Plaintiff objects, she discusses why, *as a matter of economic analysis*, Plaintiff's experts go astray—*i.e.*, by making incorrect assumptions, failing to consider important factors, or relying on no data or unreliable data. In doing so, Dr. Malowane explains why their crucial inference—that Harvard's actions

---

[1] Plaintiff's Complaint incorrectly identifies the Harvard entities as "Harvard University, Harvard University Board of Overseers, and the President and Fellows of Harvard College." The President and Fellows of Harvard College is the legal entity that comprises the various named defendants and is the only proper party to this litigation.

1

*caused* Plaintiff's damages—does not hold up.  Interrogating the assumptions and data underlying a causation model is what economists do and what Dr. Malowane unquestionably did here.

For these reasons as well as those that follow, Harvard respectfully requests that the Court deny Plaintiff's motion to limit Dr. Malowane's testimony.

## LEGAL STANDARD

An expert witness may offer an opinion justified by her "knowledge, skill, experience, training, or education" so long as "the expert's scientific, technical, or other specialized knowledge will help the trier of fact" and "the testimony is the product of reliable principles and methods" that are "reliably applied[.]"  Fed. R. Evid. 702.  A trial court must ensure that "an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *United States v. Vargas*, 471 F.3d 255, 261 (1st Cir. 2006) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).  Plaintiff's experts failed that test for the reasons explained in Harvard's motion to exclude them.  Dr. Malowane, in contrast, easily passes it.

## ARGUMENT

**I.     Dr. Malowane Reliably Applied Basic Economic Principles to the Unreliable Opinions of Plaintiff's Experts.**

In her report, Dr. Malowane applies basic principles of economic analysis to rebut the unfounded opinion of Plaintiff's experts that Harvard caused Plaintiff to sustain damages.  Mr. Shedlin specifically opined that Harvard's actions caused Plaintiff's alleged damages, including that ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

2

███████████████████████████████████████████████████████████████████████████

█████████████████████ Dkt. No. 125-3 (Report of Steven D. Shedlin) at 4–5.

But an economic analysis of a plaintiff's damages requires "measur[ing] the loss caused by the harmful act of the defendant." Mark A. Allen et al., *Reference Guide on Estimation of Economic Damages*, *in* Reference Manual on Scientific Evidence 425, 429 (3d ed.). Indeed, to be reliable, an economic analysis "must be based on justified and reasonable assumptions." *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 2009 WL 3053855, at *3 (D. Mass. Sept. 21, 2009). And those assumptions must themselves be "reliably grounded in the facts in the record." *Id.* at *4.

Dr. Malowane's testimony demonstrates that Plaintiff's experts do not satisfy any of these preconditions. In particular, Dr. Malowane—an economist with training and experience in "proof of injury, quantification of damages, and other economics-related topics in litigation matters" who has offered testimony on damages assessment and causation in dozens of cases, Dkt. No. 154-1 (Report of Laura Malowane) ¶ 2, App. 1, at 2–9—has principally opined that many of the assumptions underlying Mr. Shedlin's report are inapt, incorrect, and unjustified. As Dr. Malowane explains, an ████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶ 14. She points out that Mr. Shedlin, and by extension, Messrs. Staller and Dripps, ███████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████ *Id.* ¶ 15. This is not, as Plaintiff suggests, Dr. Malowane's "personal understanding" of Mr. Shedlin's (and Messrs. Staller/Dripps') analysis. Dkt. No. 158 at 5. To the contrary, it is the foundation of her economic analysis. As (just a few) examples, Dr. Malowane opines that:

3



"To establish a causal link" between two factors, "an economist must control for confounding factors[.]" *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Boston*, 853 F. Supp. 2d 181, 190 (D. Mass. 2012).  Dr. Malowane acts entirely consistent with her training and experience in pointing out the many ways in which Mr. Shedlin failed to establish a causal connection between Harvard's actions and Plaintiff's alleged loss, and instead credited faulty assumptions and ignored important considerations.  She exposes the many flaws in Plaintiff's experts' conclusion that Harvard's alleged breach of contract—rather than numerous intervening factors—caused the damages Plaintiff has claimed.  Dr. Malowane's criticism of Mr. Shedlin's report is thus the very "system of analysis" that is "reasonably likely to add to common understanding of the particular issues before the jury." *United States v. Fosher*, 590 F.2d 381, 383 (1st Cir. 1979).  Indeed, "as an economist, [Dr. Malowane] is qualified to offer her opinion regarding causation.  Such an opinion would also be helpful to a lay jury." *AU New Haven, LLC v. YKK Corp.*, 2019 WL 1254763, at *16 (S.D.N.Y. Mar. 19,

2019); *accord In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 493 (S.D.N.Y. 2018).[2]  The Motion should be denied to the extent it argues otherwise.

**II.     Plaintiff's Specific Objections to Dr. Malowane's Testimony Lack Merit.**

Plaintiff contends that Dr. Malowane opines on several topics beyond her expertise—in particular, her "views" on (i) Plaintiff's employability, (ii) the "inevitability" of his insider trading conviction, (iii) Harvard's liability, and (iv) data analysis.  However, as to each topic, Dr. Malowane does not offer an affirmative opinion, but rather notes a flaw in Mr. Shedlin's analysis.  As explained, her "knowledge, skill, experience, training, or education" as an economist and expert in the assessment and quantification of damages lies in identifying such errors.  Fed. R. Evid. 702.  And, in any event, Plaintiff's kitchen-sink objections fail on their own terms.  They should be rejected.

**A.     Dr. Malowane offers no opinion about Plaintiff's "general employability" or the "propriety of his Plaintiff's job search activities."**

Plaintiff accuses Dr. Malowane of "opin[ing] upon Plaintiff's employability and job placement prospects," despite an asserted lack of expertise "in vocational services or job training."  Dkt. No. 158 at 5–6 (cleaned up).  Specifically, he takes issue with Dr. Malowane's observation that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Dkt. No. 154-1 ¶ 15.  But as is clear on its face, this passage contains no opinion about Plaintiff's employability.  Instead, it points out a fundamental flaw of Mr. Shedlin's

---

[2] Plaintiff's motion challenges testimony Dr. Malowane offers in rebuttal to Plaintiff's experts.  Dr. Malowane also offers affirmative opinions in her report, and Harvard reserves the right to rely on that testimony even if the testimony of Plaintiff's experts is excluded.

5

analysis: Mr. Shedlin does not tie Plaintiff's lost earnings to *Harvard's*—as opposed to Plaintiff's—conduct.

Along similar lines, Plaintiff contends that Dr. Malowane "provides no special insight into the evidence" that a jury would not possess, but rather "merely tell[s] the jury what result to reach." Dkt. No. 158 at 5–6. But that is untrue. Dr. Malowane explicitly probes the flaws in Mr. Shedlin's reasoning using the tools of economic analysis, and, throughout that analysis, explains the many ways in which (in her professional opinion) Mr. Shedlin's reasoning is unsound. That is a proper application of "specialized knowledge" under Rule 702. And, even so, Dr. Malowane offers no ultimate opinion on Plaintiff's employability.

Relatedly, Plaintiff challenges Dr. Malowane's alleged failure to analyze Plaintiff's "specific employment opportunities to determine his specific employment prospects." Dkt. No. 158 at 7. But, again, Dr. Malowane herself offers no opinion on Plaintiff's employment opportunities nor does she offer an opinion on Plaintiff's long-term "earning potential." *Id.*; *see also* Dkt. No. 154-2 (Deposition of Laura Malowane) at 43:17 ███████████ ███ Instead, Dr. Malowane criticizes Mr. Shedlin's report for relying on plainly unreliable data to determine Plaintiff's estimated future earnings working at a hedge fund. *Id.* at 65:9–14; Dkt. No. 154-1 ¶ 35; *see also* Dkt. No. 124 at 7 ███████████

---

[3] Plaintiff also selectively quotes Dr. Malowane as saying Plaintiff "could have earned [$]700,000." Dkt. No. 158 at 7. Dr. Malowane also said ███████ Dkt. No. 154-2 at 43:1–13. And again, in her report Dr. Malowane was

6

Plaintiff further faults Dr. Malowane for purportedly opining on his reputational harm, again citing her view that Mr. Shedlin did ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. No. 154-1 ¶ 19. The relevant passage itself makes clear Dr. Malowane offers no opinion about reputational harm. She merely points out that, from an economics perspective, a central component of Mr. Shedlin's analysis—evidence of a causal link between wrongdoing by *Harvard* and Plaintiff's alleged harm—is missing.[4]

### B. Dr. Malowane does not opine that Plaintiff's insider trading conviction was "inevitable."

Plaintiff appears to believe that Dr. Malowane testified that his insider trading conviction was "inevitable." Dkt. 158 at 10–11. She did not. As Plaintiff himself observes, Dr. Malowane instead testified that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 11 (quoting Dkt. No. 154-2 at 85:12–14). Indeed, Dr. Malowane testified that *Mr. Shedlin* evinced impermissible certainty about the future in suggesting that Plaintiff would *not* have committed insider trading had he moved from Goldman Sachs to Taconic. Dkt. No. 154-1 ¶¶ 17–18; *see also* Dkt. No. 125-3 at 4 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ It is well within an economist's ken to point out that Mr. Shedlin failed to consider that Plaintiff—who obtained insider information while at Goldman Sachs, met his co-conspirator there, and planned to remain in the

---

[4] Plaintiff seeks to exclude "[l]ay opinion regarding Plaintiff's rehabilitation expert's report." Dkt. 158 at 12. None of Dr. Malowane's testimony regarding Shedlin's report is in the form of a lay opinion, and, as explained, all such testimony is consistent with Rule 702.

finance industry—might have committed insider trading even if he had changed jobs.  Mr. Shedlin offered no facts or specialized knowledge to suggest otherwise.

        **C.**        **Dr. Malowane offers no legal conclusions about Harvard's liability or "the sufficiency of the evidence in this case."**

Next, Plaintiff argues that Dr. Malowane offers "opinions regarding the breach of contract and causation of damages." Dkt. No. 158 at 7.  She does not.  To the contrary:  an assumption of liability is a necessary prerequisite to any discussion of damages.  *See* Dkt. No. 154-2 at 73:7–10 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ To the extent that Dr. Malowane discusses the concept of causation, it is to rebut Plaintiff's *own* expert's causation opinion.  That is plainly not an impermissible legal conclusion.  *See id.* at 72:1–3 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ In addition, a *supported* finding of causation is the heart of a damages analysis.  *See* Allen et al., *supra* at 3.  Dr. Malowane is well within her area of expertise in opining that Mr. Shedlin's entire report is based on the (incorrect and unsupported) conclusion that Harvard's alleged breach of contract caused Plaintiff's damages.

Moreover, despite Plaintiff's suggestion to the contrary, Dr. Malowane does not merely "repeat [Harvard's] legal theories" in rebutting the testimony of Plaintiff's experts.  *See* Dkt. No. 158 at 9.  Nor does she anywhere render a legal opinion.[5]  Rather, Dr. Malowane finds that, as a matter of economic analysis, those experts failed to adequately account for ▉▉▉▉▉▉

---

[5] Plaintiff takes issue with Dr. Malowane citing to a litigation services handbook, suggesting it is evidence Dr. Malowane is undertaking a legal analysis of causation. Dkt. No. 158 at 7–8.  But the handbook is a guide for *financial experts* on methodologies to use in litigation.  *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 292 (3d Cir. 2012) (citing the handbook to describe a frequently accepted expert methodology); *Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc.*, 546 F. Supp. 2d 155, 172 (D.N.J. 2008) (same).  That the handbook describes damages methodologies courts have rejected does not make Dr. Malowane's opinion a legal analysis.

███████████████████████ Dkt. No. 154-1 ¶ 14.  She should be allowed to explain her analyses to a jury.

### D.   Dr. Malowane does not purport to be an expert in "*all* data analysis."

Lastly, Plaintiff argues that "[a]s far as Dr. Malowane claims to have a superior ability to assess *all* data and explain data that is already be [*sic*] available to the jury, she should be precluded from doing so."  Dkt. 158 at 12.  Plaintiff does not say what testimony he seeks to exclude on this basis or what hypothetical data Dr. Malowane cannot analyze and/or that is already available to the jury.  And Dr. Malowane nowhere has claimed an ability to assess *all* data, nor could she.  That would be humanly impossible.  But to the extent Dr. Malowane, in responding to a question at deposition, referenced the particular types of data in which she has interpretive expertise, she was entitled to establish the foundation for her opinion.  More importantly, in her testimony, Dr. Malowane principally uses her understanding of the proper analysis of data to show why Mr. Shedlin's—and, by extension, Staller and Dripps'—opinions are utterly unsupported by evidence or sound reasoning.[6]

## CONCLUSION

For the foregoing reasons, Harvard respectfully requests that the Court deny Plaintiff's motion to limit Dr. Malowane's testimony.

---

[6] Plaintiff likewise argues that Dr. Malowane should be precluded from testifying about "[t]he sufficiency of the evidence in this case."  Dkt. 158 at 12.  Dr. Malowane offers no such testimony.

Dated: June 30, 2023 Respectfully submitted,

/s/ *Anton Metlitsky*

Anton Metlitsky (*pro hac vice*)
ametlitsky@omm.com
David Cohen (*pro hac vice)*
dcohen@omm.com
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone:     (212) 326-2000
Facsimile:     (212) 326-2061

Apalla U. Chopra (*pro hac vice*)
achopra@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071
Telephone:     (213) 430-6000
Facsimile:     (213) 430-6407

Victoria L. Steinberg (BBO #666482)
vsteinberg@clohertysteinberg.com
Rebecca M. O'Brien (BBO #693592)
robrien@clohertysteinberg.com
CLOHERTY & STEINBERG LLP
33 Arch Street, Suite 3150
Boston, MA  02110
Telephone:     (617) 481-0160

*Attorneys for Defendants,*
*Harvard University, Harvard University*
*Board of Overseers, and the President and*
*Fellows of Harvard College*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 30, 2023.

                  */s/ Anton Metlitsky*
                  Anton Metlitsky