UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAMILARE SONOIKI,<br><br>             Plaintiff,<br><br>     v.<br><br>HARVARD UNIVERSITY, et al.,<br><br>             Defendants. | Civil Action No. 1:19-cv-12172-LTS<br><br>Leave to file redacted granted<br>July 19, 2023 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF HARVARD'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The undisputed facts require summary judgment. In his Opposition ("Opp."), Doc. No. 163, Plaintiff does not dispute that (i) a student, like Plaintiff, who is found to have committed sexual misconduct against other students is generally not entitled to graduate from Harvard; (ii) the Secretary of the Administrative Board ("Ad Board"), Jay Ellison, sent Plaintiff a letter before graduation stating that Plaintiff could not receive his degree because he had been accused of exactly such conduct, a disciplinary case had been initiated against him, and the Ad Board must investigate the allegations of sexual misconduct before granting him a degree; and (iii) his Resident Dean, Laura Johnson, told Plaintiff in person that he would not receive a degree at graduation. Nonetheless, Plaintiff continues to press the theory that he expected he would receive his degree anyway, asserting that Harvard's own policies required it to grant him a degree without first investigating whether he had sexually assaulted multiple students. There is no evidence that Plaintiff ever had such a bizarre expectation, which he never claimed to have until filing this lawsuit. And any such expectation would in any event have been objectively unreasonable on the undisputed facts. Plaintiff's "Charge Theory" thus fails as a matter of law.

The undisputed facts also require summary judgment on Plaintiff's other remaining claims, and he has in any event failed to prove that Harvard's conduct resulted in the damages he seeks. Indeed, many of Plaintiff's arguments in opposition are based on distortions of the record and easily disproven falsehoods. Harvard's motion should be granted.

**ARGUMENT**

The parties agree that the "appropriate inquiry is whether 'the student's expectation, viewed objectively alongside the express terms of the contract, is based on the student's fair interpretation of the contract's provisions.'" *Doe v. Stonehill Coll.*, 55 F.4th 302, 316 (1st Cir. 2022) (quoting *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 709 (1st Cir. 2022)). Plaintiff is correct

1

that he must show that he in fact possessed an expectation, but that hardly helps him because he must *also* show that this expectation was "objectively" reasonable. *Id.*; *see also Walker v. President & Fellows of Harvard Coll.*, 82 F. Supp. 3d 524, 529–30 (D. Mass. 2014), *aff'd*, 840 F.3d 57 (1st Cir. 2016) (standard is "objective reasonableness"). He can show neither.

Moreover, Plaintiff is wrong that the First Circuit's pleadings-stage decision precludes summary judgment. That decision merely held, under a Rule 12(b)(6) standard, that some of the language in Harvard's procedures was plausibly ambiguous. But "[e]ven if a contract might arguably appear ambiguous from its words alone, the decision remains with the judge if the alternative reading is inherently unreasonable when placed in context." *McAdams v. Mass. Mut. Life Ins. Co.*, 391 F.3d 287, 298 (1st Cir. 2004). Here, the context—including the "one-sided" extrinsic evidence, *Int'l All. of Theatrical Stage Emps. v. Martin Sports Ent.*, 2023 WL 2601611, at *9 (D. Mass. Mar. 22, 2023) (summary judgment appropriate when extrinsic evidence is one-sided), and "common sense," *Fishman v. LaSalle Nat'l Bank*, 247 F.3d 300, 302 (1st Cir. 2001)—show not only that Plaintiff lacked the implausible expectations that he now asserts, but also that any such expectations would have been objectively unreasonable.

**I.      Plaintiff Fails to Raise a Genuine Issue of Material Fact as to Any of His Claims.**

   **A.      The Charge Theory Fails.**

   1. <u>Plaintiff lacked any subjective expectation of receiving a degree.</u>  There is no evidence that Plaintiff expected to receive his degree because a charge had not issued prior to graduation. He admits that, before he walked at graduation, Laura Johnson informed ███████████ ███████████. RSUF ¶¶ 83, 84.[1] He also admits that Jay Ellison repeatedly contacted him in the days before graduation and that Johnson sent him a letter from Ellison explaining that he

---

[1] "RSUF" refers to Plaintiff's Response to Harvard's Statement of Undisputed Facts.

would not receive a degree because a disciplinary case had been initiated. *Id.* ¶¶ 74–80, 84. Indeed, Plaintiff responded to Ellison's messages early on the morning of May 30, 2013—before commencement. *Id.* ¶ 90. Plaintiff thus could not have expected to receive a degree in advance of commencement. If he did, it could only have been because he repeatedly ignored Ellison and Johnson's outreach, such that his expectation would be facially unreasonable.

Plaintiff's main argument is that he expected to graduate because Harvard allowed him to participate in graduation activities, including Class Day. Opp. 25. But Harvard's decision not to sanction Plaintiff in this manner before it investigated the allegations against him could not possibly estop Harvard from later issuing appropriate sanctions once it concluded that investigation and confirmed the allegations. And again, Harvard made all this clear to Plaintiff. Plaintiff admits that Ellison attempted to contact him on May 28 and the morning of May 29, *before* Class Day, RSUF ¶¶ 74, 77, but Plaintiff ignored those emails, RSUF ¶¶ 76, 90. And he knew at the time of graduation that he would not receive his degree. RSUF ¶¶ 83, 84.[2]

Indeed, Plaintiff admits that he failed to argue, 

. RSUF ¶¶ 56, 202. Plaintiff says that he never had an opportunity to object, Opp. 25, but that is simply not true: he could have objected at any time between when Ellison and Johnson informed him he would not graduate (May 2013) and his appeal of the Ad Board's decision (filed May 2014). Plaintiff's failure to do so cannot be reconciled with his new position, manufactured for this litigation, that he believed Harvard was obligated to grant him a degree before investigating the serious allegations against him.

---

[2] Likewise, it is irrelevant that Ellison made a stray reference to Plaintiff being a "graduate" after May 30. Opp. 25–26. As the context of that exchange makes clear, Ellison was answering a technical question about the operation of the student directory; he was not representing that Plaintiff had received a degree. Cohen Decl., Ex. 19, HU-DS-2539–40. And, even so, Plaintiff could not have understood Ellison's comment that way—by that time, Plaintiff had *already* not received his degree and therefore was well aware that he was not a "graduate."

3

2. <u>Any such expectation would be unreasonable.</u>  A subjective expectation of receiving a degree would in any event have been unreasonable.  The Student Information Form ("SIF") provides that "[a] student cannot receive a degree before a pending disciplinary case is resolved," RSUF ¶ 32, and that "a disciplinary case always begins with an allegation of student misconduct in the form of a complaint or report," *id.* ¶ 31.  Here, it is undisputed that two complaints were filed against Plaintiff before his May 30, 2013 graduation, which initiated a case against him.  *Id.* ¶¶ 73, 79.  That is confirmed by Ellison's May 29 letter, which stated ████████████ ████████████████████████████████████████████.  *Id.* ¶¶ 78, 79.

In response, Plaintiff appears to argue that not all allegations begin a disciplinary case, and that sometimes a case does not begin until a "charge" issues.  Opp. 16–17.  That is inconsistent with the SIF, which makes clear that when an allegation is made, "a disciplinary case ***always*** begins."  RSUF ¶ 32 (emphasis added); *see also* RSUF ¶ 45.  The opening of the case triggers an investigation by a Subcommittee of the Ad Board, after which the full Board may decide to take the next step of issuing a charge in that ongoing case, thereby engaging a more intensive investigation.  Doc. No. 144 ("Opening Br.") at 15 n.4; RSUF ¶¶ 46, 47.  That process avoids the issuance of a charge—and, thus, a more intensive investigation—on allegations that are found on preliminary investigation not to support a disciplinary violation.  The SIF language that Plaintiff relies on—"[o]nce the charge has been investigated, the Board will review the case," Opp. 17—is fully consistent with that procedure, and with the proposition that the case opens before a charge issues.

Regardless, while the First Circuit thought the word "case" could "potentially" have multiple meanings, the Court never suggested that a charge *must* issue for a case to begin.  *See Sonoiki*, 37 F.4th at 705–06.  That would be inconsistent with the SIF, which describes the three phases of a disciplinary case, starting with an initial review that is completed *before* a charge is

issued, RSUF ¶ 44; *see also* RSUF ¶ 159 (stipulating that disciplinary process entered into "second phase" after charges issued)—and indeed informs the very decision of whether a charge is appropriate.  So even if a complaint *could* in theory not commence a disciplinary case as Plaintiff contends, all that matters is when the disciplinary case *against Plaintiff* was initiated. Here, the undisputed evidence shows that a case commenced against Plaintiff when the sexual assault allegations were made, and Ellison's letter ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.  RSUF ¶¶ 78, 79; *see also* RSUF ¶ 153 (Johnson explaining that a subcommittee would determine whether ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬); *id.* ¶ 145 (same).

      Thus, Plaintiff can only prevail if Harvard's procedures *precluded* it from withholding a degree once a disciplinary case had in fact been initiated.  That is impossible, because the SIF says "[a] student cannot receive a degree before a pending disciplinary case is resolved." RSUF ¶ 32.  The Ad Board Overview, which provides that "[a] degree will not be granted to a student . . . against whom a disciplinary charge is pending," *id.* ¶ 20, does not say otherwise, for the reasons Harvard has already explained in detail.  Opening Br. 18–20.  Plaintiff's contrary interpretation would create a conflict between the Overview and the SIF, and thus flouts the principle that contract documents "should be read harmoniously." *Happ v. Corning, Inc.*, 466 F.3d 41, 46 (1st Cir. 2006).  And at any rate, even if there were a conflict between the Overview and the SIF, the latter, which is more specific, would govern.  *See Astra USA, Inc. v. Bildman*, 455 Mass. 116, 141 (Mass. 2009); Opening Br. 15–16.  Plaintiff's conclusory assertion that the Overview is somehow more specific makes no sense.  The Overview makes clear that it is *an overview*, and it directs students to read the SIF for more detailed information about the Ad Board disciplinary process.  RSUF ¶¶ 25, 26.  Because the SIF governs disciplinary proceedings, Ellison sent Plaintiff the SIF, not the Overview.  *See id.* ¶ 96.

5

Plaintiff also turns to a line from a form governing confidentiality in Ad Board proceedings. Opp. 18. But Plaintiff does not allege that this form was part of the contract, RSUF ¶ 104, and indeed, it is undisputed that Plaintiff never even received or read that form, RSUF ¶ 118. In any event, the form does not help him. It states that a "matter that is under review . . . may give rise to a disciplinary case" and that the Ad Board may "make[] a determination to treat this matter as a disciplinary case." *See* RSUF ¶ 118. Plaintiff argues that this language means that not all allegations automatically begin cases. That is wrong—the form on which he relies merely provides that confidentiality obligations can exist *even before* a formal allegation is made. RSUF ¶ 103. But, again, it is undisputed here that a disciplinary case against Plaintiff *had* already begun before graduation, as Ellison's May 29 letter made clear.

In the end, Plaintiff concedes that his interpretation could only make sense if Harvard were required to *sua sponte* issue a charge immediately if it wished to withhold his degree while it investigated the allegations against him. But that reading *would* interfere with a student's reasonable expectations, since Harvard promised that no charge will issue before an initial investigation into the allegations against a student. *See* RSUF ¶¶ 44–47. The Ad Board can "initiate a charge against a student" prior to its own investigation, but generally does so "when a student has been charged with a crime in a court of law," *see* RSUF ¶ 45—*i.e.*, after law enforcement has already investigated and found sufficient cause to indict. Plaintiff's assertion that Harvard must summarily issue charges without any investigation or else grant degrees to students who may be unqualified to graduate is "inherently unreasonable when placed in context," and this Court should reject it. *McAdams*, 391 F.3d at 298.

Finally, Plaintiff's argument that Ellison breached the Ad Board procedures when Harvard initially withheld his degree is wrong. *See* Opp. 24–25. Ellison did not engage in any "unilateral disciplinary action." *See id.* He requested that Harvard's governing boards not vote

6

on granting Plaintiff's degree while the investigations were ongoing, and the governing boards agreed. RSUF ¶¶ 85–87. That conduct was consistent with the procedures described above and confirms that a disciplinary case had been initiated against Plaintiff before graduation, which resulted in the withholding of his degree pending investigation. This additional record evidence supports Harvard's position and precludes Plaintiff's. Opening Br. 13.[3]

       3. <u>Plaintiff has failed to prove causation.</u> Finally, even if Plaintiff were right about the Charge Theory, he cannot prove a breach caused him harm, because Harvard could have revoked a conferred degree after the conclusion of the investigations. Opening Br. 20; RSUF ¶ 58. Plaintiff's response that the Ad Board procedures do not provide for the withdrawal of degrees, *see* Opp. 23, is beside the point. The University itself—not the Ad Board—may withdraw degrees and has done so in the past. RSUF ¶ 58. Under Plaintiff's reasoning, the University could not revoke a degree even if it learned, for instance, that a former student had cheated on every paper and exam for four years. That is nonsense.

      **B.**    **Plaintiff's Remaining Theories Likewise Fail.**

      <u>**Advocate Theory.**</u> Plaintiff's Advocate Theory also fails. The SIF states that a student's Board Representative is "an officer of the College" who "will not advocate for" the student. *Id.* ¶ 37. It adds, in language the First Circuit did not address, that the Board Representative "will present to the [Ad] Board a *full* summary of the facts of the case" and "relevant facts that [the student and the Board Representative] previously discussed but that [the student] failed to raise in [their] interview"—duties inconsistent with advocacy. *Id.* ¶¶ 37, 39 (emphasis added). Plaintiff does not even attempt to respond to this language. While "a student's expectation can

---

[3] Plaintiff argues that contractual ambiguities should be resolved in his favor under the doctrine of *contra proferentem*. Opp. 13–15. However, that "canon has little to do with actual intentions and should only be used, as a last resort, if other aids to construction leave the case in equipoise." *Nat'l Tax Inst. v. Topnotch at Stowe Resort & Spa*, 388 F.3d 15, 18 (1st Cir. 2004) (applying Massachusetts law). Here, the contract's terms, extrinsic evidence, and context suffice to resolve any ambiguity, rendering *contra proferentem* inapplicable.

be reasonable even if the precise expectation is not stated explicitly in the contract's language," *Doe*, 55 F.4th at 316, the language here *directly undercuts* Plaintiff's purported expectation. *See id.* (reasonableness determined under "the express terms of the contract").

Moreover, all the extrinsic evidence in the record makes clear that Plaintiff had no reasonable expectation that Johnson would advocate for him. Johnson told Plaintiff ▇▇▇▇, undercutting any expectation she would fill that role. *Id.* ¶¶ 132, 160. And Plaintiff's own complaint cites a *Harvard Crimson* article explaining that the Ad Board procedures had previously been amended to allow students to consult personal advisers (which Plaintiff declined to do) precisely because Board Representatives were not advocates under the Ad Board procedures. Am. Compl. n.5. Plaintiff grapples with none of this. In any event, Plaintiff has failed to show that the alleged breach caused him any harm, because he was given a full opportunity to advocate for himself, took advantage of that opportunity, RSUF ¶ 155, and still has not articulated what advocacy Johnson failed to offer.

**Confidentiality Theory.** The Confidentiality Theory likewise fails. The SIF is explicit that Johnson was an "officer of the College" and says nothing about a confidentiality obligation, *see id.* ¶ 37—despite explicitly noting when confidentiality exists in other contexts, *see id.* ¶¶ 41–43. Moreover, the SIF explains that Board Representatives are to "present to the Board a full summary of the facts of the case," including issues the "student failed to raise." *Id.* ¶¶ 37, 39. The *Crimson* article Plaintiff attached to his complaint confirmed the lack of any confidentiality duty. Am. Compl. n.5. And Johnson testified that ▇▇▇▇▇▇▇▇. *Id.* ¶¶ 186–87. Plaintiff argues that Johnson's conduct led him to believe she would keep his confidences, Opp. 30–31, but the fact that she acted compassionately, consistent with her role as a Resident Dean and Board Representative, cannot establish the existence of a confidential relationship.

8

Moreover, Plaintiff has never identified any allegedly confidential information he gave Johnson that she allegedly disclosed. *Id.* ¶¶ 189–192. Indeed, when Plaintiff was asked to identify an example of information he provided Johnson that he believed was confidential, ███████████████████████████████████████████████████████████████ ████████, Opening Br. 24–25—a fact his Opposition ignores. He also argues that he could not identify what confidential information was disclosed because he was not present at the Ad Board meetings. Opp. 31. But Plaintiff cannot meet his burden on summary judgment by offering "conjecture" that some confidential information *might* have been disclosed. *See August v. Offices Unlimited, Inc.*, 981 F.2d 576, 580 (1st Cir. 1992).[4]

**Witness Names Theory.** Plaintiff does not dispute that he failed even to plead his claim that Johnson withheld witness names. Opening Br. 25–26. In any event, the record evidence shows that Plaintiff was told at the outset ████████████████████████████████ ████, *see* RSUF ¶ 134, ██████████████████████████, *see id.* ¶¶ 170, 207, ████████ ████████████, *see id.* ¶¶ 134–38, 176, ████████████████████████, *see, e.g., id.* ¶180. Plaintiff does not assert that he asked the name of any witness despite knowing he could, which suffices to reject his claim. Opp. 31–32. He does purport to dispute that Johnson shared or tried to share the names with him, *id.*, but the plain record evidence says otherwise, and Plaintiff's "conclusory, self-serving testimony"—made all the more implausible by his failure ever to complain during the disciplinary process, including on appeal, that he did not know the witnesses against him—does not create a genuine dispute of material fact, *SMS Sys. Maint. Servs., Inc. v. Digital Equipment Corp.*, 188 F.3d 11, 20 (1st Cir. 1999). He is thus left to argue that he could not "verify" the names he knew. Opp. 32. Plaintiff does not explain what that

---

[4] Plaintiff says Harvard failed to disclose Johnson's Ad Board meeting notes. Opp. 31. As Harvard explained in opposing Plaintiff's motion to compel, Johnson does not recall taking any such notes. Doc. No. 113 at 12.

9

means, but whatever it means, it is outside the scope of his claim, which is simply that he must be told the names of witnesses. *Sonoiki*, 37 F.4th at 711.

**Meeting Theory.**  Finally, all the evidence refutes Plaintiff's claim that Johnson did not attend his initial meeting with Ellison.  Opening Br. 28; RSUF ¶¶ 99–104.  For his part, Plaintiff has only his own conclusory, self-serving testimony, which is insufficient to defeat summary judgment.  RUSF ¶ 105;  *see, e.g.*, *SMS Sys. Maint. Servs.*, 188 F.3d at 20.  Nor does he articulate how he could have been harmed even if Johnson were absent.  And while Plaintiff claims that he and Ellison did not meet regarding Betty's complaint, the undisputed evidence shows they *did* connect about Betty's case.  Opening Br. 28–29; RSUF ¶¶ 135–37, 139–41.  Moreover, Plaintiff's only claim of harm is that he "could not learn any procedural differences between a process initiated before graduation versus afterward."  Opp. 27.  But Plaintiff has not alleged that there *are* any such procedural differences; there are none.  And because the Ad Board independently voted to dismiss Plaintiff based on each of the complainants' cases, RSUF ¶ 208, any error in Betty's case alone could not have harmed Plaintiff in any event.

## II.  Plaintiff Has Failed to Raise a Genuine Issue of Material Fact Regarding Whether Harvard Caused His Alleged Damages.

Plaintiff's damages arguments fare no better.  He attempts to create factual disputes regarding damages through a self-serving affidavit that is rife with hearsay, speculation, and/or statements otherwise outside his personal knowledge.  However, "[Rule] 56(c)(4) plainly requires that affidavits used to oppose a motion for summary judgment must '[be made on personal knowledge and] set out facts that would be admissible in evidence,' and [i]t is black-letter law that hearsay evidence cannot be considered on summary judgment for the truth of the matter asserted.'"  *Kenney v. Floyd*, 700 F.3d 604, 609 (1st Cir. 2012) (collecting cases).  Indeed, "[a] genuine issue of material fact can be created only by materials of evidentiary quality."

*Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011).  Moreover, "[w]hen . . . [contract] damages are sought they must be proved and not left . . . to speculation." *Ross v. Deutsche Bank Nat'l Co.*, 2019 WL 4675034, at *3 (D. Mass. Sept. 24, 2019), *aff'd*, 2020 WL 6817807 (1st Cir. Oct. 29, 2020) (citation omitted).  Here, there is no genuine issue of material fact with respect to whether any alleged breach by Harvard caused Plaintiff to lose educational opportunities and professional opportunities in finance and entertainment.[5]

**Lost Educational Opportunities.**  Plaintiff's arguments concerning his supposed lost educational opportunities are frivolous.  Opp. 33–34.  Regardless of whether Plaintiff withdrew from the 2+2 program at Harvard Business School ("HBS") of his own volition, *see id.* at 34 (though the evidence shows that he plainly did so), he still did not attend that institution or pay associated tuition.  As a result, there is no colorable argument that Plaintiff can recover the $220,320 in HBS tuition payments that he seeks as damages in this case.  RSUF ¶ 285.  Likewise, Plaintiff does not dispute that he attended Harvard College on "full financial aid," RSUF ¶ 276, and therefore paid no tuition for his undergraduate coursework.  Opp. 34.  His own musings on the "value of a degree," *id.*, do not change whether he can recover $153,526 from Harvard for tuition payments that he never made.  *See* RSUF ¶ 285; *see also AnywhereCommerce, Inc. v. Ingenico Inc.*, 2023 WL 2694043, at *19 (D. Mass. Mar. 29, 2023) ("a plaintiff in a breach of contract action may not be awarded damages that place them in a better position than if the defendant had not breached").

---

[5] Plaintiff relies on *Khan v. Yale University*, *see* Opp. 32, but that case helps Harvard.  The dicta in *Khan* refers to "consequences" someone "accused of sexual assault in the higher education context" may face, not consequences someone may face as a result of not having an academic degree.  2023 WL 4166605, at *6 (Conn. June 27, 2023).  Thus, *Khan* supports Harvard's position that Plaintiff has not shown any damages he allegedly incurred as a result of Harvard withholding his degree; any damages are from the sexual assault allegations themselves.  Certainly, *Khan* says nothing about whether Plaintiff has propounded sufficient evidence to establish that his lack of a degree (rather than the accusations of sexual assault) caused him harm.

11

**Lost Professional Opportunities: Taconic Capital Advisors.** Although the record shows that Plaintiff wrote to three individuals that Taconic expressly told him it withdrew his offer because he had lied on his resume, Plaintiff now (for the first time) claims that Taconic told him otherwise—and that he did not even apply to the position with a resume. *See* RSUF ¶ 245.

*First*, Plaintiff's newly asserted claim that Taconic's Head of HR told him he "███████ ████████████████████████████" Doc. No. 164-16 ¶ 33, is inadmissible hearsay and therefore cannot be considered. *See Kenney*, 700 F.3d at 609. Worse, that hearsay statement contradicts three separate written communications ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████. *See* RSUF ¶¶ 244–46.

*Second*, and relatedly, Plaintiff's affidavit states that Taconic's "████████████ ████████████" Doc. No. 164-16 ¶ 34. This Court need not credit this rank speculation outside Plaintiff's personal knowledge, particularly where the record evidence demonstrates otherwise. *See Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 139 (1st Cir. 2013) (holding that where defendant relied on her "say-so" and did "not support her rhetoric with hard proof" her claim amounted to "no more than conclusory speculation, which cannot block summary judgment.").[6]

*Third*, Plaintiff now claims he "████████████████████████████████ ████████████████████." Doc. No. 164-16 ¶ 32. But, again, the evidence clearly shows otherwise. In the letter that Plaintiff sent Taconic's Head of HR in May 2014 (that Plaintiff himself added to the summary judgment record), Plaintiff wrote:

---

[6] *See also Perez v. Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001) ("[T]he requisite personal knowledge [in a summary judgment affidavit] must concern facts as opposed to conclusions, assumptions, or surmise." (citation omitted)). The Opposition argues that the Court should consider the opinions of Plaintiff's alleged experts as to the "monetary value" of his damages. Opp. 35–36, 38. Harvard will not repeat the arguments it makes in support of excluding these expert opinions, which is the subject of a motion that is fully briefed and pending before this Court.



Doc. No. 164-9 (emphasis added).  The evidence thus demonstrates that Taconic had, in Plaintiff's words, a ███████████ copy of his resume and, as explained above, withdrew the offer of employment on that basis.  *See, e.g.*, RSUF ¶ 245.

**Lost Professional Opportunities: Entertainment.**  Plaintiff argues that this Court cannot consider whether Plaintiff has satisfied his burden of showing that he lost professional opportunities in the entertainment industry at summary judgment.  His argument is that *Redgrave v. Symphony Orchestra, Inc.* was in a different posture, but that fact does nothing to foreclose review of this question at summary judgment.  What matters is the legal standard the Court announced in that case, requiring a plaintiff to identify specific professional opportunities lost in order to claim them as damages resulting from a breach of contract.  *Redgrave*, 855 F.2d 888, 893 (1st Cir. 1988).  The question at summary judgment is whether Plaintiff has established a genuine dispute of material fact under this standard based on the record evidence.

He has not done so.  Though Plaintiff's affidavit ████████████████████████████████████████████████████████████████████████████████████████████████████████████," Doc. No. 164-16 ¶¶ 49–50, Plaintiff has never produced this alleged communication to Harvard,[7] and so any statement purporting to summarize the contents of that text message is inadmissible hearsay.  *See Kenney*, 700 F.3d at 609.  Similarly, a self-serving affidavit cannot create a dispute of fact about the

---

[7] Plaintiff has inexplicably produced other communications ███████████████████ to Harvard in fact discovery but not the one on which he apparently relies in opposing summary judgment. *See, e.g., Greene v. Ablon*, 2012 WL 4104792, at *2 (D. Mass. Sept. 17, 2012) (on summary judgment, "a party may be precluded from relying on evidence where he fails to comply with discovery requirements under the Federal Rules and his failure to comply is not substantially justified.").

existence of a specific opportunity that this individual could have offered Plaintiff when no admissible evidence supports that fact. *See Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 316 (1st Cir. 2016). And even if this Court could credit those statements, for the reasons discussed in Harvard's opening brief, Plaintiff as a matter of law cannot prove that Harvard's withholding of Plaintiff's degree—as opposed to the sexual assault allegations that were levied against him—caused him to lose that or any other opportunity. *See* Opening Br. 33–34.

**Mitigation.** The Court need not reach the issue of mitigation because Plaintiff has failed to prove that Harvard's conduct caused his damages in the first place. In any event, Plaintiff's bizarre and inaccurate mitigation argument must be rejected. Opp. 38. Plaintiff contends that



▬ *Id.* (citing Doc. No. 145-2, HU-DS 1639-41). But the May 14, 2014 email exchange Plaintiff cites says no such thing. Indeed, Ellison is not even a party to that communication, and the Ad Board representative who is does not ▬ ▬ *See* Opp. 38. To the contrary, the Ad Board representative writes that any such letter would necessarily include ▬ ▬ [*i.e.*, exactly what Plaintiff requested] ▬ ▬ Doc. No. 145-2, HU-DS 1639-41. Further, contrary to Plaintiff's Opposition, *see* Opp. 38, the economics professor did not know whether Plaintiff had satisfied all the department requirements; he explicitly shared the need to ▬ ▬ Doc. No. 145-2, HU-DS 1639-41.

## CONCLUSION

For the foregoing reasons as well as those set forth in Harvard's opening brief, Harvard's motion for summary judgment should be granted.

Dated: July 19, 2023                          Respectfully submitted,

                                              /s/ Anton Metlitsky
                                              _____

                                              Anton Metlitsky (*pro hac vice*)
                                              ametlitsky@omm.com
                                              David Cohen (*pro hac vice)*
                                              dcohen@omm.com
                                              O'MELVENY & MYERS LLP
                                              7 Times Square
                                              New York, NY 10036
                                              Telephone:     (212) 326-2000
                                              Facsimile:     (212) 326-2061

                                              Apalla U. Chopra (*pro hac vice*)
                                              achopra@omm.com
                                              O'MELVENY & MYERS LLP
                                              400 South Hope Street
                                              Los Angeles, CA  90071
                                              Telephone:     (213) 430-6000
                                              Facsimile:     (213) 430-6407

                                              Victoria L. Steinberg (BBO #666482)
                                              vsteinberg@clohertysteinberg.com
                                              Rebecca M. O'Brien (BBO #693592)
                                              robrien@clohertysteinberg.com
                                              CLOHERTY & STEINBERG LLP
                                              33 Arch Street, Suite 3150
                                              Boston, MA  02110
                                              Telephone:     (617) 481-0160

                                              *Attorneys for Defendants,*
                                              *Harvard University, Harvard University*
                                              *Board of Overseers, and the President and*
                                              *Fellows of Harvard College*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 19, 2023.

*/s/ Anton Metlitsky*
Anton Metlitsky
