UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAMILARE SONOIKI,<br><br>Plaintiff,<br><br>v.<br><br>HARVARD UNIVERSITY, et al.,<br><br>Defendants. | Civil Action No. 1:19-cv-12172-LTS |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
**(LEAVE TO FILE SUR-REPLY GRANTED ON JULY 26, 2023)**

Following this Court's Order of July 26, 2023, Plaintiff Damilare Sonoiki ("*Plaintiff*" or "*Sonoiki*"), responds to the Reply in Support of the Motion for Summary Judgment (the "*Reply*") by Defendants, Harvard University, Harvard University Board of Overseers, and the President and Fellows of Harvard College, (together, "*Harvard*" or "*Defendants*").

**I.      Defendants Fail to Apply the "Reasonable Expectation" Standard of Breach.**

In their Reply, Defendants finally acknowledge the recent evolution of contract law in the student-university context within this Circuit. *See* Doc. 173, at p. 1, citing *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 316 (1st Cir. 2022). However, Defendants fail to address and properly apply the key jurisprudence applying this standard. *See Doe v. Brandeis Univ.,* Civil Action No. 20-CV-12162-AK, 2023 U.S. Dist. LEXIS 21045, at *24 (D. Mass. Feb. 8, 2023). The "appropriate inquiry" surrounding a breach in the student-university context, focuses "on *the student's* fair interpretation of the contract's provisions." *Id.* at 316. Ignoring this standard, Defendants rely on inapposite caselaw.

Instead of applying the correct body of law, Defendants cite a case concerning contracts between equally sophisticated parties, which is inapplicable to the student-university context. Doc.

1

173, p. 2, (citing *McAdams v. Mass. Mut. Life Ins. Co.*, 391 F.3d 287, 299 (1st Cir. 2004)). *McAdams* analyzed a motion for summary judgment in the "contextual understanding of the nature of various types of deferred compensation plans." 391 F.3d at 299. The parties to *McAdams* were each "extremely sophisticated," and the court noted *contra proferentem*, as a canon of construction, "has more force where the parties differ in sophistication or where standard forms are used[.]" *Id.* at 300, (citing *Nat'l Tax Inst., Inc. v. Topnotch at Stowe Resort & Spa,* 388 F.3d 15, 2004 U.S. App. LEXIS 23292, No. 03-1924, 2004 WL 2494967, at **3-4 (1st Cir. Nov. 5, 2004)). Sonoiki's circumstances are completely unlike those of the parties to *McAdams.* In drafting and entering its contract with Sonoiki, Harvard had the benefit of its endowment and staff of lawyers, while Sonoiki was a teenager with no college education, and no bargaining power against Harvard. Further, Harvard used standard forms in connection with matters before the Ad Board, as demonstrated by Ellison's testimony. Doc. 114-94, 54:15 (█████████████████ █████████████████). Both considerations support the application of *contra proferentem* here. *See McAdams,* at 300.

While Defendants cite *Int'l All. of Theatrical Stage Emps. v. Martin Sports Ent.,* which states that where "the extrinsic evidence ***is so one-sided that no reasonable person could decide to the contrary*[,]**" summary judgment is appropriate, no such scenario exists in this case. 2023 U.S. Dist. LEXIS 48309, at ** 25-29 (internal citations omitted); *See also* Doc. 173, p. 2. Plaintiff has produced objective evidence demonstrating that his expectation to graduate was based on a reasonable understanding of the applicable policies and the behavior of those in charge. He participated in graduation activities both as a featured speaker and as a member of the Class of 2013. Response to Defendants' Statement of Undisputed Fact (Doc. 162) ("RSUF"), ¶ 11.  Here, where Plaintiff has presented extrinsic evidence supporting his interpretation of an ambiguous

2

contract, Sonoiki's proposed interpretation is far from "inherently unreasonable," and summary judgment must be denied. *See Martin* at ** 25-29.

## II. Defendants' Stated Standard Assumes *Plaintiff* Moved for Summary Judgment.

Defendants claim, "Plaintiff can only prevail if Harvard's procedures *precluded* it from withholding a degree once a disciplinary case had in fact been initiated." Doc. 173, p. 5 (emphasis in original). Defendants' use of passive voice to describe their actions is telling. As an initial matter, Plaintiff disputes that a disciplinary case "had in fact been initiated" before the issuance of a charge. Under Harvard's policies, a charge is "a decision by the [Ad] Board to pursue a case against a respondent[,]" thus, Defendants' claim that a case was initiated before a charge was issued defies common sense. Doc. 146-1, HU-DS-1561; *see also Fishman v. LaSalle Nat.* Bank, 247 F.3d 300, 302 (1st Cir. 2001)(identifying the "common sense" canon of interpretation).

Defendants' proposed standard of review might apply if *Plaintiff* had moved for summary judgment, but he did not. At this stage, the evidence must be "viewed in the light most favorable to" Sonoiki, the non-movant. *Brandeis*, 2023 U.S. Dist. LEXIS 21045, at *24 (D. Mass. Feb. 8, 2023) (citing *Paul v. Murphy,* 948 F.3d 42, 49 (1st Cir. 2020)). Defendants erroneously characterize Plaintiff's position as an estoppel argument: namely, Defendants should be precluded from withholding Plaintiff's degree because Sonoiki participated in graduation activities. *See* Doc. 173, at p. 3. Sonoiki's participation in graduation activities *contributed* to his reasonable expectation to graduate. Ultimately, it was Defendants who *failed to follow their own policies* which outline proper procedures to alter graduation eligibility, namely, through issuing a charge or placing the student on disciplinary probation. *See* Doc. 146-4 HU-DS-986; Doc. 145-6. Although Ellison attempted to contact Sonoiki before graduation, he never told Sonoiki that he would not receive his degree prior to graduation (or ever) and his letter contradicts Harvard's

published policies. RSUF ¶ 83. Likewise, Johnson's statement to Sonoiki that Sonoiki's degree "would not be in the envelope" likewise did not put him on notice that he was not going to receive his degree at all. *See id* ¶ 79. Meanwhile, Defendants continue to assert that Sonoiki should have "object[ed]" on the basis of his jurisdiction argument either on stage at graduation or *within Harvard's Ad Board process*. Doc. 144, 13; Doc. 173, p. 3. This argument is without support anywhere in Harvard policies or related caselaw. To the extent that Defendants' argument suggests Harvard would have reversed its decision and conferred Sonoiki's degree if only he had objected on these grounds, Defendants concede the point.

### III. Plaintiff Raised an Issue of Required Process, Not Timing.

Defendants claim that Plaintiff's jurisdiction argument "could only make sense if Harvard were required to *sua sponte* issue a charge immediately if it wished to withhold his degree while it investigated the allegations against him." Doc. 173, p. 6. This is not Sonoiki's position. Defendants were not *required* to *sua sponte* issue a charge, but doing so *was permitted under their policies.* Doc. 146-4, HU-DS-984. Defendants *also* could have placed Sonoiki on disciplinary probation through a simple vote of the Ad Board, but did not. Doc. 146-4 HU-DS-986; Doc. 145-6. Sonoiki does not challenge the "timing" of the sanction against him, but rather Defendants' failure to provide the process due to him under Harvard's policies. Harvard has since changed its policy. However, Harvard must live with the policy that existed at the time Sonoiki was a student.

### IV. Plaintiff's Advocate Theory is Unaffected by Johnson's Suggestion of Counsel.

Defendants claim Sonoiki fails to "grapple with" their contention that Sonoiki was advised to seek counsel. Doc. 173, at p. 8. This argument has no merit. Johnson confirmed in writing to Sonoiki that a lawyer was not permitted to participate in Ad Board proceedings. RSUF ¶ 132. *Only Johnson* could represent Sonoiki to the Ad Board, even where she was charged with presenting a

4

"full" summary of "relevant" facts. Doc. 173, p. 7. The context and contractual language outlining the role of an Ad Board representative supports Sonoiki's expectation that Johnson was the only person in a position to advocate for him by presenting facts "relevant" *to his defense*. While Sonoiki does not identify what confidential information was shared, he could not possibly know what was shared because he was forced to rely on Johnson. *See* Doc. 173, p. 9. Defendants' footnote acknowledging that Johnson "does not recall taking" *any* notes during Ad Board meetings actually highlights her failure to fulfill the most basic requirements of her position. *Id.* p. 9, FN 4; Doc. 146-6, HU-DS-1562 (outlining role of Board Rep); Doc. 146-7, HU-DS-1565-1566 (same).

### V. Withholding Sonoiki's College Degree Undoubtedly Caused Him Harm.

A commonsense review of the evidence mandates the conclusion that Sonoiki is worse off without his degree; he: (i) lost his position in the Harvard 2+2 program; (ii) lost an opportunity to work at a hedge fund; and (iii) his opportunities in Hollywood have been negatively impacted. RSUF ¶¶ 242, 274, 277, Doc. 164-16 ¶¶ 49-50.[1] Sonoiki has followed an unusual, fact-intensive path after he left Harvard, rendering the assessment of causation and damages appropriate jury questions in this case. *See Mullins v. Pine Manor Coll.*, 389 Mass. 47, 58, 449 N.E.2d 331, 338 (1983)(internal citation omitted).

### IV. CONCLUSION

WHEREFORE, Plaintiff respectfully renews his request that this Honorable Court enter an order denying Defendants' Motion for Summary Judgment.

---

[1] Plaintiff has located this text message and served it on opposing counsel. Exhibit 1, December 2019 Text from ▓▓▓▓▓▓▓ to Damilare Sonoiki. His prior failure to produce the message was excusable neglect in failing to locate one of a multitude of text messages exchanged by Plaintiff from 2019-2023, and Plaintiff has previously described the content of the message in his January 11, 2023 deposition and thereafter. Thus, his oversight is harmless, supporting his late disclosure. *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001). Accordingly, Sonoiki asks the Court's indulgence on this procedural matter.

Respectfully Submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/      Susan C. Stone*
SUSAN C. STONE (*pro hac vice*)
KRISTINA W. SUPLER (*pro hac vice*)
ANNA E. BULLOCK (*pro hac vice*)
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: scs@kjk.com; kws@kjk.com

**NESENOFF & MILTENBERG, LLP**

TARA J. DAVIS (BBO # 675346)
101 Federal Street, 19th Floor
Boston, Massachusetts 02110
Telephone: (617) 209-2188
Facsimile: (212) 736-2260
Email: Tdavis@nmllplaw.com
*Counsel for Plaintiff Damilare Sonoiki*

**CERTIFICATE OF SERVICE**

      I hereby certify that I served a true copy of the above document upon all parties with an interest in this matter by electronically filing it through this Court's CM/ECF filing system this July 28, 2023.

                                        /s/   *Susan C. Stone*
                                        SUSAN C. STONE (*pro hac vice*)